1  LAURA E DUFFY
   United States Attorney
2  DANIEL E. BUTCHER
   Assistant U.S. Attorney
3  California Bar No. 144624
   Office of the U.S. Attorney
4  880 Front Street, Room 6293
   San Diego, CA 92101
5  Tel: (619) 546-7696
   Fax: (619) 546-7751
6  Email: Daniel.Butcher@usdoj.gov

7  Attorneys for the United States

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  LYCURGAN INC. dba ARES ARMOR,          Case No.: 14CV548 JLS (BGS)

12             Plaintiff                    OPPOSITION TO PLAINTIFFS'
                                            MOTION FOR TEMPORARY
13         v.                               RESTRAINING ORDER

14  B. TODD JONES, in his official capacity  DATE: MARCH 17, 2014
    as Head of the San Diego Bureau of      TIME:  2:00 p.m.
15  Alcohol, Tobacco, Firearms and
    Explosives; and DOES 1-10,              Hon. Janis L. Sammartino
16
               Defendants.
17

18

19

20                          I

21              FACTUAL BACKGROUND

22         The United States Bureau of Alcohol, Tobacco, Firearms, and Explosives

23  (ATF) is conducting a lawful criminal investigation of the illegal manufacture,

24  distribution, sale, and possession of AK-15 variant lower receivers, which are

25  considered firearms under the Firearms Control Act, 18 U.S.C. § 921(a)(3).

26         An AR-15 is the semi-automatic, civilian version of the .223 caliber M-16

27  machine gun used by the United States Military.  The receiver is the only part of the

28  weapon that is considered a firearm; therefore, it is the part of the weapon that must

bear a manufacturer's mark and a serial number. (All other parts of the AR-15 are considered parts, not firearms.)   But the lower receivers at issue in ATF's investigation do not bear either a manufacturer's mark or serial number.

Dealing in firearms without a license is illegal under 18 U.S.C. § 922(a)(1)(A). Dealers of firearms are required to conduct a background check prior to transfer under 18 U.S.C. § 922(t)(1).  And, because these firearms were manufactured for sale, they are required to have a manufacturer's marking and a serial number.  18 U.S.C. § 923(i).  Otherwise, there is no way to track them if they are involved in a crime.

Plaintiff Lycurgan Inc, dba Ares Armor ("Ares Armor") is part of ATF's investigation because it is in possession of approximately 6,000 of these unserialized AR-15 lower receivers.  Further, Ares Armor is not a federal firearms licensee, so it cannot legally engage in the business of dealing in these firearms, let alone ones that do not bear the required manufacturer's mark and serial number.

On March 10, 2014, ATF Division Counsel Paul Ware contacted an attorney representing Ares Armor about the AR-15 lower receivers and requested that Ares Armor agree to voluntary surrender them to ATF.  See Declaration of Paul Ware. This request was in lieu of obtaining a search and seizure warrant for these items pursuant to Fed. R. Crim. P. 41.  Id.  Ares Armor's attorney agreed that it would turn over the firearms on March 12, 2014.  Id. This agreement was confirmed at 5:00 p.m. on March 11, 2014.  Id.

But, while using one attorney to lull ATF into believing that it would voluntary surrender the firearms, Ares Armor was, through another attorney, simultaneously preparing a lawsuit and applying for a temporary restraining order preventing ATF from taking possession of this contraband.  Indeed, Ares Armor's CEO freely admits to this ruse.  See Declaration of Dimitrios Karras (ECF #1-2 at 2, par.  9(b) ("I agreed to their terms in order to delay an impending and unjust raid against Ares Armor long enough to obtain legal protection under the law.").  When an ATF agent appeared to

1   take possession of the illegal firearms as agreed on March 12, 2014, the ATF agent

2   was informed about the Temporary Restraining Order issued by the Court on March

3   11, 2014.

4          On March 14, 2014, this Court issued and order (1) extending the injunction to

5   prohibit Ares Armor from divesting itself of the subject matter of the Temporary

6   Restraining Order, (2) clarifying that the Temporary Restraining Order does not

7   restrain lawful criminal proceedings, and (3) modifying the schedule for briefing the

8   injunction.  A search warrant for was issued on March 14, 2014, by Hon. Bernard G.

