Declaration of Paul J. Ware

1. I am the Division Counsel for the Los Angeles Field Division, Bureau of Alcohol, Tobaccos, Firearms and Explosives (ATF). In my capacity as the Division Counsel, I provide legal advice and assistance to ATF Special Agents in the performance of their law enforcement duties.

2. On or about 7 March 2014, I received a phone call from Attorney Jason Davis asking if my Division was executing a search warrant in Fresno of one of his clients, EPS Arms. I informed Attorney Davis that Fresno was in the San Francisco Field Division and that I did not have any information concerning the search warrant but was aware that ATF had recently determined that EPS Arms was manufacturing receivers without a Federal Manufacturing license. Attorney Davis explained that ATF's determination letter incorrectly described the manufacturing process and that he had requested reconsideration of the determination. I responded that ATF HQ would have to address that concern but because Fresno was in the San Francisco Field Division, he should call that Division Counsel if he wanted to discuss the search warrant further. I then provided him the name and phone number for the San Francisco Division Counsel.

3. On or about 10 March 2014, I received a call from ATF Special Agent Gordon Geerdes informing me that records seized at EPS Arms indicated that several thousand receivers had been shipped to Ares Armor in Oceanside/National City. He wanted my opinion on calling Attorney Davis to see if Ares Armor would consent to turn over the firearms and records of sales of those firearms. In the past we had a good working relationship with both Attorney Davis and Ares Armor so I thought the idea had merit. I discussed reaching out to Attorney Davis with the Resident Agent in Charge and the Assistant Special Agent in Charge and it was decided that I should call Attorney Davis to see if Ares Armor would like to voluntarily surrender the firearms and records.

4. I called Attorney Davis on 10 March 2014 and explained that records at EPS Arms indicated several thousand firearms had been sent to one of his clients, Ares Armor and that we would allow Ares Armor to surrender the firearms and records of sales of those firearms in lieu of ATF seeking a search/seizure warrant. Attorney Davis expressed concerns about what would happen to the firearms as he still wanted to contest the determination that the receivers were in fact firearms under the Gun Control Act of 1968.

I explained that we would take the firearms into custody and would seek to forfeit them, however his client would not be asked to abandon the property or waive any right to make a claim for its return. I further advised that I would do my best to expedite ATF's reconsideration of the determination that the receivers were firearms and if ATF determined they were not firearms, ATF would return the product to his client. I also requested the records of any customers who had purchased EPS Arms receivers to ensure they were not distributed to persons prohibited by Federal law from possessing a firearm. I also made it clear that we are limiting our request to only the EPS Arms receivers and records of sales of those receivers.

5. Attorney Davis thanked me for the courtesy of working with him and his client and he said he would get back to me, but he thought his client would be happy to consent. Later that day Attorney Davis informed me that his client would turn over the "products" and the records and agreed to do so at 11:00 on 12 March 2014. He followed that up with an email providing a point of contact and phone number.

6. On 11 March 2014, we attempted to contact Dimitri to confirm the location to receive the firearms and records and after misdialing the contact phone number a couple of times, I was informed that our Special Agent was able to speak to Dimitri and confirm the details. Later that evening, at approximately 17:00 Attorney Davis called me and informed me that his client had no problem with giving ATF the firearms, but was concerned about giving up the sales records for the EPS Arms receivers. We discussed options and I made it clear that we did not have a search warrant but we would apply for a search warrant if we could not come to an agreement. After some additional discussion, Attorney Davis called me and said his client agreed to provide him the customer list and that he would turn over the list to ATF. I informed Attorney Davis that this was an acceptable arrangement and emailed Special Agent Geerdes that Attorney Davis would have the records and he could pick up the firearms as scheduled.

7. On 12 March 2014, at approximately 13:00 I was informed that Ares Armor had hired a new attorney and that a Federal Judge had issued a temporary restraining order preventing ATF from seizing any evidence from Ares Armor.

8. I declare under penalty of perjury that the foregoing is true and correct.

Paul J. Ware