1 | C. D. Michel - SBN 144258
Joshua Robert Dale - SBN 209942
2 | Joseph A. Silvoso, III - SBN 248502
MICHEL & ASSOCIATES, PC
3 | 180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
4 | Telephone: (562) 216-4444
Fax: (562) 216-4445
5 | E-mail: cmichel@michellawyers.com
E-mail: jdale@michellawyers.com
6 | E-mail: jsilvoso@michellawyers.com

7 | Attorneys for Plaintiff

8 | IN THE UNITED STATES DISTRICT COURT

9 | FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | CALIFORNIA RIFLE & PISTOL ) CASE NO.
ASSOCIATION, INCORPORATED, )
12 | ) **COMPLAINT**
Plaintiff, ) **FOR DECLARATORY**
13 | ) **AND INJUNCTIVE RELIEF**
vs. )
14 | ) [28 U.S.C.§ 2201]
BUREAU OF ALCOHOL, )
15 | TOBACCO, FIREARMS, AND )
EXPLOSIVES; ATTORNEY )
16 | GENERAL ERIC HOLDER, in his )
official capacity; B. TODD JONES, )
17 | in his official capacity; and DOES 1 )
through 100, inclusive, )
18 | )
Defendants. )
19 | _____ )

20 | / / /

21 | / / /

22 | / / /

23 | / / /

24 | / / /

25 | / / /

26 | / / /

27 | / / /

28 | / / /

## INTRODUCTION

1.     Plaintiff CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED seeks judicial review, declaratory relief, and injunctive relief under 28 U.S.C. § 2201, against Defendants the BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, ATTORNEY GENERAL ERIC HOLDER, in his official capacity as the United States Attorney General, and B. TODD JONES, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, regarding whether a certain class of products designed to be machined by the purchaser into firearm receivers meets the definition of a "firearm" under 18 U.S.C. 921(a)(3), and can therefore be lawfully regulated by the BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES.

2.     Specifically, Plaintiff seeks a determination that a precursor that is manufactured with different colored components to aid purchasers in the subsequent process of completing the precursor into a receiver is not a product within the statutory or regulatory definitions of "receiver" and "firearm."  Further, plaintiff seeks a determination that a precursor that is manufactured with "indexed" - i.e. markings to aid purchasers in the subsequent process of machining the precursor into a receiver is also not a product within the statutory or regulatory definitions of "receiver" and "firearm."

3.     Plaintiff seeks this relief based upon a recent decision by the Firearms Technology Branch of the BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES that a precursor that contains both colored components and indexing constitutes a firearm within the meaning of federal law and regulation.  As a result of such decision, agents of the BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES have threatened prosecution against those making, selling, and/or transferring such precursors within this judicial District.  As set forth below, Plaintiff represents a group of individuals and businesses who are impacted by this decision.

COMPLAINT

**PARTIES**

4.    Plaintiff and Petitioner CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED ("CRPA") is a 501(c)(4) non-profit entity incorporated under California law, with headquarters in Fullerton, California. Contributions to the CRPA are used for the direct benefit of Californians in all counties, including Fresno. Funds contributed to and expended by CRPA benefit a wide variety of constituencies throughout California, including gun collectors, gun dealers, hunters, target shooters, law enforcement, and those who choose to own a firearm to defend themselves and their families. The CRPA seeks to raise awareness about unconstitutional laws, defend and expand the legal recognition of the rights protected by the Second Amendment, promote firearms and hunting safety, protect hunting rights, enhance marksmanship skills of those participating in shooting sports, and educate the general public about firearms. The CRPA supports law enforcement and various charitable, educational, scientific, and other firearms-related public interest activities that support and defend the Second Amendment rights of all law-abiding Americans.

5.    Among the CRPA's members affected by the BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES' recent policy implementation as to precursors includes the following:

     a.    Individual members who lawfully purchased such precursors prior to the BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES deeming such precursors to be firearms.  As a result of the nascent interpretation, and the BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES use of such interpretation to subsequently implement regulatory and criminal investigations against members, these individual members cannot sell or transfer such precursors in their possession, and to do so without declaratory relief by this Court would subject those members to

COMPLAINT

1   administrative or criminal sanction;

2   b.   Individual and business entity members who are not federal firearm

3   licensees and who have manufactured or sold the subject precursor

4   product now deemed by the BUREAU OF ALCOHOL, TOBACCO,

5   FIREARMS, AND EXPLOSIVES to be a firearm.  As a result of the

6   new interpretation, these members can no longer manufacture or sell

7   precursors with characteristics defendants herein have now deemed to

8   subject such products to regulation as a firearm.  The new interpretation

9   is inconsistent with law, regulation, and the prior interpretations and

10   opinions of the BUREAU OF ALCOHOL, TOBACCO, FIREARMS,

11   AND EXPLOSIVES, and these resulting inconsistencies render the

12   affected members unable to understand or comply with the law;

13   c.   Individual and business entity members who are not federal firearm

14   licensees and who have sought to manufacture a product similar to the

15   subject precursor product now deemed by the BUREAU OF

16   ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES to be a

17   firearm.  These members desire to manufacture precursors with

18   characteristics defendants herein have now deemed to subject such

19   products to regulation as a firearm.  Members rely upon fair and

20   objective application of the laws and regulations regarding firearm

21   purchases, modifications, manufacture, and sales in order to comply

22   with the law in engaging in such activities with firearms or the

23   constituent parts that may become firearms.  In the absence of fair,

24   consistent, and objective application of such laws and regulations, the

25   resulting inconsistencies render affected members unable to understand

26   or comply with the law; and

27   d.   Individual and business entity members who are federal firearms

28   licensees, who have previously acquired or disposed of such precursors

4
COMPLAINT

1     as those now deemed by the BUREAU OF ALCOHOL, TOBACCO,

2     FIREARMS, AND EXPLOSIVES to be a firearm.  As these federal

3     firearms licensees believed and understood such precursors to not be

4     firearms under federal statute or regulation, they believed such

5     acquisition and disposition to not require compliance with acquisition,

6     recording, and disposition obligations required for the transfer of

7     firearms under state and federal law and regulation.  The new

8     interpretation is inconsistent with law, regulation, and the prior

9     interpretations and opinions of the BUREAU OF ALCOHOL,

10     TOBACCO, FIREARMS, AND EXPLOSIVES, and these resulting

11     inconsistencies render the affected members exposed to prosecution for

12     transfers of firearms through no reasonable fault of their own.  These

13     members seek a declaration to resolve their seeming "scofflaw" status

14     under the new interpretation.

