1  DIANE KELLEHER
   LISA A. OLSON
2  U.S. Department of Justice
   Civil Division, Federal Programs Branch
3  20 Mass. Ave., N.W., Room 7300
   Washington, D.C. 20530
4  Telephone: (202) 514-5633
   Facsimile: (202) 616-8470
5
6  Attorneys for Defendants
7
8
                IN THE UNITED STATES DISTRICT COURT
9
                EASTERN DISTRICT OF CALIFORNIA
10
11
12
13
   CALIFORNIA RIFLE & PISTOL          CASE NO.  1:14-cv-01211 JAM-SAB
14 ASSOCIATION, INCORPORATED,

15            Plaintiff,

16      v.                            **MEMORANDUM IN SUPPORT
                                      OF DEFENDANTS' MOTION TO
17                                    DISMISS, OR ALTERNATIVELY,
   BUREAU OF ALCOHOL, TOBACCO,        FOR SUMMARY JUDGMENT**
18 FIREARMS, AND EXPLOSIVES, et al.,
                                      Date:   March 25, 2015
19            Defendants.             Time:   9:30 a.m.
                                      Judge:  Honorable John A. Mendez
20                                    Crtrm:  6, 14th Floor
21
22
23
24
25
26
27
28

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al,*, No. 14-cv-01211 JAM-SAB

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

A.   Applicability of the Gun Control Act of 1968 to Receivers ................................3

B.   The Receiver of the AR-15 Rifle ................................................................4

C.   General Classification Criteria for Receivers ................................................6

D.   The EP80's Already Formed Fire-Control Cavity and Indexing ........................8

E.   ATF's Classification of the EP80 as a "Firearm Receiver" ............................8

ARGUMENT ....................................................................................................10

I.   THE CASE SHOULD BE DISMISSED FOR LACK OF JURISDICTION
     BECAUSE PLAINTIFF LACKS STANDING TO PURSUE ITS CLAIMS ................10

     A.   Plaintiff Lacks Representational Standing ................................................11

     B.   Plaintiff Lacks Prudential Standing ........................................................12

II.  SUMMARY JUDGMENT SHOULD BE GRANTED FOR DEFENDANTS
     BECAUSE THEIR ACTIONS WERE NOT ARBITRARY AND CAPRICIOUS ........13

     A.   The Standard of Review is Narrow ........................................................13

     B.   ATF's Classification of Plaintiff's EP80 as a Receiver Was Reasonable ........15

          1.   The EP80's Fire-Control Cavity is Not Solid or Unformed,
               and the Biscuit and Protrusions Provide Guidance As to How
               to Complete It ........................................................................15

          2.   ATF's Classification of the EP80 is Consistent with Its Prior
               Decisions on Other Items ........................................................18

CONCLUSION ..................................................................................................21

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

i

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

Allen v. Wright,
    468 U.S. 737 (1984)...................................................................................... 11

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)...................................................................................... 13

Associated Gen. Contractors, Inc. v. Coal. for Econ. Equity,
    950 F.2d 1401 (9th Cir. 1991)...................................................................... 11

Associated Gen. Contractors of Am. v. Cal. Dept. of Transp.,
    713 F.3d 1187 (9th Cir. 2013)...................................................................... 11

Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, BLM,
    273 F.3d 1229 (9th Cir. 2001)...................................................................... 14

Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,
    462 U.S. 87 (1983)........................................................................................ 14

Barnes v. U.S. Dep't of Transp.,
    655 F.3d 1124 (9th Cir. 2011) ...................................................................... 14

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...................................................................................... 13

Citizens to Preserve Overton Park, Inc. v. Volpe,
    401 U.S. 402 (1971)...................................................................................... 14

Defenders of Wildlife v. Flowers,
    414 F.3d 1066 (9th Cir. 2005) ...................................................................... 14

Elk Grove Unified Sch. Dist. v. Newdow,
    542 U.S. 1 (2004).......................................................................................... 12

Fair Emp't Council v. BMC Mktg. Corp.,
    28 F.3d 1268 (D.C. Cir. 1994) ...................................................................... 13

Farmer v. Higgins,
    907 F.2d 1041 (11th Cir. 1990) .................................................................... 14

Fla. Power & Light Co. v. Lorion,
    470 U.S. 729 (1985)...................................................................................... 14

Gilbert Equip. Co. v. Higgins,
    709 F. Supp. 1071 (S.D. Ala. 1989)..................................................... 3, 15, 18

Gun South, Inc. v. Brady,
    877 F.2d 858 (11th Cir. 1989) ...................................................................... 15

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

ii

Inland Empire Pub. Lands Council v. Glickman,
    88 F.3d 697 (9th Cir. 1996) ....................................................... 14

Innovator Enters. v. Jones,,
    __ F. Supp. 2d. __, 2014 U.S. Dist. LEXIS 35535 (D.D.C. Mar. 19, 2014) ............................ 3

J.L. v. SSA, 971 F.2d 260 (9th Cir. 1992).......................................................12

Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.,
    78 F.3d 1360 (9th Cir. 1996) ....................................................... 11

Lexmark Int'l, Inc. v. Static Control Components, Inc.,
    134 S. Ct. 1377 (2014) ............................................................. 12

Lopez v. Candaele,
    630 F.3d 775 (9th Cir. 2010) ....................................................... 11

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)................................................................ 11

Lycurgan, Inc. v. Jones,
    No. 14-cv-00548-JLS-BGS (S.D. Cal. filed March 11, 2014) ............................ 12

March v. Or. Natural Res. Council,
    490 U.S. 360 (1989)................................................................ 14

Modern Muzzleloading v. Magaw,
    18 F. Supp. 2d 29 (D.D.C. 1998) ............................................... 15, 18

Mullenix v. ATF,
    2008 WL 2620175 (E.D.N.C. July 2, 2008) ...................................... 15, 18

N. Plains Res. Council, Inc. v. Surface Transp. Bd.,
    668 F.3d 1067 (9th Cir. 2011) ..................................................... 14

Native Vill. of Kivalina IRA Council v. U.S. Evtl. Prot. Agency,
    687 F.3d 1216 (9th Cir. 2012) ..................................................... 14

Occidental Eng'g Co. v. I.N.S.,
    753 F.2d 766 (9th Cir. 1985) ...................................................... 13

Police Automatic Weapons Servs. v. Benson,
    837 F. Supp. 1070 (D. Or. 1993) .................................................... 3

Renne v. Geary,
    501 U.S. 312 (1991)................................................................ 11

Singleton v. Wulff,
    428 U.S. 106 (1976)................................................................ 13

Steel Co. v. Citizens for a Better Env't,
    523 U.S. 83 (1988)................................................................. 11

U.S. v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

iii

Starter Guns,
   443 F.2d 463 (2d Cir. 1971)................................................................ 6, 17

U.S. v. Mullins,
   446 F.3d 750 (8th Cir. 2006) ............................................................. 6, 17

