1 | Alan Alexander Beck, SBN 276646
Attorney at Law
2 | 4780 Governor Drive
San Diego, CA 92122
3 | Telephone: (619) 971-0414
Email: ngord2000@yahoo.com
4 |
Scott A. McMillan, SBN 212506
5 | Michelle D. Volk, SBN 217151
Sean E. Smith, SBN 288973
6 | **THE MCMILLAN LAW FIRM, APC**
4670 Nebo Drive, Suite 200
7 | La Mesa, California 91941-5230
(619) 464-1500 x 14
8 | Fax: (206) 600-5095

9 | Attorneys for Plaintiff,
Lycurgan, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYCURGAN, INC., a California corporation, d/b/a Ares Armor,<br><br>Plaintiff,<br><br>vs.<br><br>B. TODD JONES, as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, EARL GRIFFITH, an individual, UNKNOWN NAMED TECHNOLOGIST, an individual, UNKNOWN NAMED AGENTs I-VII, individuals, and DOES I-XI, in their individual capacities. | Case No.: 14-cv-00548-JLS-BGS<br><br>**PLAINTIFF LYCURGAN, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO STAY PROCEEDINGS**<br><br>Hon.: Judge Janis L. Sammartino<br>Dept.: 4A<br>Date: March 12, 2015<br>Time: 1:30 P.M. |

# TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PROCEDURAL AND FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . 1

   A. Lycurgan's Initial Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   B. Lycurgan's Related Actions Against the Government. . . . . . . . . . . . . . . . . . 3

      1. <u>Action to Unseal Search Warrant Affidavit</u>. . . . . . . . . . . . . . . . . . . . 3

      2. <u>Action to Recover Seized Property</u>. . . . . . . . . . . . . . . . . . . . . . . . . 4

   C. The *CalRifle* Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   D. Lycurgan's First Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. STANDARDS FOR DETERMINATION OF REQUESTS TO STAY PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   A. Defendant's Requested Stay of Indefinite Duration Exceeds the Uttermost Limit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   B. Defendant's Requested Stay Is Unreasonably Long. . . . . . . . . . . . . . . . . . . 8

      1. <u>*CalRifle* is not likely to be concluded soon.</u>. . . . . . . . . . . . . . . . . . . 8

      2. <u>Lycurgan has prosecuted its claims with diligence</u>. . . . . . . . . . . . . . 10

      3. <u>Lycurgan's claims for relief are particularly urgent</u>. . . . . . . . . . . . . 11

   C. A Stay Would Prejudice Lycurgan's Ability to Later Prosecute its Case. . . . 12

   D. Defendant Cannot Meet Its Burden To Support a Need for the Stay. . . . . . . 13

      1. <u>There is no need to "simplify" the issues in the present case.</u> . . . . . . 13

      2. <u>*CalRifle* does not address all the claims and issues in the present case</u>.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

3. *CalRifle* raises no estoppel to the issues in this case.. . . . . . . . . . . . . . 15

V.    CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

Federal Statutory Authority

18 U.S.C. § 921. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

27 C.F.R. § 478.11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 U.S.C. § 704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Decisional Authority

*Ashdown v. Prison Health Servs.*, 2013 U.S. Dist. LEXIS 155847. . . . . . . . . . . . . . . . 7

*Asustek Computer, Inc. v. Ricoh Co., Ltd.*, 2007 U.S. Dist. LEXIS 86302 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Clinton v. Jones*, 520 U.S. 681 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dowkin v. City & County of Honolulu*, 2014 U.S. Dist. LEXIS 138375 (D. Haw. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fed. Home Loan Mortg. Corp. v. Kama*, 2014 U.S. Dist. LEXIS 140811 (D. Haw. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Golden Bridge Tech. Inc. v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 67238 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7, 13

*Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979). . . . . . . . . 8

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . 6

*Pagels v. P.V.S. Chemicals Inc.*, 266 A.D.2d 819 (N.Y. Sup. Ct. 1999) . . . . . . . . . . . 10

*Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107 (N.D. Cal. 2006). . . . . . . 12-14

*Town of N. Bonneville v. Callaway*, 10 F.3d 1505 (9th Cir. 1993). . . . . . . . . . . . . . . 15

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 U.S. Dist. LEXIS 4025 (N.D. Cal. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Yong v. I.N.S.*, 208 F.3d 1116 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## I. INTRODUCTION

The Government seeks to stay these proceedings pending a final decision in *CalRifle*.[1] But this case was filed first. This case contains nearly twice as many docket entries as *CalRifle*. Lycurgan's case asserts nine claims arising from Constitutional violations, including claims for damages and injunctive relief, while *CalRifle* asserts only one claim for "Unlawful Agency Action." *CalRifle* has no trial date set. If anything, *CalRifle* should be stayed pending resolution of the instant case.