9   Skomal, and executed by ATF agents on March 15, 2014.

10                                          II

11                                     ARGUMENT

12      A.  Legal Standard for Issuing a Temporary Restraining Order

13          An injunction is "a drastic and extraordinary remedy, which should not be

14   granted as a matter of course." Monsanto Co. v. Geertson Seed Farms, 130 S. Ct.

15   2743, 2761 (2010). Plaintiff has the burden to prove by clear and convincing evidence

16   that injunctive relief is appropriate.  See Granny Goose Foods, Inc. v. Teamsters, 415

17   U.S. 423, 442–43 (1974).  Because they are extraordinary remedies, a plaintiff seeking

18   a temporary restraining order or preliminary injunction[1/] "must establish (1) that he is

19   likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the

20   absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4)

21   that an injunction is in the public interest."  Winter v. NRDC, 555 U.S. 7, 20 (2008);

22   see also Munaf v. Geren, 553 U.S. 674, 690 (2008) ("a party seeking a preliminary

23   injunction must demonstrate, among other things, a likelihood of success on the

24   merits.") (internal quotations and citations omitted)); Mazurek v. Armstrong, 520 U.S.

25

26   _____
     [1]     The standard for a temporary restraining order is the same as for a preliminary
27   injunction. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7
     (9th Cir. 2001); Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp.
28   1320, 1323 (N.D. Cal. 1995).

968, 971, 976 (1997) (overturning a preliminary injunction issued when a plaintiff had established only a 'fair chance of success on the merits' of his claim).

The Ninth Circuit recognizes the <u>Winter</u> test.  <u>Am. Trucking Ass'ns v. City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir. 2009).  However, the Ninth Circuit has articulated an alternate version of this test whereby "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1135 (9th Cir. 2011).

Under this approach, the first prong, "serious questions going to the merits" requires more than showing that "success is more likely than not"; it requires a plaintiff to demonstrate a "substantial case for relief on the merits." <u>Leiva-Perez v. Holder</u>, 640 F.3d 962, 967 (9th Cir. 2011).  And even where success on the merits is likely or "serious questions" are raised an injunction "is not a remedy which issues as of course." <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 311 (1982).

The standards for enjoining a criminal prosecution are even higher.  Under the Supreme Court's decision in <u>Younger v. Harris</u>, 401 U.S. 37, 45 (1971), only when the moving party demonstrates equitable relief is "absolutely necessary for [the] protection of constitutional rights," and only "under extraordinary circumstances, where the danger of irreparable loss is both great and immediate," may a court civilly enjoin a criminal prosecution.  <u>See also</u>  <u>Henkel v. Bradshaw</u>, 483 F.2d 1386, 1388 (9th Cir. 1973) (same); <u>Stefanelli v. Minard</u>, 342 U.S. 117, 120 (1951) ("the maxim that equity will not enjoin a criminal prosecution summarizes centuries of weighty experience in Anglo-American law.").

B. <u>Plaintiff is Unlikely to Succeed on the Merits</u>

Plaintiff cannot satisfy any of the four elements of the <u>Winter</u> test.

1   Plaintiff's complaint alleges two claims for relief: (1) a violation of the Fourth
2   Amendment predicated on 42 U.S.C. § 1983, and (2) an undefined reasonable
3   expectation of privacy for its customers.  See Complaint (ECF #1) at 8-9.  Neither of
4   these grounds prohibits ATF from conducting a lawful investigation into illegal
5   trafficking of AR-15 lower receivers.

6   First, the first claim for relief does not state a claim against ATF – a federal
7   agency -- under 42 U.S.C. § 1983 because that statute applies only to individuals
8   acting under color of state law.  See Billings v. United States, 57 F.3d 797, 801 (9th
9   Cir. 1995) ("Because § 1983 provides no cause of action against federal agents acting
10  under color of federal law, . . . we conclude that the district court properly dismissed
11  [plaintiff's] § 1983 claims.") (internal citation omitted).