15     6.    Defendant and Respondent the BUREAU OF ALCOHOL, TOBACCO,

16 FIREARMS, AND EXPLOSIVES ("ATF") is a federal agency, whose duties

17 include regulating and enforcing the laws relating to the manufacture, sale, and

18 distribution of "firearms."  The ATF has a field office in Fresno County, California.

19     7.    Among other things, the ATF administers and enforces the federal laws

20 and regulations relating to firearm ownership, manufacture, importation, dealing,

21 and sales. ATF is tasked with the responsibility of ensuring that businesses issued a

22 federal firearms license comply with the license's various legal requirements, and

23 that individuals do not violate federal law by engaging in the business of

24 manufacturing firearms without having the proper license and generating the

25 appropriate records.

26     8.    ERIC HOLDER, is the Attorney General of the United States, and is

27 sued in his official capacity.

28     9.    B. TODD JONES, is the Director of the ATF, and is sued in his official

1  capacity.

2      10.    The names of DOES 1 through 100, and each of them, are unknown to

3  these plaintiffs, and resultantly, are sued by their fictitious names.  On information

4  and belief, each Doe identified herein participated, by their own willful act,

5  negligent act, or by omission, in some or all the acts and omissions alleged against

6  named defendants herein.  Upon learning the true name of each Doe, plaintiffs will

7  amend this complaint accordingly.

8                                **JURISDICTION AND VENUE**

9      11.    Jurisdiction and venue are founded under 28 U.S.C. §§ 1331 and 1391

10  (respectively) as the transactional facts underlying this case occurred in this District,

11  Plaintiff has affected members domiciled in this District, and Defendant ATF has a

12  presence in this District through offices it maintains here.

13                     **THE APPLICABLE STATUTORY SCHEME**

14      12.    A "firearm" is defined as:

15      (A)    any weapon (including a starter gun) which will or is designed to or

16               may readily be converted to expel a projectile by the action of an

17               explosive;

18      (B)    *the frame or receiver of any such weapon*;

19      (C)    any firearm muffler or firearm silencer; or

20      (D)    any destructive device.

21  18 U.S.C. § 921(a)(3) (emphasis added).[1]

22      13.    A "firearm frame or receiver" is defined as:

23          "[t]hat part of a firearm which provides housing for the

24          hammer, bolt or breechblock, and firing mechanism, and

25          which is usually threaded at its forward portion to receive

26          the barrel."

27   

28      [1]   The Code of Federal Regulations gives an identical definition for "firearm" at 27 C.F.R. § 478.11.

1    27 C.F.R. § 478.11.

2         14.    A firearms "manufacturer" is defined as:

3              "any person engaged in the business of manufacturing

4              firearms or ammunition for purposes of sale or distribution

5              . . . ."

6    18 U.S.C. § 921(a)(10).

7         15.    Under federal law, a firearms "dealer" is defined as:

8              (A) any person engaged in the business of selling firearms

9              at wholesale or retail,

10             (B) any person engaged in the business of repairing

11             firearms or of making or fitting special barrels, stocks, or

12             trigger mechanisms to firearms, or

13             (C) any person who is a pawnbroker."

14   18 U.S.C. § 921(a)(11).

15        16.    A person "engaged in the business" of dealing in firearms must possess

16   a federal firearms license ("FFL"), keep records, and follow specific guidelines to

17   transfer the "firearms" to any person who does not have an FFL. (18 U.S.C. §

18   922(a)(1)(A)), 18 U.S.C. §§ 922(t) & (m), and 923(g)(1)(A).

19        17.    A person "engaged in the business" of manufacturing "firearms" must

20   possess a federal manufacturing license. 18 U.S.C. § 922(a)(1)(A). Firearm

21   manufacturers are required to mark their firearms, keep certain records, and follow

22   specific guidelines to transfer the "firearms" to anyone without an FFL. 18 U.S.C.

23   §§ 922(t) & (m); 923(g)(1)(A) & (i); and 27 CFR § 478.92.

24        18.    Congress has expressly exempted homemade "firearms" from

25   regulation, as long as the personally made firearm is itself not illegal and the person

26   making the firearm is not prohibited from possessing one. Barring limited

27   exceptions, an individual cannot manufacture a "machinegun" or a "short-barreled

28   shotgun," and a person who makes a firearm for him/herself cannot be in a legally

1   prohibited status that would bar them from legally possessing any firearms.

2   Otherwise, nothing in federal law prevents an individual from manufacturing a

3   "firearm" for personal use, nor requires that such an individually-manufactured

4   firearm be licensed, serialized, or otherwise subject to regulation in its manufacture.

5        19.    Barring limited exceptions, it is illegal for any person, other than a

6   federally licensed importer, manufacturer, dealer, or collector to receive in the state

7   where he/she resides a firearm purchased or obtained outside the state where the

8   individual resides. 18 U.S.C. § 922(a)(3).  Again, barring limited exceptions, it is

9   illegal for any person (other than a federally licensed importer, manufacturer, dealer,

10  or collector) to transfer, sell, trade, give, transport, or deliver any firearm to any

11  person (other than the federally licensed individuals mentioned above) who the

12  transferor knows or has reasonable cause to believe does not reside in the state in

13  which the transferor resides. 18 U.S.C. § 922(a)(5). Lastly, it is illegal (barring

14  limited exceptions) for a federally licensed importer, manufacturer, dealer or

15  collector to sell or deliver any firearm to any person who the licensee knows or has

16  reasonable cause to believe does not reside in the state in which the licensee's place

17  of business is located.  18 U.S.C. § 922(b)(3).

18                  **FACTS APPLICABLE TO MEMBERS' CLAIMS**

19       20.    Affected CRPA members manufacture, own, sell, or distribute a

20  product commonly referred to as a "precursor lower receiver" or "80% receiver," or

21  "80% lower" or "receiver blank" ("precursor").

22       21.    A precursor is akin to an incomplete engine block that requires

23  additional cutting, sanding, and shaping before it will function and can be installed

24  into an engine bay as part of a complete automobile.

25       22.    As manufactured and sold by CRPA members, precursors cannot

26  function as "receivers" in a "firearm" without undergoing significant machining

27  work. Before a precursor can actually function as a receiver, the purchaser must

28  perform additional machining and drilling using machining tools such as a drill press

1  Only after this additional machining by the individual purchaser is performed is a
2  precursor actually able to function as a "receiver" and thereby accept the attachment
3  of other constituent firearm parts to become a part of a functional (and legally
4  regulated) "firearm."

5       23.    With the exception of the precursor which the ATF has now deemed to
6  constitute a "firearm," per federal law and regulation, precursors are not deemed to
7  be firearms and are not subject to regulation by a state or federal agency.