U.S. v. Reed,
   114 F.3d 1053 (10th Cir. 1997) ......................................................... 6, 17

U.S. v. Smith,
   477 F.2d 399 (8th Cir. 1973) ............................................................. 7, 17

U.S. v. Stewart,
   2001 WL 194917 (D. Ariz) ............................................................... 6, 17

Valley Forge Christian Coll. v. Am. United for Separation of Church & State,
   454 U.S. 464 (1982)............................................................................ 10

Warth v. Seldin,
   422 U.S. 490 (1975)............................................................................ 11

Wetlands Action Network v. U.S. Army Corps of Eng'rs,
   222 F.3d 1105 (9th Cir. 2000) ........................................................... 14

## STATUTES

5 U.S.C. § 701 et seq............................................................................. 13
5 U.S.C. §§ 702, 706............................................................................. 13
5 U.S.C. § 706(2)(A)............................................................................. 13
18 U.S.C. § 921 et seq......................................................................... 1, 3
18 U.S.C. § 921(a)(23)........................................................................... 20
18 U.S.C. § 921(a)(28)............................................................................. 4
18 U.S.C. § 921(a)(3)........................................................................ passim
18 U.S.C. § 922(q)(1)............................................................................... 8
18 U.S.C. § 922(t).................................................................................... 4
18 U.S.C. § 923(a).................................................................................... 4
18 U.S.C. § 923(i).................................................................................... 4
18 U.S.C. § 926...................................................................................... 3
26 U.S.C. § 5845(b)............................................................................... 20

## REGULATIONS

27 C.F.R. § 478.11........................................................................... 4, 5, 6
27 C.F.R. § 478.41.................................................................................. 4
27 C.F.R. § 478.92.................................................................................. 4
28 C.F.R. § 0.130(a)(1), (2)...................................................................... 3

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1)......................................................................... 11

Fed. R. Civ. P. 56(c) ............................................................................. 13

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

iv

**LEGISLATIVE MATERIALS**

Interstate Shipment of Firearms: Hearing on S. 1975 and S. 2345 Before the
  S. Comm. on Commerce, 88th Cong. 286 (1964) .................................................... 6

S. Rep. No. 90-1097, at 28 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2113-2114 ............ 3, 8

Technical Explanation of Amendments to the Federal Firearms Act Proposed by
  S. 1975 (89th Cong., 1st Sess.) ....................................................................... 6

**MISCELLANEOUS**

Webster's New World College Dictionary 207 (4th ed. 2010) ...................................... 4

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

v

## INTRODUCTION

For more than three decades, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has reviewed numerous items to determine if they should be properly classified as "firearms" under the Gun Control Act of 1968, 18 U.S.C. § 921 et seq., as amended ("Gun Control Act" or "Act").  In making these determinations, ATF brings its technical, scientific, and mechanical expertise to bear.  In this case, ATF reasonably determined that the item at issue (the EP80) can easily and simply be made suitable for use as part of a functional weapon, and that the EP80 is therefore a firearm within the meaning of the Gun Control Act.

But as a threshold matter, plaintiff cannot bring a federal lawsuit challenging ATF's decision without the participation of the EP Arms, the manufacturer of the EP80, and the entity affected by the ATF decision.  EP Arms is not a plaintiff in this action.  Plaintiff, a firearms-related organization, avers that EP Arms is one of its members, but such an allegation is not sufficient to confer standing on plaintiff itself.  The complaint does not allege that EP Arms suffered any harm, and plaintiff lacks representational and prudential standing to champion the cause of those who have chosen not to assert their own rights.  As a result, the case should be dismissed.

Even if plaintiff did have standing, however, defendants are entitled to summary judgment because ATF's decision was a reasonable and based on longstanding precedent.  Plaintiff's primary objection to ATF's decision – that it allegedly did not take into account the sequence in which the EP80 was manufactured -- does not undermine ATF's decision.  Items which meet the statutory definition of a "firearm" are subject to regulatory restrictions designed to keep firearms out of the hands of those not legally entitled to possess them and to assist law enforcement in combatting crime.  "Firearms" are defined as weapons that can be readily converted to expel a projectile by the action of an explosive, as well as the "receivers" of such weapons.  The "receiver" is the part of a weapon that houses vital fire-control components that allow the weapon to shoot, such as the trigger and hammer.  AR-type receivers such as the EP80 have a space within them called the fire-control cavity, which accommodates the firing

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

1

1   components.  ATF has properly classified the EP80 as subject to federal firearms regulations

2   because it can be made suitable for use as part of a functional weapon in less than an hour, using

3   commonly available tools and no special skill.

4        ATF's decision regarding the EP80 is consistent with its prior decisions and its

5   experience in making similar technical assessments about other items submitted for its review.

6   In accordance with federal statutory and case law, and guided by its own expertise, ATF has

7   determined that where the fire-control cavity area on a product has been even partially formed or

8   marked where drilling should occur to create it (so-called "indexing"), the device should be

9   classified as a receiver.  On the other hand, where the fire-control cavity area is a solid, single

10  block of metal or plastic and is unindexed, the device should not be classified as a receiver.

11  ATF's classifications are based on the degree of difficulty involved in the necessary machining

12  and drilling, the cost and availability of the tools needed, the skill required, and the time it would

13  take to fashion the unmachined object, or "blank," into a completed receiver.   That is to say, an

14  individual with a receiver whose critical areas have been partially fashioned or indexed can more

15  easily make the item suitable for use as part of a functional weapon -- one that will fire.

16       The device at issue in this case, the EP80, has properly been classified as a receiver

17  because it contains a completely formed fire-control cavity, as well as indexing in that area for

18  the holes that attach the firing components.  Although the cavity is filled with plastic, that plastic,

19  which is also of a contrasting color, can be easily removed with commonly available tools,

20  leaving a pocket of the dimensions necessary to accommodate the fire-control components.

21  Plaintiff's claims to the contrary fail to show that ATF's decision was incorrect.  First, plaintiff

22  argues that the EP80 is not a receiver because the plastic filler, which plaintiff calls a "biscuit," is

23  allegedly formed first (to the dimensions of the fire-control cavity), and the remainder of the

24  device is then built around it.  But how and in what order that cavity was created is irrelevant for

25  purposes of ATF's proper classification of the EP80 as a receiver.  What matters is that the EP80

26  contains a fully formed fire-control area whose measurements are clearly defined -- three-

27  dimensionally -- by plastic that can be removed with ordinary tools and no particular skill.  As

28

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

2

set forth in more detail below, and as reflected in the agency's administrative record, ATF's

determination that the EP80 should be properly classified as a firearm is reasonable, and

defendants are entitled to summary judgment.