The Government's effort to stay this case is plainly motivated by an effort to obtain an unfair tactical advantage against plaintiff Lycurgan. Lycurgan has the burden of proof with respect to its claims. Any stay imposed will make Lycurgan's burden more difficult to bear. Each passing day memories will become less clear, documents will disappear, and the triple promise of "just, speedy and inexpensive determination" set forth in Rule 1 of the Federal Rules of Civil Procedure will ring hollow.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Lycurgan's Initial Complaint

On March 11, 2014, Plaintiff Lycurgan, Inc. ("Lycurgan") filed the initial complaint in this case for deprivation of Civil Rights against the ATF, styled as *Lycurgan, Inc. v. B. Todd Jones*. [Karras Decl. ¶ 5.] Plaintiff sought a declaratory judgment that the 80% unfinished polymer lower receiver is not a firearm. [*Id*.] Plaintiff also sought a temporary restraining order and injunctive relief forbidding the ATF and/or its officers, agents, servants, and employees from seizing Lycurgan's unfinished polymer lower receivers and customer list. [*Id*.]

On March 11, 2014, Judge Sammartino, District Judge for the District Court for the Southern District of California, granted Lycurgan's request for a temporary restraining order. [*Id*. ¶ 6.]

---

[1] *California Rifle & Pistol Association, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, Case No. 14-cv-01211 (E.D. Cal. 2014).

1    On March 14, 2014, the United States Attorney's Office filed an ex parte
2 application challenging the temporary restraining order. [*Id*. ¶ 7.] Paul J. Ware, the
3 Division Counsel for the Los Angeles Field Division, ATF supported the ex-parte
4 application with his unverified statement referring to the unfinished polymer lower
5 receivers as both "receivers" and "firearms." [*Id*.]
6    On March 14, 2015, Judge Sammartino ruled on the United States's ex parte
7 application, stating in part: "the Court's March 11, 2014 TRO DOES NOT ENJOIN
8 lawful criminal proceedings, including the application for or lawfully executed seizure of
9 evidence and contraband pursuant to a search warrant issued by a sworn United States
10 Magistrate Judge pursuant to Federal Rule of Criminal Procedure 41 . . . ." [Karras Decl.
11 ¶ 8.]
12    On or about March 14, 2014, an unknown agent submitted an affidavit to the
13 Honorable Bernard G. Skomal of this Court for the purpose of applying for a search
14 warrant authorizing the search of Lycurgan's four business facilities, all located in San
15 Diego County, California. [*Id*. ¶ 9.] Magistrate Skomol relied upon the statements of
16 the unknown agent within the affidavit in making his decision to issue the search
17 warrant. [*Id*.]
18    On March 15, 2014, ATF agents conducted their raid pursuant to the search
19 warrant. [*Id*. ¶ 10.] The ATF Agents entered the premises of Plaintiff Lycurgan's four
20 separate facilities, located at: (1) 206/208 N. Freeman Street, Oceanside, (2) 416
21 National City Blvd., National City, California, (3) 180 Roymar Street, Oceanside,
22 California, and (4) 2420 Industry, Oceanside, CA.  During the course of the raid at the
23 National City location, ATF agents unnecessarily caused property damage and disarray,
24 confiscated valuable Rudius unfinished pistol frames without placing the items on the
25 inventory list of seized items, and seized 5,804 unfinished polymer parts that are not
26 "contraband" and were legally possessed by Lycurgan. [Karras Decl. ¶¶ 11-12.]
27    On July 11, 2014, this Court entered an order on the Government and Lycurgan
28 motion for an agreed order to stay this case and toll all deadlines pending the court's

*14cv548*   PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS                    2

order on Lycurgan's motion to unseal the affidavit authorizing the search in the related action, e.g., case 14-cv-1424 . [ECF 26.]