12  Second, on the merits, the Fourth Amendment prohibits only warrantless
13  searches for which no exception to the warrant requirement applies.  See generally
14  United States v. Cotterman, 709 F.3d 952, 959-60 (9th Cir. 2013).  But the issuance of
15  a legal warrant eliminates any arguable Fourth Amendment objection to ATF taking
16  possession of the AR-15 lower receivers.  See, e.g., Marks v. Clarke, 102 F.3d 1012,
17  1030 (9th Cir. 1996) (obtaining a particularized search warrant satisfies the Fourth
18  Amendment).

19  Plaintiff withdrew its consent to voluntarily turn over the lower receivers in its
20  possession to ATF.  And that was its right.  But it has no Fourth Amendment right to
21  resist the execution of a lawfully issued search and seizure warrant.

22  Third, the specific items that ATF agents may seize pursuant to any search
23  warrant is the province of the magistrate judge who will issue the warrant and
24  determine its proper scope.  But Plaintiff can establish no probability that a United
25  States Magistrate Judge will issue a warrant in violation of law.  To the contrary, the
26  Court must presume the opposite.  See, e.g., United States v. Meek, 366 F.3d 705, 716
27
28

1  (9th Cir. 2004) (there is "a presumption that an affidavit in support of a search warrant
2  is valid.").

3      In sum, Plaintiff has no probability of succeeding on the merits of its attempt to
4  enjoin a lawful criminal investigation, or establishing that the ATF will conduct this
5  investigation in violation of its (or anyone else's) Fourth Amendment rights. Plaintiff
6  therefore cannot satisfy the first prong of the <u>Winter</u> test.

7      C.  <u>Plaintiff Has an Adequate Remedy at Law; It Cannot Establish Irreparable</u>
8          <u>Harm</u>

9      Plaintiff also cannot establish that it will suffer irreparable harm if an injunction
10 does not issue. Plaintiff has an available remedy if it believes that ATF has seized its
11 property in violation of law. Specifically, Federal Rule of Criminal Procedure 41(g)
12 provides:

13      **Motion to Return Property.** A person aggrieved by an unlawful
14      search and seizure of property or by the deprivation of property may
        move for the property's return. The motion must be filed in the district
15      where the property was seized. The court must receive evidence on any
16      factual issue necessary to decide the motion. If it grants the motion, the
        court must return the property to the movant, but may impose reasonable
17      conditions to protect access to the property and its use in later
18      proceedings.

19      In light of Rule 41(g), Plaintiff cannot establish any possibility of irreparable
20 harm if an injunction does not issue prohibiting ATF from using lawful processes to
21 seize evidence and contraband relevant to its investigation.

22      D.  <u>The Balance of Equities Do Not Tip in Plaintiff's Favor</u>

23      Plaintiff cannot establish that the balance of equities tip in its favor. There are
24 no equities that favor enjoining a lawful, good faith criminal investigation into the
25 illegal trafficking of firearms.

26

27

28

1    E.  <u>The Public Interest Weighs Strongly Against Enjoining ATF's Investigation</u>

2    For the same reasons that Plaintiff cannot establish that the equities tip in its

3    favor, Plaintiff also cannot establish that the public interest is served by enjoining

4    ATF's investigation.   To the contrary, the public interest is served by ATF's

5    enforcement of federal law regulating firearms, which, in this case is aimed to prevent

6    approximately 6,000 AR-15 rifles that bear no serial numbers (and therefore are

7    untraceable) from reaching the streets.

8    In sum, Plaintiff cannot meet any of the four elements of the <u>Winter</u> test, and

9    certainly cannot meet the heightened standard for enjoining a lawful criminal

10   investigation.

11                                         III

12                                    <u>CONCLUSION</u>

13   For the foregoing reasons, the Court should deny Plaintiff's request for a

14   temporary restraining order and/or preliminary injunction.

15

16   DATED:      March 17, 2014              Respectfully submitted,

17

18                                           LAURA E. DUFFY
                                             United States Attorney
19

20                                            s/ Daniel E. Butcher
                                             DANIEL E. BUTCHER
21                                           Assistant United States Attorney
                                             Attorneys for Defendant
22

23

24

25

26

27

28