8                  **The Manufacturing Process for the Regulated Precursor**

9      24.    EP Arms, LLC d/b/a EP Armory is a member of Plaintiff.  EP Arms
10  manufactures a precursor that the ATF has deemed, based on the characteristics
11  described below, to constitute a "firearm" subject to regulation. (Exhibit 1).

12      25.    While all precursors require extensive machining before they are
13  considered firearms under federal law and regulation, with respect to the precursor
14  now subject to regulation, and for which Plaintiff seeks a declaration as to its status,
15  ATF points to two distinct characteristics and the manufacturing process of the
16  precursor as transmuting an otherwise unregulated precursor into a firearm subject to
17  regulation. The two apparently material characteristics are a contrast-color core piece
18  (sometimes referred to as a "biscuit") and pre-cast indices to guide where an
19  individual purchaser who machines a firearm receiver from the precursor should drill
20  certain holes required to build a functioning firearm receiver.  This latter feature,
21  along with the colored biscuit, are collectively referred to by the ATF as "indexing."
22  A precursor with these two additional characteristics will be hereinafter referred to as
23  a "Regulated Precursor."  But for these two additional "indexing" features on a
24  precursor, the ATF would not deem such a precursor to be a "firearm" subject to
25  regulation.  As set forth below, the ATF's use of these two characteristics to
26  differentiate between an otherwise unregulated precursor and a Regulated Precursor
27  is a distinction without logical or legal support, and the implementation of the policy
28  by defendants regulating such precursors is a violation of federal law and

COMPLAINT

regulations. ATF also alleges that a "fire-control cavity" is created during the process of manufacturing the Regulated Precursor. It is ATF's long-standing position that the creation of a "fire-control cavity" causes a precursor to meet the definition of a "firearm."  ATF states the process to make a Regulated Precursor, requiring the creation of the biscuit first and the rest of the precursor is formed around the biscuit, creates a "cavity" and consequently a "firearm." (Exhibit 1).

### Distinction No. 1: The Biscuit

26.     Unlike unregulated precursors, on the Regulated Precursor, there is a "reference" point for where the fire-control cavity in the center of the precursor can be machined out.  The polymer material constituting the central area in the Regulated Precursor where the "fire-control cavity" will eventually be hollowed out is a different color from the other surrounding portions of the precursor.  Because of this, in the extensive process of machining and transforming a precursor into a functional "receiver," the Regulated Precursor effectively has a color-coded "guide" indicating some of the dimensions that need to be machined or drilled out of the precursor by the person machining the precursor into a firearm receiver.

27.     The creation of the Regulated Precursor is a two-part process. First (Exhibit 1, depicted on pg. 4), the lighter colored center portion of the precursor is formed by using a liquid form of the polymer material. This center material is identical to the material used to make the full precursor, except for its color.  This center portion is referred to as the core-piece, or "biscuit."

28.     After the biscuit is cured for two days, it is then suspended in the center of a mold.  The biscuit has holes through it. When the additional material is poured into the mold, it flows into and through the biscuit's holes, forming interlocking "bars" that are permanent in nature.

### Distinction No. 2: Positive Indexing

29.     In the ATF's reasoning, further differentiating an unregulated precursor from the Regulated Precursor is the presence on the side of the Regulated Precursor

of three cylindrical projections on each side (six in total) extending beyond the surface of the precursor indicating where the holes for the hammer and trigger pins, and the safety selector hole, should be drilled.  An individual who purchases the Regulated Precursor must still drill the holes on his or her own.  The holes must be drilled with skill to ensure that the holes are the correct diameters for the pins or safety selector.  This means using a drill press or other reliable method for ensuring proper completion.

30.     Last, with the Regulated Precursor, as with every precursor, the trigger slot has to be drilled out to accommodate the trigger.  Nothing in the Regulated Precursor is different from any other precursor in this regard.  The only differentiation made by ATF is the presence of the colored biscuit and indexing.  As addressed below, these two distinctions are minor and do not lawfully bring otherwise unregulated precursors into the ambit of the ATF's regulation as firearm receivers.

31.     This is because, like unregulated precursors, Regulated Precursors with the two indexing features incomplete, require significant additional drilling and machining work to be performed by a purchaser in order to make them a functioning receiver.

**Distinction No. 3: Alleged Creation of the "Fire-Control Cavity"**

32.     ATF states that during the creation of the Regulated Precursor the "fire-control cavity"[2] is created.  As discussed above, the creation of the precursor is a two-part process where the biscuit is created first and the rest of the precursor is formed around the biscuit. An actual "cavity" never exists during the creation of the Regulated Precursor. Nevertheless, ATF's erroneous position as to the Regulated Precursor is that a cavity, and therefore a "firearm," is created. (Exhibit 1).

---

[2] The "fire-control cavity" for complete receivers houses the parts making up the trigger group of the firearm, i.e. the moving parts that allow the firearm to discharge.

**Transforming the Regulated Precursor into a Functional "Receiver":**

**Machining out the Fire-Control Cavity**

33.     Only by the extensive and time-consuming act of physically removing the biscuit and "bars" in their entirety using machinery can a fire-control cavity be created.

34.     The colored biscuit provides visual guidance of where a person must further machine the Regulated Precursor in order to create a "fire-control cavity." Using great skill, an individual who purchases a Regulated Precursor must not only remove the biscuit during process of machining and drilling the Regulated Precursor into a functional firearm receiver, but that person must also machine away the 1/16 of an inch of polymer material surrounding the core.  This 1/16 of an inch of material is the same color as the rest of the Regulated Precursor.  Without removing the biscuit and the surrounding, undifferentiated material by precise machining, an individual cannot create a fire-control cavity large enough to accept the necessary trigger/hammer mechanism to create a functioning receiver.

35.      Only after such painstaking machinations is a fire-control cavity sufficiently created for the finished product to *eventually* be deemed under federal law and regulations to be a "receiver" and thus a "firearm" that is regulated.  Thus, even the presence of a different colored core does not obviate the need for additional significant and precise machining and drilling to be performed on the Regulated Precursor to make it a receiver under federal law and regulation.

**Drilling out the Pin and Safety Selector Holes**

36.     To be clear, painstakingly machining out the fire control cavity in the manner described above is not sufficient by itself to create a functioning receiver because additional work is needed to make the Regulated Precursor able to accept a trigger/hammer mechanism.

37.     In addition to drilling out the biscuit, holes for the hammer and trigger pins, and for the safety selector, must also be drilled into the sides of the Regulated

1   Precursor before it can actually function as a receiver for a firearm.  These holes hold

2   the pins that keep the hammer and trigger in place in the fire-control cavity.  One of

3   the holes needed to be drilled is the hole for placement of the firearm's safety switch

4   selector.