## BACKGROUND

**A.      Applicability of the Gun Control Act of 1968 to Receivers**

Congress enacted the Gun Control Act to help keep firearms out of the hands of those not

legally entitled to possess them because of age, criminal background, or incompetency, and to

assist law enforcement authorities to combat the ever increasing prevalence of crime in the

United States.  S. Rep. No. 90-1097, at 28 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2113-

2114; Gilbert Equip. Co. v. Higgins, 709 F. Supp. 1071, 1081-82 (S.D. Ala. 1989).  As Congress

noted, "[t]he ready availability; that is, ease with which any person can anonymously acquire

firearms (including criminals, juveniles without the knowledge or consent of their parents or

guardians, narcotic addicts, mental defectives, armed groups who would supplant duly

constituted authorities, and others whose possession of firearms is similarly contrary to the

public interest) is a matter of serious national concern."  S. Rep. No. 90-1097, at 28.  ATF is the

federal agency charged with the administration of the Act.  See 18 U.S.C. § 926 ("The Attorney

General may prescribe only such rules and regulations as are necessary to carry out the

provisions of this chapter [18 U.S.C. §§ 921 et seq.] . . . .").  This enforcement authority is

delegated to the Director of ATF.  28 C.F.R. § 0.130(a)(1), (2).

Among ATF's responsibilities is the classification of firearms, which is handled by the

Firearms Technology Branch ("FTB") (now called the Firearms and Ammunition Technology

Division), ATF's technical authority relating to firearms and their classification under federal

firearms laws.  See Innovator Enters. v. Jones, __ F. Supp. 2d. __, 2014 WL 1045975, *5

(D.D.C. Mar. 19, 2014) ("The Firearms Technology Branch of ATF has expertise in classifying

firearms and firearm silencers—much more so than the Court.  When considered at this high

level of generality, FTB's expertise weighs in favor of deference."); see also Police Automatic

Weapons Servs. v. Benson, 837 F. Supp. 1070, 1074 (D. Or. 1993) ("[T]he Firearms Technology

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

3

Branch is the division of the ATF responsible for testing and evaluating firearms for 'classification under' the GCA.")  FTB routinely inspects devices submitted by the public or industry and classifies the submissions accordingly.  See http://www.atf.gov/content/firearms/firearms-technology.  FTB issued approximately 253 classification letters in 2013 and approximately 242 classification letters in 2014.  Administrative Record[1] ("AR") 351-352.

A firearm is defined in the Gun Control Act as:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame *or receiver of any such weapon*; (C) any firearm muffler or firearm silencer; or (D) any destructive device.

18 U.S.C. § 921(a)(3) (emphasis added); see also 27 C.F.R. § 478.11 (same).  Pursuant to its authority to enforce the Act, ATF defines a "receiver" as "that part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel."  27 C.F.R. § 478.11.

Those who wish to import, manufacture, or deal in firearms as defined by the Act must be licensed by the Attorney General, 18 U.S.C. § 923(a), 27 C.F.R. § 478.41; must mark each firearm for identification purposes, 18 U.S.C. § 923(i), 27 C.F.R. § 478.92; and must maintain records of their firearms transactions, 27 C.F.R. Subpart H.  Firearm licensees must also perform a background check on persons to whom they are transferring a firearm.  18 U.S.C. § 922(t).

**B.      The Receiver of the AR-15 Rifle**

The weapon at issue in this case is an "AR-15-type" firearm.  The designation "AR" is a reference to the company that originally designed the weapon, Armalite Rifle, although the AR-15 is currently manufactured by the Colt company.  The AR-15 is the particular model of the

---

[1]  The Administrative Record has been filed contemporaneously herewith.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

4

weapon, which is a semi-automatic, civilian version of the 5.56 -caliber[2] M-16 machinegun used by the United States military.  A semi-automatic weapon is one that fires a single round with each function (push or pull) of the trigger.  Semiautomatic firearms include handguns, rifles and shotguns.  See, e.g., 18 U.S.C. § 921(a)(28).  A semi-automatic contrasts, for example, with a fully automatic weapon, such as a machine gun, which can automatically shoot more than one shot, without manual reloading, with a single function of the trigger.

The AR-15 is composed of two separate "parts" -- an upper "assembly" and a lower "receiver."  See Figure 1 (attached as Exhibit 1); AR 377.  In this case the receiver is called the EP80,[3] the product designation given to it by its manufacturer, EP Arms.  In accordance with the regulatory definition, 27 C.F.R. § 478.11, the receiver of the AR-15 houses the firing mechanism, whose parts consist of the hammer, trigger, disconnector, selector, pins, and springs.  AR 281.  The parts comprising the firing mechanism are contained in the fire control cavity, AR 281, and are the components of the weapon necessary to initiate the firing.  AR 295-297.  The receiver of the AR-15 also contains mounting points at the places where the upper assembly is connected to the barrel.  AR 341-42, 379.

The upper assembly of the AR-15 contains various other parts of the weapon.  These include the bolt-carrier group and the attachment point for the barrel and the gas tube, which collectively assist in loading and chambering a cartridge, and which return pressurized gas to cycle the operation of the weapon.  AR 303, 317, 330-31.  At times the upper assembly of a weapon is somewhat imprecisely referred to as the "upper receiver."  AR 279.  The upper assembly does contain the bolt and is usually "threaded at its forward portion to receive the barrel," features which are consistent with the regulatory definition of a receiver.  See 27 C.F.R. § 478.11.  However, ATF does not consider the upper assembly to be the "receiver" because it

---

[2]  A caliber is "the diameter of the bore of a gun, usually measured in hundredths of inches or in millimeters."  Webster's New World College Dictionary 207 (4th ed. 2010).

[3]  The terms "precursor" and "80% receiver" used in the Complaint, see, e.g., Complaint ¶ 20, are plaintiff's own terminology and are not terms recognized in federal law.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

5

does not contain the firing mechanism, and the upper assembly has not been legally classified as the "receiver" since passage of the Act.  AR 294.  The upper assembly of the AR-15 is therefore not a "firearm" and is generally unregulated under the Act.[4]  AR 294.  Accordingly, the parts composing the upper assembly can be bought and sold without meeting licensing, marking, recordkeeping, or background-check requirements of the Act.