On September 22, 2014, Lycurgan filed its motion to amend the complaint. [ECF 35.] The Government opposed the amendment of the complaint. [ECF 36.] On December 17, 2014, the Court granted the motion to amend. [ECF 40.] That same day, the clerk filed Lycurgan's attached First Amended Complaint. [ECF 41.]

Then, the Government and Lycurgan stipulated that the Government would be allowed additional time to respond, and the court entered an order to that effect. [ECF 44.]

On January 21, 2015, the Government filed its motion to stay. [ECF 47.]

On January 30, 2015, the clerk issued the Amended Summons on the First Amended Complaint. [ECF 52.]

On February 17, 2015, counsel for Lycurgan caused the mailing of the Amended Summons to Defendant Earl Griffith, an individual, the Attorney General of the United States, and the local Civil Process Clerk for the U.S. Attorney's office. [McMillan Dec., 3.]

**B. Lycurgan's Related Actions Against the Government**

1. <u>Action to Unseal Search Warrant Affidavit</u>

The ATF refused to disclose the search warrant affidavit to Lycurgan. [Karras Decl. ¶ 13.] On June 11, 2014, Lycurgan filed an action[2] to unseal the affidavit used to obtain the warrant for the search and seizure of Lycurgan's four business facilities. [*Id*.] The Government opposed disclosing the affidavit to Lycurgan. [*Id*.] The parties fully briefed the matter. [*Id*.] On July 31, 2014, the parties presented oral argument. [*Id*.] At the conclusion of the hearing, the Court found that the Government failed to meet its burden to present a compelling governmental reason for continuing to seal the search warrant affidavit. [*Id*.] Rather than granting Lycurgan's motion to unseal, the Court

---

[2] *In the Matter of the Search of Ares Armor*, Case No. 14-cv-1424 (S.D. Cal. 2014).

ordered the Government to submit supplemental briefing. [*Id*.] On August 14, 2014, in lieu of filing supplemental briefing, the Government disclosed a redacted version of the search warrant affidavit. [*Id*.] The Court has ruled that the redacted version of the affidavit was sufficient and dismissed Lycurgan's complaint in that action, and denied attorneys fees.

2. Action to Recover Seized Property

On July 16, 2014, Lycurgan filed an action[3] to recover the seized 5,804 unfinished polymer parts. [Karras Decl. ¶ 14.] On March 27, 2014, the ATF had initiated a civil forfeiture proceeding of Lycurgan's seized items. [*Id*.] On April 5, 2014, Lycurgan submitted a Verified Claim contesting the civil forfeiture. [*Id*.] On July 3, 2014, the ATF announced it was withdrawing the civil forfeiture proceeding but would continue to withhold the seized items. [*Id*.]

On December 23, 2015, the Government released 5,786 unfinished lower receivers to Lycurgan, while withholding 18 of the items without explanation. [Karras Decl. ¶ 16.] The Government has decreed, by administrative fiat, that the unfinished polymer receivers are "firearms," thereby preventing Lycurgan from selling them. [Karras Decl. ¶ 19.] Lycurgan disputes the ATF's characterization.

**C. The *CalRifle* Case**

On July 31, 2014, California Rifle & Pistol Association, Inc. ("CalRifle") filed a lawsuit against the government in the case styled as *California Rifle & Pistol Association, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")*, Case No. 14-cv-01211 (E.D. Cal. 2014) ("*CalRifle*"). [Karras Decl. ¶ 15.] CalRifle asserted one claim for "Unlawful Agency Action - 5 U.S.C. §§ 702 & 704." *CalRifle* challenges the government's classification of the "Regulated Precursor" as a "firearm" within the meaning of either 18 U.S.C. § 921(a)(3) or 27 C.F.R. § 478.11. [*CalRifle* Compl. ¶¶ 60-69.]

---

[3] *Lycurgan, Inc. v. Jones*, Case No. 14-cv-1679 (S.D. Cal. 2014).

1 On January 9, 2015, the government filed a Motion to Dismiss, or Alternatively, For Summary Judgment ("Motion to Dismiss"). The government seeks to dismiss the case based on CalRifle's alleged lack of standing. [Mtn. to Dismiss, pp. 10-12.] The motion hearing is set for March 25, 2015. [*Id.*, p. 1.] No trial date is set.