5                    **The ATF's Historical Positions on Precursors**

6        38.    The ATF has repeatedly issued agency opinion letters finding that

7   precursors do not qualify as a "frame" or "receiver" under federal law or regulations

8   because precursors do not and cannot provide a housing for firing mechanisms, and

9   because precursors require additional work in order to be put into a condition where

10  they could accept firing mechanisms or have other firearm parts attached to make a

11  functional firearm.

12       39.    Over the years, the ATF issued written opinions about precursors to at

13  least four manufacturers confirming that precursors lacking certain machining

14  operations performed on them are not "firearms." See, e.g., ATF letter to Bradley

15  Reece [attached as Exhibit 2] ("an AR-10 type receiver blank which has no

16  machining of any kind performed in the area of the trigger/hammer (fire-control)

17  recess might not be classified as a firearm. [and] The sample is completely solid and

18  un-machined in the fire-control recess area and, accordingly, is not a 'firearm' as

19  defined in the GCA.") (emphasis in original); ATF letter to Quentin Laser, LLC

20  [attached as Exhibit 3] ("an AR-15 type receiver which has no machining of any kind

21  performed in the area of the trigger/hammer recess might not be classified as a

22  firearm.") (emphasis in original); and see also ATF letter to 80 Percent Arms and

23  ATF letter to Kenney Enterprises, Inc., attached as Exhibits 4 and 5.

24       40.    The ATF's prior opinions and rulings confirm that products which

25  require (1) milling out the fire-control cavity, (2) drilling of the selector-level hole,

26  (3) cutting the trigger slot, (4) drilling the trigger pin hole, and (5) drilling the

27  hammer pin hole are not "firearms." The Regulated Precursors require *all of these*

28  *actions,* and so cannot be considered "firearms" under law.

---

COMPLAINT

41.    In reliance on federal law and regulations, and on the ATF's prior opinions, interpretations and letter rulings regarding what constitutes a "firearm" "frame" or "receiver," hundreds of Americans, including the affected members of the CRPA, have established businesses manufacturing and selling precursors, thousands of Americans have established businesses selling firearm accessories, including precursors, and an estimated tens of thousands of Americans have purchased and currently possess precursors so they can make their own firearm.

42.    Per federal law and regulations, and the ATF's prior consistent opinions on this issue, only when a fire-control cavity is created is there an actual "frame" or "receiver" of a firearm that is capable of being regulated.

43.    Notwithstanding the additional work required to turn a Regulated Precursor into a functioning receiver, ATF now contends that the Regulated Precursor is a "firearm" under federal law.  It so contends for three reasons. First, ATF claims that the process of making the Regulated Precursor creates a "cavity." Second and third, ATF claims the design of the core and the projections (respectively) constitute "indexing." Specifically, ATF has declared as to the Regulated Precursor, "The point in the manufacturing process at which an AR-15 blank is classified as a firearm is when it has been indexed for or machined in the fire-control recess area. Such a receiver may also have had other machining performed, such as drilled pivot-pin and takedown-pin hole(s)"... [T]his excess material indexing the location for the holes to be drilled is, by itself, sufficient to classify the sample as a firearm receiver."

44.    The ATF's contention regarding the Regulated Precursor being a firearm or firearm receiver subject to regulation, is set forth in an undated letter, a copy of which is attached hereto as Exhibit 1.

45.    As it is sold, the Regulated Precursor must, in fact, be machined in ways that ATF has approved historically, and does not require additional machining in the fire-control area.  The excess material acts only as a guide to show the person

1    completing the precursor where to drill or machine. The Regulated Precursor

2    purchaser must still complete the necessary activities to complete the receiver

3    *themselves* (i.e., they must drill the necessary holes, hollow out the fire-control

4    cavity, and make room to accommodate the trigger).  No machining is done to the

5    fire-control area by the manufacturers of Regulated Precursors.

6                    **The ATF's Current Position on the Regulated Precursor**

7         46.   ATF has lately attempted to differentiate between Regulated Precursors

8    and other precursors that neither the ATF nor federal law or regulations deem to be

9    "firearms."

10        47.   On information and belief ATF has, in practice, treated Regulated

11   Precursors as "firearms," by, among other actions, seizing Regulated Precursors from

12   individuals and businesses for failure to treat such as firearms in manufacturing and

13   transferring them.

14        48.   ATF's recent position regarding the Regulated Precursors is arbitrary,

15   and not based upon any of its prior opinions, rulings, or reasonings.  Precursor

16   receivers and jigs have been on the market with ATF's explicit blessing for years.

17   Unlicensed manufacturers create and sell jigs to show the purchaser of precursors

18   where to drill; the ATF has determined that these jigs, which perform the exact same

19   function as the Regulated Precursor's cylindrical and color indexing, to be

20   permissible and not subject to regulation.  Over the years, some of these jigs have

21   evolved, and in some cases, have become integral to the precursor itself.  These

22   evolved jigs attach to the precursor allowing the consumer to complete the receiver

23   more easily. (See Exhibit 6 included pictures of precursor receivers and jigs.)  Still,

24   the ATF (rightly) has declared these integrated jigs to not somehow turn a non-

25   firearm into a regulated receiver. These precursor receivers are not different from the

26   Regulated Precursor in any legally-significant sense. They all require the fire-control

27   cavity to be created by the purchaser and holes for the trigger, hammer, and selector

28   to be drilled or machined by the purchaser.

---

15

COMPLAINT

49.     On information and belief, the ATF's decision to deem the Regulated Precursors to be receivers and thus regulate them as firearms was a decision made pursuant to an official or unofficial policy or practice of the ATF, and such decision and regulation was ratified by Defendants Holder and Jones in their official capacities as, respectively, the head of the federal Department of Justice, and the head of the ATF, a subdivision of the federal Department of Justice.  As heads of ATF, and the executive branch agency that oversees the ATF, Jones and Holder are policymakers for the ATF, against each of whom injunctive relief issued by this court would be effective to modify or enjoin unlawful activity by the ATF.

50.     As a result of the ATF arbitrarily, and in violation of federal law and regulation, deeming the Regulated Precursors to be "receivers" subject to regulation as "firearms," Members of Plaintiff have had Regulated Precursors they previously purchased rendered untransferable.

51.     By the ATF's nascent and arbitrary designation of the Regulated Precursor as a firearm, Members of Plaintiff have also been unable to manufacture, transfer, or sell Regulated Precursors, and have had prior sales or transfers of Regulated Precursors brought within the ambit of a criminal act, potentially making such Members unknowing criminals where they had no intent or notice that sale or transfer of such a precursor required compliance with federal and state laws regarding the transfer or sale of firearms.