**C.   General Classification Criteria for Receivers**

The term "receiver blank" is used to describe forgings, castings, or machined bodies such as AR-15 receiver castings, in various stages of folding or machining, which are not classified as firearms.  AR 119.  For a casting to qualify as a receiver, it must have reached a certain advanced stage of manufacture.  AR 63, 119.  ATF makes this determination based upon the difficulty of the process (i.e., of machining and drilling), the cost and availability of the tools required, the skill required, and the time it would take to fashion the blank into a an item suitable for use as part of a functional weapon .  AR 60, 62.  These criteria are informed, although not controlled, by the statute and by judicial decisions which somewhat analogously provide guidance as to when a weapon "may readily be converted to expel a projectile by the action of an explosive," 18 U.S.C. § 921(a)(3).  See, e.g., U.S. v. Mullins, 446 F.3d 750, 756 (8th Cir. 2006) (finding gun was "readily convertible" where it could be converted to expel a projectile without any specialized knowledge in less than an hour, and in minutes by an expert); U.S. v. Reed, 114 F.3d 1053, 1057 (10th Cir. 1997) (upholding firearms conviction where the defense expert testified that the gun was workable after fifteen to twenty minutes of manipulation); U.S. v. 16,179 Molso

---

[4]   The upper assembly, along with all other parts of the weapon, were originally regulated under the Federal Firearms Act (the operative federal law prior to the Gun Control Act of 1968). However, in passing the latter Act, Congress determined that the lower receiver was the only "part" of the firearm that would be considered the regulated "receiver" under federal law.  The reason for the decision to limit regulation to the lower receiver was that it had become "impracticable, if not impossible, to treat each small part of a firearm as if it were a weapon."  AR 223, Interstate Shipment of Firearms: Hearing on S. 1975 and S. 2345 Before the S. Comm. on Commerce, 88th Cong. 286 (1964) (Technical Explanation of Amendments to the Federal Firearms Act Proposed by S. 1975 (89th Cong., 1st Sess.)).  Accordingly, Congress determined to eliminate all but frames and receivers from the provisions of the Act.  Id.  The agency was responsible for defining what would constitute a receiver.  AR 235-36.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

6

1  Italian .22 Caliber Winlee Derringer Convertible Starter Guns, 443 F.2d 463, 465-66 (2d Cir.

2  1971) (holding that starter guns that could be converted to fire live ammunition in twelve

3  minutes or less by means of an electric drill were "readily convertible"); U.S. v. Stewart, 2001

4  WL 194917, *1-2 (D. Ariz) (finding that parts kit was a firearm where it contained all parts

5  necessary to complete the rifle, and had a partially machined receiver whose manufacturing

6  could be completed in thirty minutes.); see also U.S. v. Smith, 477 F.2d 399, 400 (8th Cir. 1973)

7  (per curiam) (holding that a machine gun could be "readily restored to shoot" automatically

8  where process would take an eight-hour day in a properly equipped machine shop).

9      ATF's technical experts have determined that for an AR-type receiver blank to remain

10  outside the purview of the Act, its fire-control area must remain solid, viz., uncreated, unformed,

11  and unmachined in any way.  See AR 57-59, 69, 82; see also AR 279, 286-90.  In order to ensure

12  consistency, ATF created this uniformly applicable baseline standard, determining that the

13  critical manufacturing process occurs when any step is taken toward completion of the critical

14  area.  In the case of AR-type firearms this is the fire-control cavity on the lower receiver, as

15  indicated in Figure 2 (attached as Exhibit 1). AR 379.

16      As an example of ATF's adherence to this standard, the upper and lower portions of the

17  weapon are attached by a lug on the upper assembly which is inserted into a hole on the receiver.

18  See Figure 8 (attached as Exhibit 1); AR 294, 297, 379.  ATF has specified that, in order for the

19  receiver "to be considered 'completely solid and un-machined in the fire-control recess area,'"

20  that hole "must be no longer than .800 inch, measured from immediately forward of the front of

21  the buffer retainer hole." See AR 82, 86, 285.  The purpose of this specification is to prevent any

22  encroachment into the fire-control cavity by the drilling of a hole that is any larger.  See e.g. AR

23  82.

24      The same rationale applies to ATF's determination that the "indexing" of any part of the

25  fire-control area would require a device to be classified as a firearm "receiver."  See e.g. AR 86,

26  135, 138, 140.  The term "indexing" refers to the placement of marks on a receiver to indicate

27  the exact location where one or more critical machining operations are necessary to make the

28

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

weapon functional.  See e.g. AR 138.  An AR-15 has been indexed if (1) the fire control cavity has been milled or marked with appropriate dimensions; or (2) any of the pin holes into which the fire-control component are mounted have been drilled or marked with appropriate dimensions.  AR 140.

ATF's position that the fire-control area must remain completely solid and unindexed is supported by law enforcement and public safety considerations.  To allow that an item must be fully operational before it may be classified as a firearm would enable manufacturers to produce devices that are all but fully functional weapons, but that cannot be classified as firearms because they require some very minimal amount of tooling before they can shoot.  Such classification decisions would thereby allow manufacturers to circumvent licensing, regulation, and serialization requirements, and would allow individuals to evade background checks, thereby undermining the Gun Control Act.  See, e.g., 18 U.S.C. § 922(q)(1) (Congressional finding that "crime . . . involving guns, is a pervasive, nationwide problem"); see also S. Rep. No. 90-1097..

**D.    The EP80's Already Formed Fire-Control Cavity and Indexing**

The receiver at issue here, the EP80, is made of Nylon-type reinforced polymer.  AR 11.  Its fire-control cavity is filled with polymer of a different color, AR 23-25, 275-78, as pictured in Figure 3-4 (attached as Exhibit 1). AR 355-61.

In contrast, the receiver blanks that ATF has determined are not firearms do not have a fire-control cavity that has been created, altered, or filled with any insert or otherwise indexed in any way.  AR 57-59, 95-113.  A receiver blank is pictured in Figure5 (attached as Exhibit 1). AR 279. The EP80 also has material protruding from the exterior walls of the casting at the spots where holes must be drilled for the selector (the switch that allows a gun to be placed in safety mode or firing mode) and the pins that attach the hammer and trigger.  AR 355, 357.  These protrusions are indicated in the picture of the EP80 in Figure 7 (attached as Exhibit 1). The exterior walls of the casting on receiver blanks, on the other hand, are completely smooth and unindexed, as shown in Figure 6 (attached as Exhibit 1). AR 279.

**E.    ATF's Classification of the EP80 as a "Firearm Receiver"**

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

8

On July 20, 2013, EP Arms, the manufacturer of the EP80 and a member of plaintiff California Rifle and Pistol Association, asked ATF for a determination as to whether the EP80 should be classified as a firearm. AR 1. EP Arms contended that the casting it submitted was not a firearm because it would require further machining in order to be capable of being assembled with other parts to put together a firearm. AR 3. Citing prior determinations, EP Arms claimed that ATF had offered inconsistent opinions regarding the extent to which such raw material must be machined in order to be deemed a firearm. AR 4.

ATF responded on February 7, 2014, that the EP80 was properly classified as a "firearm receiver" because the fire-control cavity had been formed during the manufacturing process. AR 8. Although the fire-control cavity was filled with plastic material, or polymer, the submitted casting had reached a point in its manufacture to be classified as a firearm. AR 8. The fact that the polymer had to be removed before the fire-control components could be installed did not alter the fact that the fire-control cavity was formed. AR 8. ATF also noted the existence of protrusions on the exterior walls of the casting device indicating the approximate locations of holes to be drilled for the selector, hammer, and trigger pins. AR 8.

EP Arms then filed an appeal on March 4, 2014, claiming that ATF's decision was based on a misunderstanding of the process by which the EP80 was manufactured. AR 10. Specifically, EP Arms explained that the plastic core of the item, or "biscuit," was manufactured first and then placed inside the cavity of a secondary mold, which was then injected with material to create the overall shape of the product. AR 11. Therefore, according to EP Arms, the casting was not a receiver or firearm, because "at no time does a fire-control cavity exist." AR 11.