### D. Lycurgan's First Amended Complaint

On December 17, 2014, Lycurgan filed a First Amended Complaint ("FAC"), which asserts nine claims based on the First Amendment, Second Amendment, Fourth Amendment and Fifth Amendment of the United States Constitution. [Karras Decl. ¶ 16, Ex. C.] The FAC arises from the Government's censorship, retaliation and unreasonable search and seizure against Lycurgan. [*Id.*]

The search and seizure of Lycurgan gained substantial public news coverage and attention. [Karras Decl. ¶ 12.] Consequently, there is a cloud over Lycurgan. Some customers are reluctant to continue engaging in business with Lycurgan. [*Id.*] Before the search and seizure, Lycurgan was a profitable small business. [Karras Decl. ¶ 19.] Since then, Lycurgan struggles. [*Id.*] Lycurgan is harmed each day it cannot generate a revenue from its primary retail item - the 80% unfinished polymer lower receiver. [*Id.*]

## III. STANDARDS FOR DETERMINATION OF REQUESTS TO STAY PROCEEDINGS

Courts have inherent power to stay proceedings, which is incidental to the power inherent in every court to manage their docket. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward." *Id*. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.*, at 254. Indeed, some courts outright deny any motion to stay proceedings when one of the litigants opposes the stay. *Id.*, collecting cases. At a minimum, the moving party bears a heavy burden of supporting the stay. *Id*.

In determining whether to grant a stay, the court must weigh the competing interests of the parties relating to the appropriateness of a stay. *Id.*, at 255. A court that

*14cv548*  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS   5

grants a stay abuses its discretion if the stay is "not kept within the bounds of moderation." *Id.*, at 256. The Court held that the uttermost limit for a stay is the date of the first decision in the suit selected as a test. *Id.*, at 256-57.

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)).

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).

The Ninth Circuit has "set out the following framework" in determining whether to impose a *Landis* stay:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

The Ninth Circuit has recognized that where "there is even a fair possibility that [a] stay . . . will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citation and internal quotations omitted).

Some of the Ninth Circuit cases cite additional factors:

> "1) whether a stay would unduly prejudice the non-moving party or allow for a tactical advantage for the moving party; 2) whether a stay will simplify the issues in the case at trial; and 3) whether discovery has commenced, or is almost complete and whether a trial date has been set."

*Ashdown v. Prison Health Servs.*, 2013 U.S. Dist. LEXIS 155847 (D. Nev. Oct. 22, 2013) (collecting cases.)

IV. ARGUMENT

**A. Defendant's Requested Stay of Indefinite Duration Exceeds the Uttermost Limit.**

The United States Supreme Court in *Landis* found the district court abused its discretion in staying the proceedings until final resolution of a decision in a pending suit. *Landis*, 299 U.S. at 256. The stay was immoderate and unlawful because the government failed to confine its requested stay within a reasonable, definite duration. *Id*. at 257. The pending suit could have potentially taken over a year to be resolved in consideration of the potential for appeals. *Id*. at 256. In order to ensure no stay is of "indefinite duration," the Court "fix[ed] the uttermost limit [for a stay] as the date of the first decision in the suit selected as a test." *Landis*, 299 U.S. at 255-57. If the decision then goes to appeal, the party requesting the stay must again bear the burden to present a need for a second stay. *Id.* at 257.

Here, Defendant requests "the Court to stay these proceedings pending a final judicial decision, ***including any appeal***, in [*CalRifle*]." [Def.'s Memo, p. 1, emphasis added.] Defendant's requested stay is of an indefinite duration that exceeds the limits of reasonableness. *Landis*, 299 U.S. at 256-57.

The Ninth Circuit has further refined the rules, finding that a stay pending appeal is of dubious character and may result in indefinite delay. As explained in *Asustek Computer, Inc. v. Ricoh Co., Ltd.*, 2007 U.S. Dist. LEXIS 86302, 7-8 (N.D. Cal. 2007), citing to *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000):