52.     By the ATF's nascent and arbitrary designation of the Regulated Precursor as a firearm, all such affected Members who engaged in the above activity who are federal firearms licensees are subject to potential regulatory penalty, including revocation of their FFL by defendants, and subject to potential criminal penalty.  Such Members acquired, held, and disposed of Regulated Precursors without recording such transactions as required under state and federal law for firearm acquisitions and dispositions.  Such Members are effectively in a state of criminal and regulatory "limbo," subject to criminal prosecution until the statute of

1  limitations on such a "crime" runs, and in fear of losing their FFL for an interminable
2  period of time.

3      53.    As a further result of the ATF arbitrarily, and in violation of federal law
4  and regulation, deeming the Regulated Precursor to be a "receiver," Members of
5  Plaintiff who wish to manufacture their own firearm, have been denied the ability to
6  purchase the Regulated Precursor for such activity.  Further, such Members are
7  unaware whether products similar to the Regulated Precursor now or in the future
8  would be considered firearms by defendants, and would require such licensees to
9  acquire, dispose of, and record such receivers they stock as firearms.  In the event
10  such licensees were obligated to treat such precursors as firearms, or, alternatively,
11  chose to treat such precursors as firearms due to the ATF's arbitrary and inconsistent
12  rules and regulations on the issue, such licensees would be subject to a hardship,
13  insomuch as treating such precursors as firearms would necessitate serializing and
14  recording each and every such precursor bought or sold by such licensees, at
15  significant cost for each such precursor acquired or disposed of.

16      54.    Plaintiff contends that the Regulated Precursor is not a firearm within
17  the meaning of 18 U.S.C. § 921(a)(3) and that the Regulated Precursor is not a frame
18  or receiver of a firearm within the meaning of  27 C.F.R. § 478.11.  The ATF
19  disagrees with this contention, and has decided that the Regulated Precursor, and any
20  precursor that contains the two indexing features described hereinabove, because of
21  such indexing features, meet the definitions of firearm and receiver under 18 U.S.C.
22  § 921(a)(3) and 27 C.F.R. § 478.11.

23      55.    Because Plaintiff contends that the Regulated Precursor is not a receiver
24  or firearm under federal law or regulation, and that a precursor that contains the two
25  indexing features described hereinabove is not a receiver or firearm under federal law
26  or regulation, Plaintiff further contends that the ATF, and DOES through 100, and
27  each of them, acted in excess of their jurisdictional and regulatory authority when
28  they ordered manufacturers, distributors, and retail sellers of the Regulated

1   Precursor, which group includes Members of Plaintiff, to cease the manufacture and

2   sale of the Regulated Precursor.

3        56.    Because Members of Plaintiff have suffered actual, tangible harm as a

4   result of the ATF's decision, and will continue to suffer such harm in the absence of

5   relief, Plaintiff seeks a declaration under 28 U.S.C. § 2201 that the Regulated

6   Precursor is not a firearm within the meaning of either 18 U.S.C. § 921(a)(3) and 27

7   C.F.R. § 478.11.

8        57.    Plaintiff further seeks a declaration that the two alleged indexing

9   features on the Regulated Precursor described hereinabove are not indicative of and

10   do not otherwise render a non-firearm a firearm or receiver within the meaning of

11   either 18 U.S.C. § 921(a)(3) and 27 C.F.R. § 478.11, simply by virtue of the

12   placement of one or more of such features on a precursor.

13        58.    Plaintiffs further seek an order enjoining the ATF, and DOES through

14   100, and each of them, from further seizing or preventing the sale of Regulated

15   Precursors, and from seizing or preventing the sale of precursors similar to the

16   Regulated Precursor where such precursors contain one or both of the two alleged

17   indexing features described hereinabove, but which otherwise contain no other

18   features under law that would cause such precursors to become a firearm or receiver

19   within the meaning of either 18 U.S.C. § 921(a)(3) and 27 C.F.R. § 478.11.

20   <center>**CLAIM FOR RELIEF**</center>

21   <center>**Unlawful Agency Action - 5 U.S.C. §§ 702 & 704 Against All Defendants**</center>

22        59.    Paragraphs 1 though 58 are realleged and incorporated herein by

23   reference.

24        60.    By choosing to treat the Regulated Precursors as "firearms," this

25   decision is reflected in both ATF's practice and in its written letter on the subject,

26   Defendants have taken unlawful agency action.

27        61.    5 U.S.C. § 702 provides that "[a] person suffering legal wrong because

28   of agency action, or adversely affected or aggrieved by agency action within the

<center>COMPLAINT</center>

1    meaning of a relevant statute, is entitled to judicial review thereof."

2        62.    5 U.S.C. § 704 provides in pertinent part that "final agency action for

3 which there is no other adequate remedy in a court are subject to judicial review."

4        63.    5 U.S.C. § 551(13) provides that "'agency action' includes the whole or

5 a part of an agency rule, order, license, sanction, relief, or the equivalent or denial

6 thereof, or failure to act. . . ."

7        64.    5 U.S.C. § 551(4) defines a "rule" as "the whole or a part of an agency

8 statement of general or particular applicability and future effect designed to

9 implement, interpret, or prescribe law or policy. . . ."

10        65.    The undated letter from the ATF's Firearms Technology Bureau

11 (Exhibit 1) regarding the Regulated Precursor is a "rule" as defined in 5 U.S.C. §

12 551(4) and is thus "agency action" as defined in 5 U.S.C. § 551(13).

13        66.    The ATF letter constitutes "final agency action" because it was the

14 consummation of ATF's decision-making process concerning whether the Regulated

15 Precursor is a firearm within the meaning of either 18 U.S.C. § 921(a)(3) and 27

16 C.F.R. § 478.11, in that such decision was not of a merely tentative or interlocutory

17 nature and because it is an action by which rights or obligations have been

18 determined.

19        67.    The ATF letter constitutes "final agency action" because it was the

20 consummation of ATF's decision-making process concerning whether unregulated

21 precursors with one or more of the two alleged indexing features on the Regulated

22 Precursor as described hereinabove renders such precursors a firearm within the

23 meaning of either 18 U.S.C. § 921(a)(3) and 27 C.F.R. § 478.11, in that such

24 decision was not of a merely tentative or interlocutory nature and because it is an

25 action by which rights or obligations have been determined.

26        68.    Likewise, ATF's practice of treating the Regulated Precursors as

27 "firearms," reflected in ATF's having seized them, constitutes an unlawful agency

28 action, since Regulated Precursors are not "firearms."

19

COMPLAINT

1    69.    The ATF's determination in its undated letter and in its practice was

2    arbitrary and capricious, and not in accordance with law.

3                                    **PRAYER**

4        WHEREFORE Plaintiff prays for relief as follows:

5        70.    For declaratory and injunctive relief;

6        71.    For reimbursement of reasonable attorney's fees and costs, as provided

7    for under applicable federal law; and

8        72.    For such other and further relief as may be just and proper.