ATF declined to reverse its determination, AR 20. ATF explained that it has long held that "items such as receiver blanks – castings' or 'machined bodies' in which the fire-control cavity area is completely solid and unmachined – have not yet reached a 'stage of manufacture' to be classified as a 'firearm receiver,'" but that, unlike the EP80, "[t]hese items are a *single piece of* metal that require a substantial amount of machining to the vital areas of the firearm."

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

9

AR 21-22.  As ATF noted, each of the instances cited by plaintiff in which FTB had determined that certain submissions were not firearm receivers involved a fire-control cavity that "was the same material as the receiver itself and the material filling the fire-control cavity is integral to the item; therefore the fire-control 'cavity' had not been created."  AR 22.  Such characteristics contrast with the EP80, whose fire-control cavity was formed and filled with a different material than the surrounding parts.

ATF pointed out that the manufacturing process for the EP80 created a fire-control cavity through the use of a "biscuit" during the molding process "of the exact size and dimensions of the functional fire-control cavity."   AR 23-24.  In contrast to castings or blanks which are formed as a single piece in which the fire-control cavity has not been made, the biscuit actually "creates the internal dimensions of the fire-control cavity."  AR 23.  In fact, it appeared that the "sole purpose of the 'biscuit' is to differentiate the fire-control area from the rest of the receiver and thus facilitate the process of making the receiver into a functional firearm."  AR 24.  Based on the EP Arms manufacturing process, it was clear that the biscuit served "to index the entire fire-control cavity" so that it could be easily identified and the biscuit could be removed to create a working firearm.  AR 24.  ATF concluded that the EP80 was therefore "properly classified as a 'firearm' as defined in 18 U.S.C. 921(a)(3) because the fire-control area is created during the manufacturing process through the use of the biscuit."  AR 24.

ATF also pointed out that the manufacturing process results in "'excess material extending past the exterior walls of the casting, indicating the approximate locations of the holes to be drilled for the selector, hammer, and trigger pins.'"  AR 24.  According to ATF, "the point in the manufacturing process at which an AR-15 blank is classified as a firearm is when it has been indexed for or machined in the fire-control recess area."  AR 25.  Thus, ATF concluded that the "excess material indexing the location for the holes to be drilled is, by itself, sufficient to classify the sample as a firearm receiver."  AR 25.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

10

## ARGUMENT

**I.   THE CASE SHOULD BE DISMISSED FOR LACK OF JURISDICTION BECAUSE PLAINTIFF LACKS STANDING TO PURSUE ITS CLAIMS**

Plaintiff has failed to meet its burden of establishing this Court's subject matter jurisdiction over its claims because it does not meet the "bedrock" constitutional requirement that it present a justiciable "case or controversy" for this Court's decision.  See Valley Forge Christian Coll. v. Am. United for Separation of Church & State, 454 U.S. 464, 471 (1982).  Article III of the U.S. Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'"  Allen v. Wright, 468 U.S. 737, 750 (1984).  The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Plaintiffs bear the burden of pleading sufficient factual information to conclude that this Court has jurisdiction.  See Renne v. Geary, 501 U.S. 312, 315 (1991); Lopez v. Candaele, 630 F.3d 775, 787 (9th Cir. 2010); see Fed. R. Civ. P. 12(b)(1).  Because standing goes to the power of a federal court to adjudicate a case, resolution of the standing question is necessarily antecedent to any decision on the merits.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1988).

### A.   Plaintiff Lacks Representational Standing

Plaintiff lacks standing to obtain relief as a result of ATF's determination regarding the EP80 submitted by EP Arms, which is not a party to this case.   Plaintiff asserts that EP Arms is one of its members and is the manufacturer of the EP80.  Complaint ¶ 24.  However, an organization may have "representational" standing to bring claims based on the rights of individual members only when it demonstrates, inter alia, that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Associated Gen. Contractors of Am. v. Cal. Dept. of Transp., 713 F.3d 1187, 1194 (9th Cir. 2013); Representational standing does not exist where "claims are not common to the entire membership, nor shared by all in equal degree," but rather "whatever injury may have been suffered is peculiar to the individual members concerned, and both the fact and extent of the

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

11

injury would require individualized proof." Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv., 78 F.3d 1360, 1367 (9th Cir. 1996) (citing Warth v. Seldin, 422 U.S. 490, 515-16 (1975), and Associated Gen. Contractors, Inc. v. Coal. for Econ. Equity, 950 F.2d 1401, 1408 (9th Cir. 1991)); see also J.L. v. SSA, 971 F.2d 260, 268 n.8 (9th Cir. 1992) (noting that even to sue on its own behalf, an association "must, like any other plaintiff, satisfy the constitutional and prudential considerations of standing").

Here, individual participation by EP Arms would be necessary to determine whether it relied on ATF's determination and was actually injured by such reliance, and whether plaintiff's requested injunctive and declaratory relief would redress any such injury. EP Arms has not seen fit to sue ATF on its own to challenge the decision regarding the EP80, and the complaint does not plead that EP Arms even wants the relief being sought on its behalf. Indeed, while plaintiff purports to represent, among others, California purchasers, manufacturers, and sellers of products like the EP80 throughout California, Complaint ¶¶ 4, 5, at least one other California purveyor of the EP80 has brought its own lawsuit against ATF raising claims that are nearly identical to those raised in the present case. Lycurgan, Inc. v. Jones, No. 14-cv-00548-JLS-BGS (S.D. Cal. filed March 11, 2014). Moreover, although plaintiff purportedly seeks relief on behalf of EP Arms, it is unclear whether EP Arms would consider itself bound by an adverse ruling in this case, and ATF could very well face another lawsuit brought by EP Arms itself that is identical to this one.

Finally, as the complaint indicates, the EP80 was manufactured in a novel way with distinct features. See Complaint ¶¶ 25-32. An ATF classification was sought for the EP80 itself. Id. ¶ 24. A general and unspecified statement that plaintiff represents other entities that are also generally interested in purveying similar items, see id. ¶ 5, is insufficient to connect them to the device and decision at issue in this matter. Plaintiff therefore does not meet the test for associational standing.