> In *Yong,* for example, the Ninth Circuit found that the district court had abused its discretion in staying a prisoner's habeas corpus petition "pending resolution of the appeal" of a separate case before the Circuit "because the issues raised in Yong's petition were to be considered in that case". 208 F.3d at 1117. Although the stay had only lasted five months at the time of its opinion, the court held that the term of the stay was indefinite because, in the event that the Supreme Court granted certiorari to review the Ninth Circuit's decision in Ma, "the stay could remain in effect for a lengthy period of time, perhaps . . . years." *Id.* at 1119. The Ninth Circuit further

noted that "a single justice of the Supreme Court may stay the mandate of the Court of Appeals pending an application for certiorari to the Supreme Court." Id. n.2. (citing 28 U.S.C. § 2101(f); Sup. Ct. R. 23.2). Likewise, the court noted that Federal Rule of Appellate Procedure 41(d) grants circuit courts the power to "stay the issuance of a mandate pending review by the Supreme Court." *Id.* Admittedly, Yong was a habeas case where urgency is critical. Nonetheless, the principles of *Yong* have been applied to other less compelling situations. See, e.g., *Dependable Highway*, 498 F.3d at 1066 (9th Cir. 2007)(breach of insurance contract); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1105 (9th Cir. 2005)(divestiture under Clayton Act).

*Asustek Computer, Inc.* 2007 U.S. Dist. LEXIS 86302, 7-8.

Thus, rather than confront Lycurgan's claims on the merits, the Government no doubt hopes that the case can be put on "the back burner" and perhaps it will never be heard. That would work an injustice to Lycurgan.

**B. Defendant's Requested Stay Is Unreasonably Long.**

"A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). Here, the Government seeks to stay these proceedings until final resolution of *CalRifle*. [Def.'s Memo, p. 1.] The Government's demand that Lycurgan delay seeking its rightful and urgent relief for an unknown number of months or years is unreasonable and prejudicial. [Karras Decl. ¶ 19.]

1. *CalRifle is not likely to be concluded soon*.

*CalRifle* is not likely to conclude any time soon. The case is still in its early stages. In fact, *CalRifle* was filed over four months **AFTER** the instant case. [Compare Karras Decl., Exs. A and B.] *CalRifle* has only two substantive docket entries, including: (1) the complaint filed on July 31, 2014, and (2) the government's Motion to Dismiss filed on January 9, 2015. [*Id.*, Ex. B.]

The hearing date currently set for the government's Motion to Dismiss is March 25, 2015. [Mtn. to Dismiss, p. 1.] Even if the government prevails in dismissing *CalRifle* with prejudice - a mere possibility - the holding would have no controlling effect on Lycurgan's case. The government's only grounds for dismissal are procedural

- that the plaintiff CalRifle lacks representational and prudential standing. [Mtn. to Dismiss, pp. 11-13.] CalRifle allegedly did not suffer any harm as it did not manufacture the challenged "EP80" and did not seek out ATF's classification decision. [*Id.*] EP Arms, on the other hand, was actually harmed by ATF's decision. [*Id.*, p. 13, lines 16-21.] The Government argues, presumably consistent with its obligations under Rule 11, that there exists a genuine issue whether CalRifle has standing to sue on behalf of EP Arms, particularly when "it is unclear whether EP Arms would consider itself bound by an adverse ruling in th[e] case." [*Id.*, lines 17-18.]

Lycurgan is not saddled with the same questions of standing, upon which the Government attacks CalRifle. [Karras Decl. ¶ 18.] The government appears to admit as such. [Mtn. to Dismiss, p. 12, lines 11-16.]

> EP Arms has not seen fit to sue ATF on its own to challenge the decision regarding the EP80, and the complaint does not plead that EP Arms even wants the relief being sought on its behalf. Indeed, while plaintiff purports to represent, among others, California purchasers, manufacturers, and sellers of products like the EP 80 throughout California, Complaint ¶¶ 4, 5, at least one other California purveyor of the EP80 has brought its own lawsuit against ATF raising claims that are nearly identical to those raised in the present case. Lycurgan, Inc. v. Jones, No 14-cv-00548-JLS-BGS (S.D. Cal. filed March 11, 2014).

[Mtn. to Dismiss, p. 12, lines 9-16.]