9

10   Date: July 31, 2014                      **MICHEL & ASSOCIATES, P.C.**

11                                            /s/ C.D. Michel

12                                            C.D. Michel
13                                            Joshua Dale
                                              Joseph A. Silvoso, III
14                                            E-mail: cmichel@michellawyers.com
                                              E-mail: jdale@michellawyers.com
15                                            E-mail: jsilvoso@michellawyers.com
                                              Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

# EXHIBIT 1



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

*Martinsburg, WV 25405*

www.atf.gov

903050:MRC
3311/301179

Mr. Jason Davis
Davis & Associates
27201 Puerta Real
Suite 300
Mission Viejo, CA 92691

Dear Mr. Davis,

This is in reference to your letter dated March 4, 2014, requesting reconsideration of the
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) determination that the
EP80 prototype  submitted by EP Arms, LLC. (EP Arms) is classified as a "firearm
receiver" under the Gun Control Act of 1968 (GCA).  The basis for your request is your
belief that ATF's assumptions concerning the manufacturing process for the EP80 were
integral to our determination that the prototype constitutes a firearm for purposes of the
GCA.  That is not correct.  To the extent ATF made assumptions about the manufacturing
process, it was because details about that process were not provided with the July 30,
2013, request for classification. In any event, for the reasons articulated below, the details
provided in your March 4, 2014, letter do not change our ultimate conclusion that the
EP80 is a firearm receiver under the GCA.

As you are aware, the GCA, 18 U.S.C. § 921(a)(3), defines the term **"firearm"** as
follows: *...(A) any weapon (including a starter gun) which will or is designed to or may
readily be converted to expel a projectile by the action of an explosive; (B) the frame or
receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any
destructive device.  Such term does not include an antique firearm.*  Further, GCA
implementing regulations, 27 CFR § 478.11, define "firearm frame or receiver" as "that
part of a firearm which provides housing for the hammer, bolt or breechblock, and firing
mechanism, and which is usually threaded at its forward portion to receive the barrel."

Mr. Jason Davis                                                          Page 2

Our examination of this EP80 prototype submitted by EP Arms confirmed that it had the following features and characteristics:

1. Magazine well.
2. Magazine catch.
3. Bolt catch.
4. Pistol grip.
5. Forming and tapping for receiver-extension/buffer tube.
6. Front pivot-pin hole.
7. Rear take-down hole.
8. Holes drilled for the detent take-down and pivot pin, retainer buffer, detent fire-control selector and pistol-grip screw.

Further examination by the Firearms Technology Branch (FTB) revealed that excess material extended past the exterior walls of the casting, indicating the approximate locations of the holes to be drilled for the selector, hammer, and trigger pins.

In our initial classification this office included analysis of two separate and distinct issues. First, we advised that the EP Arms submission was a firearm receiver because the fire control cavity was created during the manufacturing process and was later filled with polymer—the item referred to in your appeal as the "biscuit." *In addition,* we noted that filling the fire control cavity with plastic was not sufficient to destroy the firearm.

You have not appealed this determination as being incorrect, but are appealing the determination that the EP80 receiver is a firearm because the manufacturing process differs from what is described in our determination letter. In your request for reconsideration, you describe that during the manufacturing process, the area comprising the fire control cavity is formed around a nylon core that you refer to as a "biscuit" and that at no stage in the manufacturing is the EP80 "back filled."

We previously advised that "the filling of the cavity at a later point does not change our classification….ATF has long held that this is not sufficient to destroy the receiver and remove the item from classification as a 'frame or receiver.'" We included this analysis to address any contention that inserting the biscuit would remove the item from classification as a firearm receiver.

However, based upon your newly supplied description of the EP Arms manufacturing process, we agree that this aspect of our analysis is not applicable to the EP80, as the biscuit is not meant to destroy the firearm. In fact, we understand that your contention is that this process prevents the item from reaching a stage of manufacture in which it may be classified as a "firearm receiver" claiming that "[a]t no time is a fire-control cavity formed during the manufacturing process….In fact; at no time does a fire-control cavity exist in the manufacturing process." We disagree.

The EP Arms manufacturing process represents a change from the processes by which AR-type firearms have historically been produced. ATF has long held that items such as receiver blanks–"castings" or "machined bodies" in which the fire-control cavity area is

Mr. Jason Davis                                            Page 3

completely solid and un-machined – have not yet reached a "stage of manufacture" to be classified as a "firearm receiver." These items are a *single piece of metal* that require a substantial amount of machining to the vital areas of the firearm. In your request for reconsideration, you noted several letters in which FTB determined that certain submissions were not firearm receivers. However, in each of those examples the fire-control cavity was the same material as the receiver itself and the material filling the fire-control cavity is integral to the item; therefore the fire-control "cavity" had not been created.

To illustrate, photo 1 is a receiver "blank." This is not classified as a "firearm receiver" because the fire-control cavity has not been machined in any way. It is a single piece of metal from which a firearm receiver may be produced through further machining.



Location of the Fire Control Cavity



**Photo 1**

To further illustrate this difference between the EP Arms manufacturing process and traditional metal "castings" or "machined bodies," consider the following. Photo 2 is an AR-type receiver with a fully machined fire-control cavity. The red box outlines the cavity. This is classified as a firearm receiver pursuant to the GCA.



**Photo 2**

Mr. Jason Davis                                                    Page 4

Photo 3 is an example of the EP Arms submission.  The "biscuit" is the white portion—
the exact size and dimensions of the functional fire-control cavity.  Notice that the biscuit
outlines the fire-control cavity as shown in photo 2.



**Photo 3**

Photo 4 is a side-view of the EP Arms design.  The top sample is made of clear plastic
and shows that the biscuit creates the internal dimensions of the fire-control cavity.



**Photo 4**

The photos illustrate that the EP Arms manufacturing process creates a fire-control cavity
through the use of a "biscuit."

Accordingly, based upon your description of the EP Arms manufacturing process, the EP
Arms submission is distinguishable from other "castings" or "blanks" that are not

Mr. Jason Davis                                                    Page 5

classified as firearms. Unlike "castings" or "blanks" which are formed as a single piece so that a fire-control cavity has not been made, EP Arms uses the biscuit specifically to create that fire-control cavity during the injection molding process. As described in your letter, it appears that the sole purpose of the "biscuit" is to differentiate the fire-control area from the rest of the receiver and thus facilitate the process of making the receiver into a functional firearm. ATF has long held that "indexing" of the fire-control area is sufficient to require classification as a firearm receiver. Based upon the EP Arms manufacturing process, it is clear that the "biscuit" serves to index the entire fire-control cavity. In fact, the biscuit is meant to differentiate the fire-control cavity from the rest of the firearm so that it may be easily identified and removed to create a functional firearm. See photo 5.