## B.    Plaintiff Lacks Prudential Standing

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

12

1    A plaintiff must also satisfy the prudential requirements for standing that have been

2  adopted by the judiciary.  See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11-12

3  (2004).  These prudential limits on standing, which must be satisfied in addition to Article III

4  constitutional standards, include "the general prohibition on a litigant's raising another person's

5  legal rights, the rule barring adjudication of generalized grievances more appropriately addressed

6  in the representative branches, and the requirement that a plaintiff's complaint fall within the

7  zone of interests protected by the law invoked."  See Elk Grove, 542 U.S. at 12. [5]  Prudential

8  standing requirements preclude a plaintiff from asserting the rights of a third party.  See Fair

9  Emp't Council v. BMC Mktg. Corp., 28 F.3d 1268, 1277 (D.C. Cir. 1994).  "Federal courts must

10  hesitate before resolving a controversy ... on the basis of the rights of third persons not parties to

11  the litigation."  Singleton v. Wulff, 428 U.S. 106, 113 (1976).  "First, the courts should not

12  adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either

13  do not wish to assert them, or will be able to enjoy them regardless of whether the in-court

14  litigant is successful or not."  Id. at 113–14.  "Second, third parties themselves usually will be the

15  best proponents of their own rights."  Id. at 114.

16    The entity actually allegedly harmed by ATF's decision is the appropriate one to

17  challenge it, not a third-party organization which has diffuse objectives, see Complaint ¶ 4, and

18  which therefore might not represent the best interests of a particular purveyor of the EP80.

19  Plaintiff is not the manufacturer of the EP80 and did not seek out ATF's classification decision.

20  It lacks the right to seek review of that decision on its own.  Plaintiff's complaint should

21  therefore be dismissed for lack of standing.

22

23    [5]  In Lexmark International, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377,
1387 (2014), the Supreme Court recently clarified that the term "prudential standing" is a

24  "misnomer," and that the traditional "prudential" limits on standing are either arguments with
respect to Article III standing or issues of statutory interpretation.  The Court did not address the

25  question of whether the prohibition on asserting another's rights was constitutionally based, and
in a footnote noted that "[t]he limitations on third-party standing are harder to classify . . . and

26  consideration of that doctrine's proper place in the standing firmament can await another day."
Id. at n. 3.  However the bar on asserting another party's rights is characterized, it is clear that

27  plaintiff's assertion of EP Arms' rights here is precisely the sort of situation where third party
standing has been found inappropriate.  See id.

28

## II. SUMMARY JUDGMENT SHOULD BE GRANTED FOR DEFENDANTS BECAUSE THEIR ACTIONS WERE NOT ARBITRARY AND CAPRICIOUS

### A. The Standard of Review is Narrow

Summary judgment is appropriate when, after considering the record as a whole, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-8 (1986); Fed. R. Civ. P. 56(c). The movant initially must demonstrate the absence of a genuine issue of material fact. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the movant has met its burden, the nonmoving party generally may not rely on the allegations or denials in its pleading, but must come forward with specific facts showing a genuine issue for trial. See, e.g., Anderson, 477 U.S. at 248. Summary judgment is an appropriate mechanism for determining "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir. 1985).

Plaintiff alleges that ATF's classification of the EP80 as a "firearm" constitutes arbitrary, capricious, and unlawful agency action under the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq. Complaint ¶¶ 68-69. The APA provides for circumscribed judicial review of agency action. 5 U.S.C. §§ 702, 706. Under the APA, a court may overturn agency action only if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." Id. § 706(2)(A); see Native Vill. of Kivalina IRA Council v. U.S. Evtl. Prot. Agency, 687 F.3d 1216, 1219 (9th Cir. 2012). The standard of review is "narrow," Barnes v. U.S. Dep't of Transp., 655 F.3d 1124, 1132 (9th Cir. 2011), and the agency's action is entitled to a "presumption of regularity," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971). The "court is not empowered to substitute its judgment for that of the agency." Overton Park, 401 U.S. at 416; Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, BLM, 273 F.3d 1229, 1236 (9th Cir. 2001) (internal citations and quotation marks omitted); see also Barnes, 655 F.3d at 1132.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

14

A court must evaluate an agency's decision based on the administrative record that was before the agency at the time of its decision.  See Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985); see also Inland Empire Pub. Lands Council v. Glickman, 88 F.3d 697, 703 (9th Cir. 1996).  The reviewing court must determine whether the agency has "considered the relevant factors and articulated a rational connection between the facts found and the choice made."  Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 105 (1983); Defenders of Wildlife v. Flowers, 414 F.3d 1066, 1073 (9th Cir. 2005).  So long as there is a rational basis, "an agency's decision will only be overturned if the agency committed a 'clear error in judgment.'"  Wetlands Action Network v. U.S. Army Corps of Eng'rs, 222 F.3d 1105, 1114-15 (9th Cir. 2000) (quoting March v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989)).

Finally, a court "generally must be 'at its most deferential' when reviewing scientific judgments and technical analyses within the agency's expertise."  N. Plains Res. Council, Inc. v. Surface Transp. Bd., 668 F.3d 1067, 1075 (9th Cir. 2011) (quoting Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 103, 103 S. Ct. 2246, 76 L. Ed. 2d 437 (1983)); see also Farmer v. Higgins, 907 F.2d 1041, 1045 (11th Cir. 1990) ("[w]e must defer to the Bureau's interpretation of the Gun Control Act and its regulations absent plain error in the Bureau's interpretation."), citing Gun South, Inc. v. Brady, 877 F.2d 858, 864 (11th Cir. 1989).  Moreover, "[i]t matters not whether the ATF's decision is ultimately a good one or whether the court agrees with the ATF's decision. . . .  Rather, what matters is whether plaintiff has presented sufficient evidence to meet his burden of proving that the defendant's decision … in this case is arbitrary and capricious."  Mullenix v. ATF, 2008 WL 2620175, at *5 (E.D.N.C. July 2, 2008) (internal citation omitted); Modern Muzzleloading v. Magaw, 18 F. Supp. 2d 29, 37 (D.D.C. 1998) (ATF "does not bear the burden of convincing the Court that its position is better…it merely need convince the Court that the decision was not arbitrary and capricious."); Gilbert Equipment Co., Inc. v. Higgins, 709 F. Supp. 1071, 1076 (S.D. Ala. 1989) (It "is of no moment that the administrative record might also support the opposite conclusion, as the court needs only determine that a rational basis exists for [ATF's] decision.").

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

15

**B.    ATF's Classification of Plaintiff's EP80 as a Receiver Was Reasonable**

In determining whether items should be classified as firearms, ATF relies on its technical and scientific expertise, as well as its long experience in reviewing and classifying firearms. When it reviewed the EP80, ATF considered the relevant factors and applied the appropriate criteria in classifying the EP80 as a firearm receiver.  The agency's determination was reasonable.

**1.    The EP80's Fire-Control Cavity is Not Solid or Unformed, and the Biscuit and Protrusions Provide Guidance As to How to Complete It**

The fire-control cavity of plaintiff's EP80 is created during the manufacturing process and formed by a piece of polymer of a different color that plaintiff calls a "biscuit."  AR 21-24. The biscuit occupies the fire-control cavity, and the rest of the EP80 is allegedly wrapped around it.  Complaint ¶ 32.  Once the EP80 is complete, and because polymer is inherently easier to machine than metal, the biscuit can be removed with any number of tools that are readily available at most hardware and home improvement stores or through the internet, such as a drill press, hand drill, Dremel tool (a versatile, handheld rotary bit tool that can be used to cut, grind, drill, sand, and mill various materials), or other type of milling equipment.  See AR 280.  ATF has consistently determined that in order for an AR-type receiver blank to remain outside the purview of the Act, its fire-control cavity must remain solid and unformed.  In accordance with this position, the EP80 was properly classified as a firearm because the fire-control area was fully formed during the manufacturing process through the use of the biscuit.  AR 21-24.