In that passage, the government cites Lycurgan as the example of party who properly sued on its own behalf. Unlike CalRifle, Lycurgan actually sold the challenged 80% unfinished polymer lower receiver ("unfinished lower receiver"), and even went to the effort of seeking and obtaining a temporary restraining order against the ATF to avoid the raid on Lycurgan. [Karras Decl. ¶¶ 4-5.] Despite the court issuing the TRO, the ATF raided Lycurgan's facilities under the guise that Lycurgan was engaging in "unlawful" activity. [*Id.* ¶¶ 8-10.] The ATF seized hundreds of thousands of dollars worth of unfinished lower receivers. [*Id.* ¶ 12.] The ATF continues to mis-classify the unfinished lower receivers as "firearms," thereby preventing Lycurgan from selling them. [*Id.* ¶ 19.] In light of that posture, Lycurgan has standing to sue the ATF to remedy the substantial harm Lycurgan has, and continues, to suffer. Lycurgan's standing

has not been challenged or even questioned in this matter. [Karras Decl. ¶ 18.]

In the alternative, the Motion to Dismiss in *CalRifle* seeks summary judgment on the basis that the ATF properly classified the "EP80" as a "firearm." [Mtn. to Dismiss, p. 16.] That issue will almost certainly need to be resolved by the trier of fact as there are conflicting expert opinions regarding the classification of the EP80. *Golden Bridge Tech. Inc. v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 67238, *33 (N.D. Cal. 2014) ("In the face of such a clear cut difference of opinion on a fact at issue, a jury must decide."); *Pagels v. P.V.S. Chemicals Inc.*, 266 A.D.2d 819 (N.Y. Sup. Ct. 1999) ("The differences of opinion among the medical experts with respect to the nature, cause, and extent of plaintiff's injuries raise issues of credibility that must be resolved by a jury."). No trial date has been set in *CalRifle*. Moreover, complete resolution of *CalRifle* on its merits will not resolve all of the issues in the instant case. [See, *infra* Section IV.D(2).]

### 2. Lycurgan has prosecuted its claims with diligence.

Contrary to the suggestion of the Government, Lycurgan has diligently prosecuted its claims to relief. The Government seems to suggest that Lycurgan should just sit and wait with respect to its *Bivens* claims while *CalRifle* meanders through the system, being stalled with each successive and now ubiquitous request for extension. The Government even cites to Federal Rule 1 in support of its proposition. [Def.'s Memo, p. 4.] With respect to the one known-named individual defendant, i.e., Earl Griffith, service was initiated on February 17, 2015. [McMillan Dec., ¶ 3.] As to the balance of information necessary to effect personal service upon the individual defendants, such information remains unavailable to Lycurgan.[4] Indeed, identifying those agents responsible for the gratuitous destruction will likely only be accomplished through discovery efforts.

///

---

[4] Had the Government provided an unredacted copy of the affidavit submitted in support of the search warrant, at least a few of the individual defendants would have been identified. That was the point of the related case: *Lycurgan, Inc., etc. v. Todd Jones*, So. Dist. Cal. Case No. 14-cv-01679-JAH-JLB. But, despite Lycurgan's entreaties for the redacted information, which will identify one or more of the defendants, the Government continues to sequester it.

### 3. Lycurgan's claims for relief are particularly urgent.

A stay would devastate Lycurgan's case and Lycurgan itself. Lycurgan is a small retail business founded by then 26 year-old U.S. Marine Veteran, Dimitrios Karras. [Karras Decl. ¶ 3.] The unfinished lower receivers account for a large portion of Lycurgan's sales and revenue. [*Id*. ¶ 19.] Like any small business, Lycurgan had its challenges in meeting overhead expenses and competing with other business. Nevertheless, Lycurgan became profitable through the hard work and diligent efforts of Mr. Karras and Lycurgan's dedicated staff. [*Id*. ¶ 19.]

On March 15, 2014, the Government interrupted Lycurgan's smooth business operations. [Karras Decl. ¶ 10.] The Government raided Lycurgan, causing property damage and disarray at its facilities, particularly in National City, and seized 5,804 unfinished lower receivers. [*Id*. ¶¶ 10-12.] Lycurgan incurred significant legal expenses in successfully obtaining the search warrant affidavit that the Government refused to disclose for over five months. [*Id*. ¶¶ 13, 17.] Likewise, Lycurgan incurred significant legal expenses to recover 5,786 of its wrongfully seized unfinished lower receivers.[5] [*Id*. ¶¶ 14, 17.] The Government continues to mis-classify these inert hunks of polymer as "firearms," which prevents Lycurgan from selling them. [*Id*. ¶ 19.]