**Photo 5**

Therefore, the submitted sample is properly classified as a "firearm" as defined in 18 U.S.C. 921(a)(3) because the fire-control area is created during the manufacturing process through the use of the biscuit.

In addition to the formation of the fire-control cavity in the manufacturing process, your manufacturing process results in "excess material extending past the exterior walls of the casting, indicating the approximate locations of the holes to be drilled for the selector, hammer, and trigger pins." Based upon our previous understanding of the EP Arms manufacturing process, we did not analyze whether this excess material, on its own, would be sufficient to warrant classifying the EP80 as a firearm receiver. However, to remove any doubt about the correctness of our classification decision, we are including that analysis here.

The AR-15 platform is a two-part system generally comprised of a lower and an upper assembly. The lower assembly is classified as the receiver and a "firearm" because it provides the housing for the hammer and the firing mechanism, and contains mounting points for the upper assembly which accepts the barrel and houses the bolt or

Mr. Jason Davis                                                    Page 6

breechblock.  As stated above, an AR-15 receiver blank is not classified by ATF as a
firearm.  The point in the manufacturing process at which an AR-15 blank is classified as
a firearm is when it has been indexed for or machined in the fire-control recess area.
Such a receiver may also have had other machining performed, such as drilled pivot-pin
and takedown-pin hole(s).  However, based upon your explanation of the manufacturing
process, this excess material indexing the location for the holes to be drilled is, by itself,
sufficient to classify the sample as a firearm receiver.  See photo 6, below.



Indexing for the selector, hammer, and trigger pins

**Photo 6**

   If you require further information concerning our findings, we can be contacted at any
time.


                         Sincerely yours,


                         Earl Griffith
         Chief, Firearms Technology Branch

# EXHIBIT 2

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

*Martinsburg, WV 25405*

www.atf.gov

903050:MCP
3311/302035

MAY 0 5 2014

Mr. Bradley Reece
Palmetto State Defense, LLC
555 East Suber Road
Greer, SC 29650

Dear Mr. Reece,

This is in reference to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), which accompanied your prototype sample of an AR-10 type receiver blank your company intends to manufacture and market. Specifically, you requested an examination and classification of the submitted sample pursuant to the amended Gun Control Act of 1968 (GCA) and asked if it would be regulated as a "firearm" under the GCA.

As background, the GCA, 18 U.S.C. § 921(a)(3), defines the term "firearm" to include *any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive...[and] ...the frame or receiver of any such weapon....*

*Note: FTB uses the following terms to describe certain items (also see citation, p.3)—*

*The term "receiver blank" is used to describe forgings, castings, or machined bodies (defense articles) such as AR-15 receiver castings, AK receiver flats, etc., in various stages of folding/machining which are not classified as firearms.*

*The term "incomplete receiver" is used to describe forgings, castings, or machined bodies (defense articles) which have been classified as firearms but are not completely machined for use as a functional firearm receiver.*

*The term "receiver" is used to describe functional firearms frames or receivers.*

As you are aware, FTB has previously determined that an AR-10 type receiver blank which has no machining of any kind performed in the area of the trigger/hammer (fire-control) recess might not be classified as a firearm. Such a receiver blank could have **all** other machining operations performed, including pivot-pin and takedown-pin hole(s) and clearance for the takedown-pin lug, but must be completely solid and un-machined in the fire-control recess area. We have determined that in order to be considered "completely solid and un-machined in the fire-control recess area," the takedown-pin lug clearance area must be no longer than 1.6 inches, measured from immediately forward of the front of the buffer-retainer hole.

Our examination of the submitted item confirmed that the receiver blank has been partially machined, including a takedown pin hole and clearance for the takedown-pin lug. Our examination confirmed that the takedown-pin lug clearance area is less than 1.6 inches, measured from immediately forward of the front of the buffer-retainer hole (see photos below). The sample is completely solid and un-machined in the fire-control recess area and, accordingly, is not a "firearm" as defined in the GCA.



**Submitted prototype sample**

To facilitate return of the submitted sample, please provide FTB with an appropriate FedEx or similar account number within 60 days of receipt of this letter.

We thank you for your inquiry and trust the foregoing has been responsive to your request.

Sincerely yours,

Earl Griffith
Chief, Firearms Technology Branch

<sup>i</sup> **TITLE 27 CFR CHAPTER II**
**PART 447—IMPORTATION OF ARMS, AMMUNITION AND IMPLEMENTS OF WAR**

**Subpart B—Definitions**
**§ 447.11 Meaning of terms.**

**Defense articles.** Any item designated in § 447.21 or § 447.22. This term includes models, mockups, and other such items which reveal technical data directly relating to § 447.21 or § 447.22. For purposes of Category XXII, any item enumerated on the U.S. Munitions List (22 CFR Part 121).

**Subpart C—The U.S. Munitions Import List**
**§ 447.21 The U.S. Munitions Import List.**

The U.S. Munitions List compiled by the Department of State, Office of Defense Trade Controls, and published at 22 CFR 121.1, with the deletions indicated, has been adopted as an enumeration of the defense articles subject to controls under this part. The expurgated list, set out below, shall, for the purposes of this part, be known as the U.S. Munitions Import List:

**THE U.S. MUNITIONS IMPORT LIST**
**CATEGORY I—FIREARMS**
(a) Nonautomatic and semiautomatic firearms, to caliber .50 inclusive, combat shotguns, and shotguns with barrels less than 18 inches in length, and all components and parts for such firearms.
(b) Automatic firearms and all components and parts for such firearms to caliber .50 inclusive.
(c) Insurgency-counterinsurgency type firearms of other weapons having a special military application (e.g. close assault weapons systems) regardless of caliber and all components and parts for such firearms.
(d) Firearms silencers and suppressors, including flash suppressors.
(e) Riflescopes manufactured to military specifications and specifically designed or modified components therefor..

NOTE: Rifles, carbines, revolvers, and pistols, to caliber .50 inclusive, combat shotguns, and shotguns with barrels less than 18 inches in length are included under Category 1(a). Machineguns, submachineguns, machine pistols and fully automatic rifles to caliber .50 inclusive are included under Category 1(b).

**§ 447.22 Forgings, castings, and machined bodies.**
Articles on the U.S. Munitions Import List include articles in a partially completed state (such as forgings, castings, extrusions, and machined bodies) which have reached a stage in manufacture where they are clearly identifiable as defense articles. If the end-item is an article on the U.S. Munitions Import List, (including components, accessories, attachments and parts) then the particular forging, casting, extrusion, machined body, etc., is considered a defense article subject to the controls of this part, except for such items as are in normal commercial use.