Furthermore, by differentiating the fire-control cavity from the rest of the receiver, the biscuit facilitates the process of making the receiver into a functional firearm.  AR 24.  The biscuit is molded so that the entire fire-control cavity will be filled by it.  AR 23-24.  Hence, the biscuit defines the exact size and dimensions of the fire-control cavity space, so that once the biscuit is removed, the hammer, trigger, and other components of the firing mechanism can be inserted.  AR 23-24.  Plaintiff itself calls the biscuit a "color-coded 'guide.'"  Complaint ¶ 26.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

16

1   Thus, the biscuit supplies three-dimensional indexing for the entire fire-control cavity.  AR 23-

2   24.

3   In addition, plaintiff's EP80 contains indexing on the exterior walls of the fire-control

4   cavity for the pin holes that hold the hammer and trigger pins, and for the hole that houses the

5   selector.  AR 24.  This indexing results from the manufacturing process, which creates material

6   that protrudes from the exterior walls of the casting at the approximate location of the holes to be

7   drilled.  AR 24.  Without this indexing, certain skill and expertise would be required to drill

8   holes at the proper locations for the selector and the hammer and trigger pins.  AR 319.  Holes of

9   the proper size can easily be made using drill-bits of the correct diameter.  AR 363, 365.  Hence,

10  the indexing on the exterior walls of the fire-control cavity, by itself,[6] is sufficient to classify the

11  EP80 as a firearm receiver, because it is tantamount to forming the holes themselves and thereby

12  facilitates the conversion of the EP80 into an operational weapon.[7]  See AR 25, 86.

13  Plaintiff's EP80 can be made into a functional firing mechanism simply by removing the

14  biscuit, drilling out the indexed holes, and inserting the appropriate (unregulated)[8] fire-control

15  parts.  AR 275-78.  The process takes less than two hours and requires no particular skill.  In

16  fact, it is accurately demonstrated on a YouTube video in under 1 hour.[9]

17  _____

18  [6]  Even if the Court disagrees that the EP80 was otherwise properly classified as a firearm
    receiver, it should still uphold ATF's decision on the basis of the indexing provided by the
19  protrusions in the fire-control cavity area.

20  [7]  Plaintiff claims that because the remainder of the device is cast around the biscuit in the
    EP80, an actual "cavity" never exists during the creation of the EP80, and the device therefore
21  cannot be considered a firearm.  Complaint ¶ 32.  But the sequence of manufacturing is not
    relevant to ATF's determination.  What matters is the fact that the EP80 contains a three-
22  dimensionally indexed fire-control cavity as well as indexing for the fire-control component
    holes.  These features are the reason the EP80 has properly been classified as a receiver and a
23  firearm, regardless of how or in what order the fire-control cavity was formed and its indexing
    was created, or when the cavity was occupied by plastic.  AR 20-25.
24

25  [8]  Only the "frame or receiver" are regulated.  See 18 U.S.C. § 921(a)(3).

26  [9]  Plaintiff claims that the removal of 1/16 of an inch of material surrounding the biscuit
    requires precise machining.  Complaint ¶ 34.  However, as the video shows, and as ATF has
27  determined, the removal from the fire-control cavity of this and all other material necessary to

28

**https://www.youtube.com/watch?v=pxcSlOVeXlQ** (accessed on Jan. 7, 2015) AR 275-78.  As shown on the video, portions of the biscuit can ultimately be pried out with a pair of pliers – thereby countering Plaintiff's claim and demonstrating that the biscuit and the receiver are two separate pieces.  See Video Clip at 4:06.[10]  Hence, the EP80 has reached an advanced enough stage of manufacture that it must be classified as a "firearm" under longstanding ATF precedent.  AR 20-25; see 18 U.S.C. § 921(a)(3); cf. U.S. v. Mullins, 446 F.3d at 756; U.S. v. Reed, 114 F.3d at 1057; U.S. v. 16,179 Molso, 443 F.3d at 465-66; U.S. v. Stewart, 2001 WL 194917, *1-2; cf. also, U.S. v. Smith, 477 F.2d at 400.

The EP80 manufacturing process contrasts with the manufacture of receiver blanks.  Such blanks that are formed as a completely solid, single piece of metal or plastic that requires a substantial amount of precise machining and expertise to create a fire-control cavity.  AR 22.  For example, the machining of such a solid metal block would take approximately seven hours, and considerable skill would be required to drill the cavity and holes to the precise measurements needed.  AR 292, 294.  Such castings are not classified as receivers because of the time and expertise required to convert them into properly functioning weapons.  See, e.g., AR 183-84.  On the other hand, the machining of the EP80 can be completed in a relatively short time, using commonly available tools, and requiring no particular skill or expertise.  The indexing supplied by the biscuit and exterior-wall protrusions and the relative ease with which plastic can be removed facilitates this process.

ATF's requirement that receivers outside the scope of the Gun Control Act must be blank reflects the agency's technical expertise and allows for fair enforcement.  Otherwise, ATF would

---

allow for the insertion of the fire-control parts can be accomplished in less than an hour with no special expertise.  AR 275.

[10] ATF official Michael Curtis, the FTB Firearms Enforcement Officer, also removed the biscuit from the fire-control cavity of the EP80 using commonly available tools and a process similar to that demonstrated in the YouTube video.  The excavation of the fire-control cavity took less than an hour and required no particular expertise.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

18

have to base classifications on a potentially infinite number of miniscule increments in the amount of machining performed on a device or in the indexing that has been placed on it.  The classification of the EP80 reflects ATF's expertise and exercise of its discretion and is not an arbitrary and capricious determination.  Because ATF acted rationally, its decision should be upheld.  See Mullenix, 2008 WL 2620175, at *5; Modern Muzzleloading, 18 F. Supp. 2d at 37; Gilbert Equipment, 709 F. Supp. at 1076.