Lycurgan loses revenue and customers every single day that it is unable to market and sale its unfinished lower receivers. [Karras Decl. ¶ 19.] Lycurgan is nearly at its breaking point in light of its inability to sell its primary retail item, and due to Lycurgan's significant legal expenses incurred in protecting its rights against the Government. [*Id*.] Now, The Government seeks to impose the additional burden in blocking Lycurgan's right to seek its urgent relief for an indefinite duration of time - likely for over a year. This is unacceptable.

---

[5] The Government continues to withhold 18 of Lycurgan's unfinished lower receivers without explanation. [Karras Decl. ¶ 17.] Curiously, the Government's decision to withhold 18 of Lycurgan's items occurred on December 23, 2014 - just two days before Christmas. [*Id*.]

## C. A Stay Would Prejudice Lycurgan's Ability to Later Prosecute its Case.

A stay should not be granted if delaying the proceeding "would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party." *Clinton v. Jones*, 520 U.S. 681, 707-08 (1997). Undoubtedly, the individual defendants in this case will have lapses of memory. Any stay granted in this case will bolster the credibility of such "memory loss" simply because the passage of time causes memories to fade.

Even if Lycurgan is still in business and has the financial means to continue pursuing its claims by the time *CalRifle* is resolved, Lycurgan will be prejudiced by the delay. Already, nearly a year has already passed since the ATF "determined" Lycurgan's unfinished lower receivers were firearms and raided Lycurgan's facilities. [Karras Decl. ¶¶ 7-10.] Choices on the ATF's part and discoveries by Lycurgan resulted in three lawsuits brought by Lycurgan against the Government. [See *id*., ¶¶ 10-17.] Any delay will prejudice Lycurgan as it has the burden of proof on the claims.

In addition, delaying this proceeding would provide the Government an unfair advantage, which "weighs strongly against a stay." *Telemac Corp. v. Teledigital, Inc*., 450 F.Supp.2d 1107, 1111 (N.D. Cal. 2006). First, the Government will obtain an even greater financial advantage over Lycurgan. The delay will continue depleting Lycurgan's resources by blocking its sale of its unfinished lower receivers. [Karras Decl. ¶ 19.] It is likely that Lycurgan will not have the financial resources at the end of the stay to adequately pursue its claims. [*Id*.]

Second, the Government is in control of the pending litigation in *CalRifle*, in which Lycurgan has no influence or involvement whatsoever. [See Karras Decl. ¶ 15.] Thus, the Government can handle *CalRifle* with an eye towards the Lycurgan case. It would be unfair to allow the Government to use *CalRifle* to bolster the Government's position with the Lycurgan case. The Court should deny the stay to avoid the risk of the Government gaining a financial and tactical advantage.

///

**D. Defendant Cannot Meet Its Burden To Support a Need for the Stay.**

1. <u>There is no need to "simplify" the issues in the present case</u>.

The Government has the burden to "make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. at 254. The Government argues that a stay is necessary because a decision in *CalRifle* could narrow or simplify the issues in the present case. [Def.'s Memo, pp. 3-4.] However, there is no need for a stay to simplify the issues in the present case. Lycurgan has been litigating the "*CalRifle* issues" in this Court, among multiple actions, long before *CalRifle* was even filed. This Court is readily familiar with Lycurgan's unfinished lower receivers, and their disputed classification. Therefore, this Court is just as capable, if not more so, than the court in *CalRfile* to issue an informed decision on Lycurgan's claims. Cf. *Telemac Corp.*, 450 F.Supp.2d at 1111 ("Because this Court is already familiar with some of Telemac's patents, its interest in simplifying the proceedings by waiting for the PTO to reexamine the patents is not as strong as it might otherwise be.").

2. <u>*CalRifle* does not address all the claims and issues in the present case</u>.

The Government argues that a stay would "further the orderly course of justice, promote judicial economy, and avoid the waste of judicial and party resources" [Def.'s Memo, p. 2, lines 18-19.] This argument is misplaced because a decision in *CalRifle* will have no controlling effect on numerous claims and issues in the instant case. See *Dowkin v. City & County of Honolulu*, 2014 U.S. Dist. LEXIS 138375, *18-19 (D. Haw. 2014); *Fed. Home Loan Mortg. Corp. v. Kama*, 2014 U.S. Dist. LEXIS 140811 *23-24 (D. Haw. 2014) (denying motion to stay because the pending action did not assert the same claims as the case at issue).