# EXHIBIT 3

U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

903050:ELG
3311/2010-469

Martinsburg, West Virginia 25405

www.atf.gov

MAR 1 6 2010

Mr. Jason Renschler
Quentin Laser, LLC
751 N. Monterey Street
Gilbert, Arizona 85233

Dear Mr. Renschler:

This is in reference to your recently received correspondence and accompanying, partially machined, AR-15 pattern receiver forging that was submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), for classification with respect to the provisions of the amended Gun Control Act of 1968 (GCA).

As you are aware, the GCA, 18 U.S.C. § 921(a)(3), states that the term "firearm" includes—

*... (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon...*

Based on this definition, a firearm receiver casting or firearm receiver blank can itself be a "firearm" if completed to the point at which it can be recognized as a firearm frame or receiver.

Previously, FTB has determined that an AR-15 type receiver which has no machining of any kind performed in the area of the trigger/hammer recess might not be classified as a firearm. Such a receiver could have **all** other machining operations performed, including pivot-pin, takedown-pin hole(s), and clearance for the takedown-pin lug, but must be completely solid and un-machined in the trigger/hammer recess area.

Our examination revealed that the forging incorporates machining for the selector opening, which exceeds the allowable machining described above. Due to this operation, FTB finds that the submitted item is a "firearm" as defined in the GCA. In order to obtain a non-firearm classification, you must omit this machining operation (also see enclosed photo diagram).

-2-

Mr. Jason Renschler

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

-3-

Mr. Jason Renschler

## Obtaining a "Non-Firearm"



# EXHIBIT 4



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_Martinsburg, WV 25405_

www.atf.gov

903050:WJS
3311/300833

July 15, 2013

Mr. Tilden Smith
80 Percent Arms
202 East Alton Avenue
Suite A
Santa Ana, CA 92707

Dear Mr. Smith,

This is in reference to your correspondence, with enclosed samples, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB). In your letter, you asked for a classification of the partially completed AR-type receivers your company is planning to manufacture (see enclosed photos). Specifically, you want to know if the three submitted items, identified as samples 1, 2, and 3 (and reviewed below) would be classified as "firearms" under the Gun Control Act of 1968 (GCA).

SAMPLE #1

During the examination of this sample, FTB found that the following machining/drilling operations had been performed:

1. Front and rear assembly/pivot pin holes drilled.
2. Front and rear assembly/pivot-detent pin holes drilled.
3. Magazine-release and catch slots cut.
4. Rear of receiver drilled and threaded to accept buffer tube.
5. Buffer-retainer hole drilled.
6. Pistol-grip mounting area faced off and threaded.
7. Magazine well completed.
8. Trigger guard machined.
9. Receiver end-plate area machined.
10. Pistol-grip mounting area threaded.
11. Selector-lever detent hole drilled.

Mr. Tilden Smith                                                          Page 2

The machining operations <u>not</u> yet performed are as follows:

1. Milling out of fire-control cavity.
2. Selector-lever hole drilled.
3. Cutting of trigger slot.
4. Drilling of trigger pin hole.
5. Drilling of hammer pin hole.

The FTB examination of your submitted casting found that <u>**SAMPLE #1**</u> is not sufficiently complete to be classified as the frame or receiver of a firearm and thus would <u>not</u> be a "firearm" as defined in the GCA.

**EXHIBIT 5**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, WV 25405

www.atf.gov

903050: WJS
3311/300627

May 17, 2013

Mr. Doug Hughes
Operations Manager
Kenney Enterprises, Inc
4343 East Magnolia Street
Phoenix, AZ 85034

Dear Mr. Hughes,

This is in reference to your correspondence, with enclosed sample, to the Bureau of
Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB).
In your letter, you asked for a classification of the submitted, partially completed
AR-type receiver your company is planning to manufacture. Specifically, you wish to
know if this item would be classified as a "firearm" under the Gun Control Act of 1968
(GCA).

During the examination of your sample, FTB found that the following machining/drilling
operations performed on the submitted sample:

1. Front and rear assembly/pivot pin holes drilled.
2. Front and rear assembly/pivot detent pin holes drilled.
3. Selector-retainer hole drilled.
4. Magazine release and catch slots cut.
5. Trigger-guard holes drilled.
6. Rear of receiver drilled and threaded to accept buffer tube.
7. Buffer-retainer hole drilled.
8. Pistol-grip mounting area faced off, drilled, and threaded.
9. Magazine well completed.

The machining operations not yet performed are as follows:

1. Milling out of fire-control cavity.
2. Drilling of selector-lever hole.

Mr. Doug Hughes

    3. Cutting of trigger slot.
    4. Drilling of trigger pin hole.
    5. Drilling of hammer pin hole.

The FTB examination of your submitted casting and diagrams found that your submitted item will not be sufficiently complete to be classified as the frame or receiver of a firearm and thus would not be a "firearm" as defined in the GCA.

In closing, we should point out that the information found in correspondence from our Branch is intended only for use by the addressed individual or company with regard to a specific scenario described within that correspondence.

To facilitate return of your sample, please provide FTB with the appropriate FedEx account information within 60 days of receipt of this letter.

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request. Please do not hesitate to contact us if additional information is needed.

                    Sincerely yours,

                    Earl Griffith
          Chief, Firearms Technology Branch

**EXHIBIT 6**









JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED

**DEFENDANTS**

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; ATTORNEY GENERAL ERIC HOLDER, in his official capacity; B. TODD JONES, in his official capacity; and DOES 1 through 100, inclusive,

**(b)** County of Residence of First Listed Plaintiff  Orange
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Fresno
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
MICHEL & ASSOCIATES, PC
C.D. Michel- S.B.N. 144258
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☒ 2  U.S. Government Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C § 2201

Brief description of cause:
Declaration that certain products are not "firearms" and related injunction.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE  Janis L. Sammartino

14-CV-0548-JLS and

DOCKET NUMBER  14-CV-1424-JLS

DATE
7/31/14

SIGNATURE OF ATTORNEY OF RECORD
/s/ C.D. Michel

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

JS 44 Reverse  (Rev. 12/12)

**Case 3:14-cv-00548-JLS-BGS   Document 46-2   Filed 01/21/15   Page 46 of 46**
**Case 1:14-cv-01211---SAB   Document 1-1   Filed 07/31/14   Page 2 of 2**

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I. (a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
  United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
  United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
  Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
  Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**  **Origin.**  Place an "X" in one of the six boxes.
  Original Proceedings.  (1) Cases which originate in the United States district courts.
  Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
  Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
  Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
  Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
  Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
  Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
  Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.