**2.      ATF's Classification of the EP80 is Consistent with Its Prior Decisions on Other Items**

Plaintiff erroneously contends that ATF's classification of the EP80 is not based on "any" of its prior opinions, which allegedly found that "only when a fire-control cavity is created is there an actual . . . 'receiver' capable of being regulated."  Complaint ¶¶ 42, 48.  While FTB has never before been asked to evaluate a casting with a polymer-filled fire-control cavity like the EP80, ATF's decision that the EP80 is a receiver is consistent with the principles governing ATF's prior decisions.  ATF has consistently classified AR-type receiver-castings as firearms if any of the fire-control cavity has been milled or indexed, or if the receiver-castings have holes or indexing marks for the fire-control components.  See, e.g., AR 57-69, 74-91, 104-113, 121-22, 137-38 (classifying as "firearms" or "receivers" AR-type castings that contained holes, cavities, or indexing).  By the same token, it has declined to classify items as firearms that are "completely solid and un-machined in the fire-control recess area" and are unindexed in that area.  See, e.g., AR 95-103, 117-20, 135-36, 139-40, 142-65 (declining to classify as "firearms" or "receivers" AR-type casting that did not contain holes, cavities, or indexing).[11]

The record is replete with examples of ATF's consistency with respect to AR-type receivers.  For instance, at least as early as 1983, ATF classified an AR-type design as a firearm receiver where it required 75 minutes of drilling and filing to be made functional.  AR 60.  ATF made a similar decision in 1992 with respect to a receiver whose interior cavity had not been

---

[11]   Moreover, even if this were the case, the EP80's pinholes are an independent basis for its classification as a firearm.  See supra n.6.

completely machined, but that could be made functional with some minimal additional drilling and filing. AR 62. In 2002 ATF again determined that even if the AR-15 submission had a solid interior, it would still be considered a firearm if it had holes for the trigger and hammer pins because it would take only about 75 minutes of drilling and filing to make such an item functional. AR 66. Similarly, in 2012, where the AR-15-type submission had been split length-wise into two halves, but with the fire-control cavity area hollowed out in each half, ATF classified the left half as a "firearm receiver" because the submission could be made into a functional weapon simply by bolting the two halves together. AR 85. Because the fire-control cavity of the left half was machined, that half was classified as a receiver even though it could not by itself be made into a working weapon given that the right half contained all of the vital components. AR 84-86. The classification of the EP80 as a receiver because of the formation of the fire-control cavity and the relative ease with which the EP80 can be made a suitable part of an operating weapon is consistent with these determinations.

Similarly, with respect to the indexing of fire-control component holes, ATF has consistently determined that "an AR-type receiver-blank [which] possessed indexing marks for the fire-control components (trigger group)" was finished to the point that it was properly classified as a firearm frame or receiver." AR 135; see also AR 137-38. In the same vein, where there are "no index detents machined for the safety lever or the trigger/hammer pins" (and the fire-control cavity is solid), ATF has consistently determined that the submission is not a firearm. AR 143, 145. ATF's decision to classify the EP80 as a firearm on the basis of its indexing of the holes to be drilled for the selector and the hammer and trigger pins is consistent with these decisions.

The three ATF classification determinations that plaintiff cites to support its position, Complaint ¶ 39, are instead consistent with ATF's prior determinations and its classification of the EP80 as a firearm in this case. The two instances cited by plaintiff involving solid metal receiver blanks with no indexing or machining of the fire-control cavity were not classified as firearms. See AR 96 (not a firearm receiver because "there are no index detents machined for

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

20

the safety lever or the trigger/hammer pins…."); AR 37-38 (not a firearm because no machining operations had been performed on the fire-control cavity and none of the holes has been drilled or indexed for the firing components).  On the other hand, the submission that had "machining for the selector opening" was classified as a firearm receiver.  <u>See</u> AR 26.  Here, the EP80 has both a fully formed and indexed fire-control cavity as well as indexing, not just for the selector hole as in the example above, but for the hammer/trigger pin holes as well.  AR 24.  Its classification as a firearm receiver adheres to the principles applied in the decisions plaintiff cites, as well as the other decisions discussed herein.

Even in connection with other firearm designs, ATF has consistently applied the same principles, finding that the determination of whether the item should be classified as a firearm would depend on whether the item "can be brought to a stage of completeness that will allow it to accept the firearm components [for] . . . which it is designed . . ., using basic tools in a reasonable amount of time."  AR 188.  For example, ATF decided that the right side plate of a machine gun replica was a "firearm receiver" where the side plate was otherwise nearly completely machined and matched the dimensions of an actual machine gun.  AR 171-75, 187.  ATF also found that the "number and complexity of operations" already made were sufficient to classify a sample pistol frame as a firearm where a remaining critical operation could be "completed in a minimal amount of time by a competent individual having the necessary equipment."  AR 213-14.  And ATF determined that a machinegun conversion device called a "drop-in auto sear," even in unfinished condition, met the definition of a machine gun because it was part of a "combination of parts designed and intended . . . for use in converting a weapon into a machine gun" pursuant to 26 U.S.C. § 5845(b); <u>see also</u> 18 U.S.C. § 921(a)(23).  AR 170.

Plaintiff argues that ATF's decision not to classify jigs as firearms is inconsistent with its decision to classify the EP80 as a receiver because the use of the jig is tantamount to indexing.  Complaint ¶ 48.  A jig is a flat metal device into which openings are cut to match the surface dimensions of the fire-control cavity or other necessary fire-control apertures on a receiver.  AR .  The jig can be laid on the fire-control cavity area to guide the machining of the proper surface

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al.*, No. 14-cv-01211 JAM-SAB

21

1   dimensions of the cavity.  AR 362-74.  However, the jig does not provide any guidance for the

2   proper measurements of the three-dimensional cavity, as does the biscuit in the EP80.  AR 362-

3   74.  The creation of an accurately measured three-dimensional fire-control cavity requires

4   significantly more skill and machining than would the removal of the polymer filler in the EP80.

5   AR 362-66.  Even with a jig to define the surface dimensions of the fire-control cavity, the

6   process of hollowing out the cavity to accurate dimensions would not take significantly less time

7   than hollowing out the entire fire-control cavity.

8                                              **<u>CONCLUSION</u>**

9          Plaintiff lacks standing to bring this lawsuit simply because it is unhappy with ATF's

10   decision regarding the EP80, when the manufacturer that sought ATF's decision has not seen fit

11   to assert its own rights, and this case should be dismissed.  Alternatively, the classification of the

12   EP80 reflects ATF's scientific and technical expertise, and the agency reasonably determined that

13   it should be treated as a firearm under the Gun Control Act.  ATF's decision was based on a

14   consideration of the relevant factors, and it reflects a rational connection between the facts found

15   and the conclusions made.  Defendants' motion for summary judgment should therefore be

16   granted.

17

18   Dated:  January 9, 2015                         Respectfully submitted,

19

20                                          By:     /s/   *Lisa A. Olson*
                                                    LISA A. OLSON
21

22                                                  DIANE KELLEHER
                                                    LISA A. OLSON
23                                                  U.S. Department of Justice
                                                    Civil Division, Federal Programs Branch
24                                                  20 Mass. Ave., N.W., Room 7300
                                                    Washington, D.C. 20530
25                                                  Telephone: (202) 514-5633
                                                    Facsimile: (202) 616-8470
26

27

28

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR                       22
ALTERNATIVELY, FOR SUMMARY JUDGMENT**
*California Rifle & Pistol Assoc., Inc. v. ATF, et al,*, No. 14-cv-01211 JAM-SAB