*CalRifle* asserts only one claim for "Unlawful Agency Action" pursuant to 5 U.S.C. §§ 702 and 704. [*CalRifle* Compl., p. 18.] The claim is based on the ATF's letter that determined the "Regulated Precursor" is a "firearm within the meaning of either 18 U.S.C. § 921(a)(3) and 27 C.F.R. § 478.11." [CalRifle Compl., ¶ 67.] In stark contrast, Lycurgan's FAC asserts nine separate claims based on the First, Second, Fourth and

Fifth Amendments. [Karras Decl. ¶ 16, Ex. C.] The decision in *CalRifle* will have little, to no, effect on many of Lycurgan's claims. Cf. *Telemac Corp.,* 450 F.Supp.2d at 1111 ("It is possible that reexamination by the PTO would simplify the issues for trial. On the other hand, it is likely that at least some claims and issues would remain.").

While *CalRifle* makes no First Amendment claims, Lycurgan has three claims arising from the First Amendment. First, the Government placed restrictions on the indexing marks of Lycurgan's unfinished lower receivers. [Karras Decl., Ex. C ¶¶ 104-116.] The indexing marks represent "speech," which is protected by the First Amendment. [*Id*.] Second, the Government engaged in prior restraint of speech. [*Id*., ¶¶ 120-121.] Third, the Government retaliated against Lycurgan for exercising its right to petition the Court for declaratory and injunctive relief. [*Id*., ¶¶ 129-130.]

Unlike *CalRifle*, Lycurgan has a claim based on the Second Amendment that seeks to prevent the Government from attempting to curtail the ownership, purchase or sale of any firearm-related item which is not a firearm, a frame, or a receiver. [Karras Decl., Ex. C ¶ 141.] Lastly, Lycurgan's Fourth and Fifth Amendment claims are based on the Government's unlawful, destructive search and seizure of Lycurgan's business facilities, and the unlawful taking of Lycurgan's personal property. [*Id*., pp. 42-55.] The plaintiff CalRifle lacks any such claim. The doors to *CalRifle* were not breached using battering rams. Its offices were not tossed by persons outfitted in "tactical" gear and carrying fully automatic firearms. Its employees were not subjected to humiliating taunts about how it was "fun to do a search."

The pleadings in *CalRifle* and the present case are remarkably different. While there is one intersection of issues, Lycurgan's FAC includes many claims and issues not asserted or even mentioned in *CalRifle*.

Moreover, Lycurgan's theories are significantly different from that of counsel for California Rifle and Pistol Association. Indeed, Carl Michel, counsel for CalRifle has expressed his disagreement for some of the theories advanced by Lycurgan. [McMillan Dec. 5.] EP Armory, who Carl Michel represents, sold the subject unfinished lower

receivers to Lycurgan, Inc.

### 3. *CalRifle* raises no estoppel to the issues in this case.

The Government hints that *CalRifle* may have collateral estoppel effect on the present case. [Def.'s Memo, p. 4, n. 3.] Such a suggestion is largely insignificant for purposes of a stay. See *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 U.S. Dist. LEXIS 4025, *8-9 (N.D. Cal. 2014). Even if the possibility of collateral estoppel did lurke, the elements for application of collateral estoppel are lacking between *CalRifle* and the instant case. Specifically, the party invoking collateral estoppel must establish the following three elements:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993), omitting citation. First, *CalRifle* and the instant case share only one issue in common, which is the classification of the "EP80" polymer unfinished lower receiver. More importantly, Lycurgan is not a party in *CalRifle*, and has no association whatsoever to the plaintiff there, much less privity. Regardless of the decision in *CalRifle*, Lycurgan will not suffer an estoppel from any resolutions arrived at in *CalRifle*.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Lycurgan, Inc. respectfully request the Court to deny Defendant's Motion to Stay Proceedings.

|  | Respectfully submitted: |
|---|---|
| Dated: February 19, 2014 | THE MCMILLAN LAW FIRM, APC |
|  | /s/ Scott A. McMillan |
|  | _____ |
|  | Scott A. McMillan, Esq.<br>Attorney for Plaintiff<br>Lycurgan, Inc. |