LAURA E. DUFFY
United States Attorney
DANIEL E. BUTCHER
Assistant U.S. Attorney
California Bar No. 144624
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7696
Fax: (619) 546-7751
Email: Daniel.Butcher@usdoj.gov

JOHN R. TYLER
LISA A. OLSON
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7300
Washington, D.C. 20530
Tel: (202) 514-5633
Fax: (202) 616-8470
Email: Lisa.Olson@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYCURGAN, INC. dba ARES ARMOR, | Case No.: 14CV548 JLS (BGS) |
| Plaintiff, | MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT |
| v. | |
| B. TODD JONES, in his official capacity as Head of the San Diego Bureau of Alcohol, Tobacco, Firearms and Explosives; and DOES 1-10, | DATE:   May 28, 2015<br>TIME:    1:30 P.M.<br>CTRM:   4A (Schwartz) |
| Defendants. | Hon. Janis L. Sammartino |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................... 1

BACKGROUND .......................................................................................... 3

      A.    Applicability of the Gun Control Act to Receivers ............. 3

      B.    The Receiver of the AR-15 Rifle ....................................... 5

      C.    General Classification Criteria for Receivers ..................... 7

      D.    The EP80's Already Formed Fire-Control Cavity and Indexing .......................................................................... 9

      E.    ATF's Classification of the EP80 as a "Firearm Receiver" ...................................................................... 10

ARGUMENT ............................................................................................ 12

     ATF'S CLASSIFICATION OF THE EP80 AS A FIREARM WAS REASONABLE AND WAS NOT CONTRARY TO CONSTITUTIONAL RIGHT OR IN EXCESS OF STATUTORY AUTHORITY ........................................................................... 12

I.    SUMMARY JUDGMENT SHOULD BE GRANTED FOR DEFENDANT AS TO PLAINTIFF'S CLAIM THAT THE CLASSIFICATION OF THE EP80 AS A FIREARM WAS ARBITRARY ........................................................................... 13

      A.    The APA Standard of Review is Narrow and Highly Deferential ........................................................................ 13

      B.    The Classification of the EP80 as a Firearm Was Reasonable ....................................................................... 15

            1.    The EP80's Fire-Control Cavity is Not Solid or Unformed, and the Biscuit and Protrusions Provide Guidance As to How to Complete It ......................... 16

            2.    ATF's Classification of the EP80 is Consistent with Its Prior Decisions on Other Items ................. 19

II.    PLAINTIFF'S CONSTITUTIONAL AND STATUTORY CLAIMS SHOULD BE DISMISSED BECAUSE ATF'S CLASSIFICATION OF THE EP80 AS A FIREARM WAS WITHIN ITS CONSTITUTIONAL AND STATUTORY AUTHORITY ..................................... 23

      A.    The APA Standard of Review Limits the Court to Determining Whether ATF's Classification of the EP80 as a Firearm Violates Constitutional and Statutory Authority ......................................................................... 23

1

2

B.      Plaintiff's First Amendment Claim Should Be Dismissed
        Because the Coloration of the Biscuit and Indexing of the
        Fire-Control Cavity Are Not Protected Speech ................................. 24

3

4

C.      Plaintiff's Second Amendment Claim Should Be
        Dismissed Because The Second Amendment Does Not
        Protect A Right To Sell And Transfer Firearms ................................. 26

5

6

D.      Plaintiff Lacks Standing to Raise a Procedural Due
        Process Claim Under The Fifth Amendment ..................................... 28

7

E.      Plaintiff Has Failed To State A Plausible Claim Under
        The Firearm Owners' Protection Act ................................................. 30

8

CONCLUSION ....................................................................................................... 31

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abrams v. United States,*
   250 U.S. 616 (1919)..............................................................................24

*Akins v. United States of Am.,*
   No. 08-15640, 2009 WL 255682 (11th Cir. Feb. 4, 2009)................................29, 30

*Albright v. Oliver,*
   510 U.S. 266 (1994)..............................................................................28

*Anderson v. City of Hermosa Beach,*
   621 F. 3d 1051 (9th Cir. 2010) ..............................................................25

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)..............................................................................15

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife,*
   BLM, 273 F.3d 1229 (9th Cir. 2001).........................................................14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..........................................................................30, 31

*Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,*
   462 U.S. 87 (1983)..........................................................................14, 19

*Barnes v. U.S. Dep't of Transp.,*
   655 F.3d 1124 (9th Cir. 2011) ..............................................................14, 18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..............................................................................31

*Benoit v. USDA,*
   608 F.3d 17 (D.C. Cir. 2010)..................................................................12

*Bowen v. Mass.,*
   487 U.S. 879 (1988)..............................................................................13

*Buckingham v. Sec. of the U.S. Dep't of Agric.,*
   603 F.3d 1073 (9th Cir. 2010)................................................................30

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)..............................................................................15

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971)..............................................................................14, 18

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983)................................................................................28

*Clapper v. Amnesty Int'l USA,*
   __ U.S. __, 133 S. Ct. 1138 (2013)..........................................................29

*Memorandum in Support of Defendant's*
*Motion to Dismiss and for Summary Judgment*

*Coons v. Lew*,
   762 F.3d 891 (9th Cir. 2014) .................................................................29

*Crowell v. Benson*,
   285 U.S. 22 (1932)...............................................................................24

*Defenders of Wildlife v. Flowers*,
   414 F.3d 1066 (9th Cir. 2005) ..............................................................14

*Dep't of the Army v. Blue Fox, Inc.*,
   525 U.S. 255 (1999)........................................................................12, 13

*Dist. of Columbia v. Heller*,
   554 U.S. 570 (2008).............................................................................. 27

*Farmer v. Higgins*,
   907 F.2d 1041 (11th Cir. 1990) ............................................................15

*Firearms Import/Export Roundtable Trade Group v. Jones*,
   854 F. Supp. 2d 1 (D.D.C. 2012)..........................................................23

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985).............................................................................14

*Gilbert Equip. Co. v. Higgins*,
   709 F. Supp. 1071 (S.D. Ala. 1989) ....................................... 3, 15, 19, 27

*Gun South, Inc. v. Brady*,
   877 F.2d 858 (11th Cir. 1989) ..............................................................15

*Hamilton v. City of San Bernardino*,
   107 F. Supp. 2d 1239 (C.D. Cal. 2000) .................................................24

*Holloman v. Watt*,
   708 F. 2d 1399 (9th Cir. 1983) ........................................................12, 16

*Inland Empire Pub. Lands Council v. Glickman*,
   88 F.3d 697 (9th Cir. 1996) ..................................................................14

*Innovator Enters. v. Jones*,
   28 F. Supp. 3d 14 (D.D.C. 2014) ............................................................3

*Joint Anti-Fascist Comm. v. McGrath*,
   341 U.S. 123 (1951).............................................................................29

*Levin v. United States*,
   663 F.2d 1059 (9th Cir. 2011) ..............................................................12

*Lynch v. United States*,
   292 U.S. 571 (1934).............................................................................12

*March v. Or. Natural Res. Council*,
   490 U.S. 360 (1989)..............................................................................14

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)............................................................29

*McDonald v. City of Chicago, Ill.,*
    561 U.S. 742 (2010)............................................................27

*Mitchell v. United States,*
    930 F.2d 893 (Fed. Cir. 1991) ............................................13

*Modern Muzzleloading v. Magaw,*
    18 F. Supp. 2d 29 (D.D.C. 1998)..................................15, 19

*Mont. Shooting Sports Ass'n v. Holder,*
    No. 09-cv-147-DWM-JCl, 2011 WL 4804756 (D. Mont.
    Aug. 31, 2010) ...................................................................26

*Mullenix v. ATF,*
    2008 WL 2620175 (E.D.N.C. Jul. 2, 2008).....................15, 19

*Native Vill. of Kivalina IRA Council v. U.S. Evtl. Prot.*
    *Agency,*
    687 F.3d 1216 (9th Cir. 2012) ............................................14

*Nat'l Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms, &*
    *Explosives,*
    700 F.3d 185(5th Cir. 2012), ..............................................27

*Nordyke v. King,*
    644 F.3d 776 (9th Cir. 2011) ..............................................28

*N. Plains Res. Council, Inc. v. Surface Transp. Bd.,*
    668 F.3d 1067 (9th Cir. 2011) ............................................14

*O'Bannon v. Town Ct. Nursing Ctr.,*
    447 U.S. 773 (1980)............................................................30

*Occidental Eng'g Co. v. I.N.S.,*
    753 F.2d 766 (9th Cir. 1985) ..............................................15

*Olympic Arms v. Buckles,*
    301 F.3d 384(6th Cir. 2002)................................................27

*Olympic Arms v. Magaw,*
    91 F. Supp. 2d 1061(E.D. Mich. 2000) ..............................27

*Pena v. Lindley,*
    No. 2:09-CV-01185-KJM-CKD, 2015 WL 854684 (E.D.
    Cal. Feb. 26, 2015)............................................................26

*Plains Res. Council, Inc. v. Surface Transp. Bd.,*
    668 F.3d 1067 (9th Cir. 2011) ............................................19

*Police Automatic Weapons Servs. v. Benson,*
    837 F. Supp. 1070 (D. Or. 1993) ..........................................4

*Portman v. Cnty. of Santa Clara,*
    995 F.2d 898 (9th Cir.1993) ................................................................ 30

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ........................................................................... 24

*Skelly Oil Co. v. Phillips Petroleum Co.,*
    339 U.S. 667 (1950) ........................................................................... 13

*Spence v. State of Wash.,*
    418 U.S. 405 (1974) ........................................................................... 24

*Teixeira v. Cnty. of Alameda,*
    No. 3:12-cv-03288-WHO, 2013 WL 4804756 (N.D. Cal.
    Sept. 9, 2013) ............................................................................. 26, 31

*United States v. 16,179 Molso Italian .22 Caliber Winlee
    Derringer Convertible Starter Guns,*
    443 F.2d 463 (2d Cir. 1971) ............................................................ 7, 18

*United States v. Carey,*
    602 F.3d 738 (6th Cir. 2010) ............................................................. 28

*United States v. Chafin,*
    423 F. App'x 342 (4th Cir. 2011) ......................................................... 27

*United States v. Mitchell,*
    445 U.S. 535 (1980) ........................................................................... 12

*United States v. Mullins,*
    446 F.3d 750 (8th Cir. 2006) ............................................................ 7, 18

*United States v. Reed,*
    114 F.3d 1053 (10th Cir. 1997) ........................................................ 7, 18

*United States v. Smith,*
    477 F.2d 399(8th Cir. 1973) ............................................................ 7, 18

*United States v. Stewart,*
    No. CR-00-0698-PHX-ROS, 2001 WL 194917 (D. Ariz
    Feb. 26, 2001) ........................................................................... 7, 18

*Vives v. City of New York,*
    305 F. Supp. 2d 289, (S.D.N.Y. 2003) .................................................. 24

*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................................................... 30

*Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.,*
    24 F.3d 56 (9th Cir. 1994) ................................................................. 29

*Wetlands Action Network v. U.S. Army Corps of Eng'rs,*
    222 F.3d 1105 (9th Cir. 2000) ............................................................ 14

**STATUTES**

U.S. Const. amend. II ....................................................................................26

5 U.S.C. § 706 ............................................................................................23

5 U.S.C. § 706(a)(2) ...................................................................................28

5 U.S.C. § 706(2)(A) ..................................................................................14

18 U.S.C. § 706(2)(B) ................................................................................23

18 U.S.C. § 706(2)(C) ................................................................................23

18 U.S.C. § 921 ............................................................................................1

18 U.S.C. § 921(a)(23) ...............................................................................22

18 U.S.C. § 921(a)(28) .................................................................................5

18 U.S.C. § 921(a)(3) ...............................................................4, 7, 11, 18

18 U.S.C. § 922(q)(1) ...................................................................................9

18 U.S.C. § 922(t) .........................................................................................5

18 U.S.C. § 923(a) ........................................................................................4

18 U.S.C. § 923(i) .........................................................................................4

18 U.S.C. § 926 .....................................................................................3, 23, 30

26 U.S.C. § 5845(b) ....................................................................................22

28 U.S.C. § 1331 .........................................................................................12

28 U.S.C. § 2201-02 ...................................................................................12

**RULES**

Fed. R. Civ. P. 56(c) ...................................................................................15

**REGULATIONS**

27 C.F.R. § 478.11 ................................................................................4, 5, 6

27 C.F.R. § 478.41 ........................................................................................4

27 C.F.R. § 478.92 ........................................................................................4

28 C.F.R. § 0.130(a) ......................................................................................3

# OTHER AUTHORITIES

S. Rep. No. 90-1097 (1968)
    *reprinted in*  1968 U.S.C.C.A.N. 2112, 2113-14 .....................................................3, 9

*Webster's New World Coll. Dictionary* (4th ed. 2010) ...........................................5, 24

*Interstate Shipment of Firearms*: Hearing on S. 1975 and S.
    2345 Before the S. Comm. On Commerce,
    88th Cong. 286 (1964) ................................................................................................6

# INTRODUCTION[1]

For more than three decades, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has reviewed numerous items to determine if they should be properly classified as "firearms" under the Gun Control Act of 1968, 18 U.S.C. § 921 et seq., as amended ("Gun Control Act" or "Act").  In making these determinations, ATF brings its technical, scientific, and mechanical expertise to bear.  In this case, ATF reasonably determined that the item at issue (the EP80) can easily and simply be made suitable for use as part of a functional weapon, and that the EP80 is therefore a firearm within the meaning of the Gun Control Act.  Plaintiff's primary objection – that ATF's decision allegedly did not take into account the sequence in which the EP80 was manufactured -- does not undermine that decision.  Plaintiff's claim that ATF's determination was "arbitrary" should therefore be rejected.

Items which meet the statutory definition of a "firearm" are subject to regulatory restrictions designed to keep firearms out of the hands of those not legally entitled to possess them and to assist law enforcement in combatting crime. "Firearms" are defined as weapons that can be readily converted to expel a projectile by the action of an explosive, as well as the "receivers" of such weapons.  The "receiver" is the part of a weapon that houses vital fire-control components that allow the weapon to shoot, such as the trigger and hammer.

AR-type receivers such as the EP80 have a space within them called the fire-control cavity, which accommodates the firing components.  The EP80 contains a completely formed fire-control cavity, which is also marked to indicate where to attach the firing components.  Although the cavity is filled with plastic, which is also of a contrasting color, that plastic can be easily removed, leaving a pocket of the dimensions necessary to accommodate the fire-control components.  Hence, in less

---

[1] This motion does not address any of the claims for relief against the individual defendants, or any of the other claims as they relate to the individual defendants.

*Memorandum in Support of Defendant's*
*Motion to Dismiss and for Summary Judgment*                                    *14cv548*

than an hour, using commonly available tools and no special skill, the EP80 can be made into a usable part of a weapon that will fire.  ATF's determination is consistent with its longstanding position that, where the fire-control cavity area on a product has been even partially formed, or marked where drilling should occur to create it (so-called "indexing"), as opposed to being a solid block of metal or plastic that is unindexed, the device should be classified as a receiver.

Plaintiff's claims to the contrary fail to show that ATF's decision was incorrect. Plaintiff argues that the EP80 is not a receiver because the plastic filler, which plaintiff calls a "biscuit," is allegedly formed first (to the dimensions of the fire-control cavity), and the remainder of the device is then built around it.  But how and in what order that cavity was created is irrelevant for purposes of ATF's proper classification of the EP80 as a receiver.  What matters is that the EP80 contains a fully formed fire-control area whose measurements are clearly defined -- three-dimensionally -- by plastic that can be removed with ordinary tools and no particular skill.  The Court should therefore grant summary judgment as to the claim that defendant's classification decision was arbitrary.

Plaintiff's remaining claims against defendant should be dismissed.  Plaintiff has failed to state a claim upon which relief can be granted under the First Amendment, First Amended Complaint for Damages; Deprivation of Civil Rights (Bivens Action); Injunctive and Declaratory Relief; Jury Trial Demanded ("Complaint") Count 1, because the colored biscuit and indexing marks on the EP80 are means of measurement, not constitutionally protected expressions of ideas. Plaintiff's Second Amendment claim, id. Count 4, fails because the Second Amendment does not protect the alleged right to sell and transfer firearms.  Plaintiff lacks standing to raise a Fifth Amendment due process claim on behalf of EP Arms, id. Count 8, the manufacturer of the EP80, which actually sought the decision as to whether the EP80 is a firearm.  Finally, plaintiff has failed to state a plausible claim

1    under the Firearm Owner's Protection Act, <u>id.</u> Count 9, because the Complaint is

2    devoid of any factual allegations that would allow the Court to infer that defendant's

3    lawful seizure of plaintiff's customer lists somehow automatically resulted in the

4    creation a registration system of firearms owners.

5                                    **BACKGROUND**

6          A.    **Applicability of the Gun Control Act to Receivers**

7          Congress enacted the Gun Control Act to help keep firearms out of the hands of

8    those not legally entitled to possess them because of age, criminal background, or

9    incompetency, and to assist law enforcement authorities to combat the ever increasing

10   prevalence of crime in the United States.  S. Rep. No. 90-1097, at 28 (1968), <u>reprinted</u>

11   <u>in</u> 1968 U.S.C.C.A.N. 2112, 2113-2114; <u>Gilbert Equip. Co. v. Higgins</u>, 709 F. Supp.

12   1071, 1081-82 (S.D. Ala. 1989).  As Congress noted, "[t]he ready availability; that is,

13   ease with which any person can anonymously acquire firearms (including criminals,

14   juveniles without the knowledge or consent of their parents or guardians, narcotic

15   addicts, mental defectives, armed groups who would supplant duly constituted

16   authorities, and others whose possession of firearms is similarly contrary to the public

17   interest) is a matter of serious national concern."  S. Rep. No. 90-1097, at 28.  ATF is

18   the federal agency charged with the administration of the Act.  <u>See</u> 18 U.S.C. § 926

19   ("The Attorney General may prescribe only such rules and regulations as are

20   necessary to carry out the provisions of this chapter [18 U.S.C. §§ 921 <u>et seq.</u>] . . . .").

21   This enforcement authority is delegated to the Director of ATF.   28 C.F.R. §

22   0.130(a)(1), (2).

23          Among ATF's responsibilities is the classification of firearms, which is handled

24   by the Firearms Technology Branch ("FTB") (now called the Firearms and

25   Ammunition Technology Division), ATF's technical authority relating to firearms and

26   their classification under federal firearms laws.  <u>See</u> <u>Innovator Enters. v. Jones</u>, 28 F.

27   Supp. 3d 14, 22 (D.D.C. 2014) ("The Firearms Technology Branch of ATF has

28

expertise in classifying firearms and firearm silencers -- much more so than the Court. When considered at this high level of generality, FTB's expertise weighs in favor of deference."); see also Police Automatic Weapons Servs. v. Benson, 837 F. Supp. 1070, 1074 (D. Or. 1993) ("[T]he Firearms Technology Branch is the division of the ATF responsible for testing and evaluating firearms for 'classification under' the GCA.")  FTB routinely inspects devices submitted by the public or industry and classifies the submissions accordingly.  See http://www.atf.gov/content/firearms/firearms-technology.  FTB issued approximately 253 classification letters in 2013 and approximately 242 classification letters in 2014. Administrative Record[2] ("AR") 351-352.

A firearm is defined in the Gun Control Act as:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame *or receiver of any such weapon*; (C) any firearm muffler or firearm silencer; or (D) any destructive device.

18 U.S.C. § 921(a)(3) (emphasis added); see also 27 C.F.R. § 478.11 (same). Pursuant to its authority to enforce the Act, ATF defines a "receiver" as "that part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 C.F.R. § 478.11.

Those who wish to import, manufacture, or deal in firearms as defined by the Act must be licensed by the Attorney General, 18 U.S.C. § 923(a), 27 C.F.R. § 478.41; must mark each firearm for identification purposes, 18 U.S.C. § 923(i), 27 C.F.R. § 478.92; and must maintain records of their firearms transactions, 27 C.F.R.

---

[2]  The Administrative Record has been filed as Docket ##60-66.

1    Subpart H.  Firearm licensees must also perform a background check on persons to

2    whom they are transferring a firearm.  18 U.S.C. § 922(t).

3    **B.    The Receiver of the AR-15 Rifle**

4           The weapon at issue in this case is an "AR-15-type" firearm.  The designation

5    "AR" is a reference to the company that originally designed the weapon, Armalite

6    Rifle, although the AR-15 is currently manufactured by the Colt company.  The AR-

7    15 is the particular model of the weapon, which is a semi-automatic, civilian version

8    of the 5.56-caliber[3] M-16 machinegun used by the United States military.  A semi-

9    automatic weapon is one that fires a single round with each function (push or pull) of

10   the trigger.  Semiautomatic firearms include handguns, rifles and shotguns.  See, e.g.,

11   18 U.S.C. § 921(a)(28).  A semi-automatic contrasts, for example, with a fully

12   automatic weapon, such as a machine gun, which can automatically shoot more than

13   one shot, without manual reloading, with a single function of the trigger.

14          The AR-15 is composed of two separate "parts" -- an upper "assembly" and a

15   lower "receiver."  See Figure 1 (attached as Exhibit 1); AR 377.  In this case the

16   receiver is called the EP80,[4] the product designation given to it by its manufacturer,

17   EP Arms.  In accordance with the regulatory definition, 27 C.F.R. § 478.11, the

18   receiver of the AR-15 houses the firing mechanism, whose parts consist of the

19   hammer, trigger, disconnector, selector, pins, and springs.  AR 281.  The parts

20   comprising the firing mechanism are contained in the fire control cavity, AR 281, and

21   are the components of the weapon necessary to initiate the firing.  AR 295-297.  The

22

23   ───────────────
         [3]   A caliber is "the diameter of the bore of a gun, usually measured in
24   hundredths of inches or in millimeters."  Webster's New World Coll. Dictionary 207
25   (4th ed. 2010).

26       [4]   The terms "precursor" and "80% receiver" used in the Complaint, see, e.g.,
27   Complaint ¶¶ 21, 41-43, are plaintiff's own terminology and are not terms recognized
     in federal law.

28

1   receiver of the AR-15 also contains mounting points at the places where the upper

2   assembly is connected to the barrel.  AR 341-42, 379.

3        The upper assembly of the AR-15 contains various other parts of the weapon.

4   These include the bolt-carrier group and the attachment point for the barrel and the gas

5   tube, which collectively assist in loading and chambering a cartridge, and which return

6   pressurized gas to cycle the operation of the weapon.  AR 303, 317, 330-31.  At times

7   the upper assembly of a weapon is somewhat imprecisely referred to as the "upper

8   receiver."  AR 279.  The upper assembly does contain the bolt and is usually

9   "threaded at its forward portion to receive the barrel," features which are consistent

10   with the regulatory definition of a receiver.  <u>See</u> 27 C.F.R. § 478.11.  However, ATF

11   does not consider the upper assembly to be the "receiver" because it does not contain

12   the firing mechanism, and the upper assembly has not been legally classified as the

13   "receiver" since passage of the Act.  AR 294.  The upper assembly of the AR-15 is

14   therefore not a "firearm" and is generally unregulated under the Act.[5]  AR 294.

15   Accordingly, the parts composing the upper assembly can be bought and sold without

16   meeting the licensing, marking, recordkeeping, or background-check requirements of

17   the Act.

18

19

20         [5]  The upper assembly, along with all other parts of the weapon, were originally

21   regulated under the Federal Firearms Act (the operative federal law prior to the Gun

22   Control Act of 1968).  However, in passing the latter Act, Congress determined that

23   the lower receiver was the only "part" of the firearm that would be considered the

24   regulated "receiver" under federal law.  The reason for the decision to limit regulation

25   to the lower receiver was that it had become "impracticable, if not impossible, to treat

26   each small part of a firearm as if it were a weapon."  AR 223, <u>Interstate Shipment of</u>

27   <u>Firearms</u>: Hearing on S. 1975 and S. 2345 Before the S. Comm. on Commerce, 88th

28   Cong. 286 (1964) (Technical Explanation of Amendments to the Federal Firearms Act

Proposed by S. 1975 (89th Cong., 1st Sess.)).  Accordingly, Congress determined to

eliminate all but frames and receivers from the provisions of the Act.  <u>Id.</u>  The agency

was responsible for defining what would constitute a receiver.  AR 235-36.

### C.   <u>General Classification Criteria for Receivers</u>

The term "receiver blank" is used to describe forgings, castings, or machined bodies such as AR-15 receiver castings, in various stages of folding or machining, which are not classified as firearms.  AR 119.  For a casting to qualify as a receiver, it must have reached a certain advanced stage of manufacture.  AR 63, 119.  ATF makes this determination based upon the difficulty of the process (<u>i.e.</u>, of machining and drilling), the cost and availability of the tools required, the skill required, and the time it would take to fashion the blank into an item suitable for use as part of a functional weapon .  AR 60, 62.  These criteria are derived from the statute and from judicial decisions which address when a weapon "may readily be converted to expel a projectile by the action of an explosive," 18 U.S.C. § 921(a)(3).  <u>See, e.g.</u>, <u>United States v. Mullins</u>, 446 F.3d 750, 756 (8th Cir. 2006) (finding gun was "readily convertible" where it could be converted to expel a projectile without any specialized knowledge in less than an hour, and in minutes by an expert); <u>United States v. Reed</u>, 114 F.3d 1053, 1057 (10th Cir. 1997) (upholding firearms conviction where the defense expert testified that the gun was workable after fifteen to twenty minutes of manipulation); <u>United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns</u>, 443 F.2d 463, 465-66 (2d Cir. 1971) (holding that starter guns that could be converted to fire live ammunition in twelve minutes or less by means of an electric drill were "readily convertible"); <u>United States v. Stewart</u>, No. CR-00-0698-PHX-ROS, 2001 WL 194917, *1-2 (D. Ariz Feb. 26, 2001) (finding that parts kit was a firearm where it contained all parts necessary to complete the rifle, and had a partially machined receiver whose manufacturing could be completed in thirty minutes.); <u>see also</u> <u>United States v. Smith</u>, 477 F.2d 399, 400 (8th Cir. 1973) (per curiam) (holding that a machine gun could be "readily restored to shoot" automatically where process would take an eight-hour day in a properly equipped machine shop).

ATF's technical experts have determined that for an AR-type receiver blank to remain outside the purview of the Act, its fire-control area must remain solid, viz., uncreated, unformed, and unmachined in any way.  See AR 57-59, 69, 82; see also AR 279, 286-90.  In order to ensure consistency, ATF created this uniformly applicable baseline standard, determining that the critical manufacturing process occurs when any step is taken toward completion of the critical area.  In the case of AR-type firearms this critical area is the fire-control cavity on the lower receiver, as indicated in Figure 2 (attached as Exhibit 1).  AR 379.

As an example of ATF's adherence to this standard, the upper and lower portions of the weapon are attached by a lug on the upper assembly which is inserted into a hole on the receiver.  See Figure 8 (attached as Exhibit 1); AR 294, 297, 379. ATF has specified that, in order for the receiver "to be considered 'completely solid and un-machined in the fire-control recess area,'" that hole "must be no longer than .800 inch, measured from immediately forward of the front of the buffer retainer hole."  See AR 82, 86, 285.  The purpose of this specification is to prevent any encroachment into the fire-control cavity by the drilling of a hole that is any larger. See, e.g., AR 82.

The same rationale applies to ATF's determination that the "indexing" of any part of the fire-control area would require a device to be classified as a firearm "receiver."  See e.g. AR 86, 135, 138, 140.  The term "indexing" refers to the placement of marks on a receiver to indicate the exact location where one or more critical machining operations are necessary to make the weapon functional.  See, e.g., AR 138.  An AR-15 has been indexed if (1) the fire control cavity has been milled or marked with appropriate dimensions; or (2) any of the holes into which the fire-control components (the selector, trigger, and hammer) are mounted have been drilled or marked with appropriate dimensions.  AR 140.

1    ATF's position that the fire-control area must remain completely solid and

2 unindexed is supported by law enforcement and public safety considerations.   To

3 allow that an item must be fully operational before it may be classified as a firearm

4 would enable manufacturers to produce devices that are all but fully functional

5 weapons, but that cannot be classified as firearms because they require some very

6 minimal amount of tooling before they can shoot.  Such classification decisions would

7 thereby allow manufacturers to circumvent licensing, regulation, and serialization

8 requirements, and would allow individuals to evade background checks, thereby

9 undermining the Gun Control Act.   See, e.g., 18 U.S.C. § 922(q)(1) (Congressional

10 finding that "crime . . . involving guns, is a pervasive, nationwide problem"); see also

11 S. Rep. No. 90-1097, at 28.

12    **D.    The EP80's Already Formed Fire-Control Cavity and Indexing**

13    The receiver at issue here, the EP80, is made of Nylon-type reinforced polymer.

14 AR 11.  Its fire-control cavity is filled with polymer of a different color, AR 23-25,

15 275-78, as pictured in Figure 3-4 (attached as Exhibit 1).  AR 355-61.

16    In contrast, the receiver blanks that ATF has determined are not firearms do not

17 have a fire-control cavity that has been created, altered, or filled with any insert or

18 otherwise indexed in any way.  AR 57-59, 95-113.  A receiver blank is pictured in

19 Figure 5 (attached as Exhibit 1).  AR 279. The EP80 also has material protruding from

20 the exterior walls of the casting at the spots where holes must be drilled for the

21 selector (the switch that allows a gun to be placed in safety mode or firing mode) and

22 the pins that attach the hammer and trigger.  AR 355, 357.  These protrusions are

23 indicated in the picture of the EP80 in Figure 7 (attached as Exhibit 1). The exterior

24 walls of the casting on receiver blanks, on the other hand, are completely smooth and

25 unindexed, as shown in Figure 6 (attached as Exhibit 1).  AR 279.

26

27

28

1    **E.**    **ATF's Classification of the EP80 as a "Firearm Receiver"**

2        On July 20, 2013, EP Arms, the manufacturer of the EP80, asked ATF for a

3    determination as to whether the EP80 should be classified as a firearm.  AR 1.  EP

4    Arms contended that the casting it submitted was not a firearm because it would

5    require further machining in order to be capable of being assembled with other parts to

6    put together a firearm.  AR 3.  Citing prior determinations, EP Arms claimed that ATF

7    had offered inconsistent opinions regarding the extent to which such raw material

8    must be machined in order to be deemed a firearm.  AR 4.

9        ATF responded on February 7, 2014, that the EP80 was properly classified as a

10   "firearm receiver" because the fire-control cavity had been formed during the

11   manufacturing process.  AR 8.  Although the fire-control cavity was filled with plastic

12   material, or polymer, the submitted casting had reached a point in its manufacture to

13   be classified as a firearm.  AR 8.  The fact that the polymer had to be removed before

14   the fire-control components could be installed did not alter the fact that the fire-

15   control cavity was formed.  AR 8.  ATF also noted the existence of protrusions on the

16   exterior walls of the casting device indicating the approximate locations of holes to be

17   drilled for the selector, hammer, and trigger pins.  AR 8.

18       EP Arms then filed an appeal on March 4, 2014, claiming that ATF's decision

19   was based on a misunderstanding of the process by which the EP80 was

20   manufactured.  AR 10.  Specifically, EP Arms explained that the plastic core of the

21   item, or "biscuit," was manufactured first and then placed inside the cavity of a

22   secondary mold, which was then injected with material to create the overall shape of

23   the product.  AR 11.  Therefore, according to EP Arms, the casting was not a receiver

24   or firearm, because "at no time does a fire-control cavity exist."  AR 11.

25       ATF declined to reverse its determination.  AR 20.  ATF explained that it has

26   long held that "items such as receiver blanks – castings' or 'machined bodies' in

27   which the fire-control cavity area is completely solid and unmachined – have not yet

28

1  reached a 'stage of manufacture' to be classified as a 'firearm receiver,'" but that,
2  unlike the EP80, "[t]hese items are a *single piece of* metal that require a substantial
3  amount of machining to the vital areas of the firearm."  AR 21-22.  As ATF noted,
4  each of the instances cited by plaintiff in which FTB had determined that certain
5  submissions were not firearm receivers involved a fire-control cavity that "was the
6  same material as the receiver itself and the material filling the fire-control cavity is
7  integral to the item; therefore the fire-control 'cavity' had not been created."  AR 22.
8  Such characteristics contrast with the EP80, whose fire-control cavity was formed and
9  filled with a different material than the surrounding parts.

10      ATF pointed out that the manufacturing process for the EP80 created a fire-
11  control cavity through the use of a "biscuit" during the molding process "of the exact
12  size and dimensions of the functional fire-control cavity."  AR 23-24.  In contrast to
13  castings or blanks which are formed as a single piece in which the fire-control cavity
14  has not been made, the biscuit actually "creates the internal dimensions of the fire-
15  control cavity."  AR 23.  In fact, it appeared that the "sole purpose of the 'biscuit' is to
16  differentiate the fire-control area from the rest of the receiver and thus facilitate the
17  process of making the receiver into a functional firearm."  AR 24.  Based on the EP
18  Arms manufacturing process, it was clear that the biscuit served "to index the entire
19  fire-control cavity" so that it could be easily identified and the biscuit could be
20  removed to create a working firearm.  AR 24.  ATF concluded that the EP80 was
21  therefore "properly classified as a 'firearm' as defined in 18 U.S.C. 921(a)(3) because
22  the fire-control area is created during the manufacturing process through the use of the
23  biscuit."  AR 24.

24      ATF also pointed out that the manufacturing process results in "'excess material
25  extending past the exterior walls of the casting, indicating the approximate locations
26  of the holes to be drilled for the selector, hammer, and trigger pins.'"  AR 24.
27  According to ATF, "the point in the manufacturing process at which an AR-15 blank

28

*Memorandum in Support of Defendant's*
*Motion to Dismiss and for Summary Judgment*

is classified as a firearm is when it has been indexed for or machined in the fire-control recess area." AR 25. Thus, ATF concluded that the "excess material indexing the location for the holes to be drilled is, by itself, sufficient to classify the sample as a firearm receiver." AR 25.

## ARGUMENT

### ATF'S CLASSIFICATION OF THE EP80 AS A FIREARM WAS REASONABLE AND WAS NOT CONTRARY TO CONSTITUTIONAL RIGHT OR IN EXCESS OF STATUTORY AUTHORITY

The United States is subject to suit only to the extent that it has explicitly waived its sovereign immunity. Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999). Moreover, "a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." United States v. Mitchell, 445 U.S. 535, 538 (1980); Levin v. United States, 663 F.2d 1059, 1063 (9th Cir. 2011). "The party who sues the United States bears the burden of pointing to such an unequivocal waiver of immunity." Holloman v. Watt, 708 F. 2d 1399 (9th Cir. 1983).

Plaintiff has not met its burden of pointing to an unequivocal waiver of sovereign immunity. For that reason alone, the Complaint must be dismissed. Plaintiff alleges that defendant violated its rights under the First, Second, and Fifth Amendments, see Complaint Counts 1, 4, 8, but the Constitution does not waive sovereign immunity. See Lynch v. United States, 292 U.S. 571, 582 (1934); Benoit v. USDA, 608 F.3d 17, 20-21 (D.C. Cir. 2010). Plaintiff also alleges a violation of the Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986), see Complaint Count 9, but that statute does not contain a waiver of sovereign immunity either. Plaintiff asserts jurisdiction under 28 U.S.C. § 1331, see Complaint ¶ 1, but § 1331 does not waive sovereign immunity. See Holloman, 708 F.2d at 1401. Likewise, the Declaratory Judgment Act, 28 U.S.C. § 2201-02, see Complaint ¶ 1, is a procedural statute only and does not effect a waiver of sovereign immunity. See

Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950).  Thus, plaintiff has not identified any applicable waiver of sovereign immunity to permit its suit against defendant to proceed.

The only statute possibly capable of providing the requisite waiver of sovereign immunity for plaintiff's claims is the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.  The APA waives the United States' sovereign immunity to permit judicial review of certain agency actions, Bowen v. Mass., 487 U.S. 879, 891-92 (1988); Mitchell v. United States, 930 F.2d 893, 895 (Fed. Cir. 1991), but, like all waivers of sovereign immunity, it must "be strictly construed, in terms of its scope, in favor of the sovereign."  Blue Fox, Inc., 525 U.S. at 261.  Even if plaintiff were to amend its Complaint to invoke the APA waiver of sovereign immunity, its limitations would nevertheless compel dismissal and judgment in defendant's favor, as demonstrated below.

## I.   SUMMARY JUDGMENT SHOULD BE GRANTED FOR DEFENDANT AS TO PLAINTIFF'S CLAIM THAT THE CLASSIFICATION OF THE EP80 AS A FIREARM WAS ARBITRARY

### A.   The APA Standard of Review is Narrow and Highly Deferential

Plaintiff's central allegation in this case is that defendant's classification of the EP80 as a "firearm" was "arbitrary, and historically inconsistent."   Complaint ¶¶ 50-52.  Plaintiff contends that, in assuming the EP80 was created with an "empty fire-control cavity," defendant "misapprehen[ded]" the method of manufacture of the EP80, whose filling or "biscuit" was manufactured first and then surrounded by the remaining material.  Complaint ¶¶ 25-26, 43.  Moreover, the removal of the biscuit to create a fire-control cavity allegedly requires "great skill.  Id. ¶ 44(a).  Plaintiff also claims that the indexing on the outside of the fire-control cavity for the hammer and trigger pins and the safety selector hole was not sufficient to create a functioning receiver because of the additional "drilling and machining" required to drill the holes

1  correctly.  Id. ¶¶ 42, 45. Finally, according to plaintiff, the classification of the EP80

2  as a firearm was inconsistent with ATF's historical positions.  Id. ¶¶ 46, 52.

3      With respect to these claims, a court may overturn agency action only if the

4  action was "arbitrary, capricious, an abuse of discretion, or otherwise not in

5  accordance with law . . . ."  5 U.S.C. § 706(2)(A); see Native Vill. of Kivalina IRA

6  Council v. U.S. Evtl. Prot. Agency, 687 F.3d 1216, 1219 (9th Cir. 2012).   This

7  standard of review is "narrow," Barnes v. U.S. Dep't of Transp., 655 F.3d 1124, 1132

8  (9th Cir. 2011), and the agency's action is entitled to a "presumption of regularity,"

9  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971).   The

10  "court is not empowered to substitute its judgment for that of the agency."  Overton

11  Park, 401 U.S. at 416; Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, BLM, 273

12  F.3d 1229, 1236 (9th Cir. 2001) (internal citations and quotation marks omitted); see

13  also Barnes, 655 F.3d at 1132.

14      Under 5 U.S.C. § 706(2)(A), a court must evaluate an agency's decision based

15  on the administrative record that was before the agency at the time of its decision.  See

16  Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985); see also Inland Empire

17  Pub. Lands Council v. Glickman, 88 F.3d 697, 703 (9th Cir. 1996).  The reviewing

18  court must determine whether the agency has "considered the relevant factors and

19  articulated a rational connection between the facts found and the choice made."  Balt.

20  Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 105 (1983);

21  Defenders of Wildlife v. Flowers, 414 F.3d 1066, 1073 (9th Cir. 2005).  So long as

22  there is a rational basis, "an agency's decision will only be overturned if the agency

23  committed a 'clear error in judgment.'"  Wetlands Action Network v. U.S. Army

24  Corps of Eng'rs, 222 F.3d 1105, 1114-15 (9th Cir. 2000) (quoting March v. Or.

25  Natural Res. Council, 490 U.S. 360, 378 (1989)).

26      Finally, a court "generally must be 'at its most deferential' when reviewing

27  scientific judgments and technical analyses within the agency's expertise."  N. Plains

28

Res. Council, Inc. v. Surface Transp. Bd., 668 F.3d 1067, 1075 (9th Cir. 2011) (quoting Balt. Gas & Elec. Co., 462 U.S. at 103); see also Farmer v. Higgins, 907 F.2d 1041, 1045 (11th Cir. 1990) ("[w]e must defer to the Bureau's interpretation of the Gun Control Act and its regulations absent plain error in the Bureau's interpretation."), citing Gun South, Inc. v. Brady, 877 F.2d 858, 864 (11th Cir. 1989).  Moreover, "[i]t matters not whether the ATF's decision is ultimately a good one or whether the court agrees with the ATF's decision. . . .   Rather, what matters is whether plaintiff has presented sufficient evidence to meet his burden of proving that the defendant's decision … in this case is arbitrary and capricious."  Mullenix v. ATF, No. 5:07-cv-154-D, 2008 WL 2620175, at *5 (E.D.N.C. Jul. 2, 2008) (internal citation omitted); Modern Muzzleloading v. Magaw, 18 F. Supp. 2d 29, 37 (D.D.C. 1998) (ATF "does not bear the burden of convincing the Court that its position is better…it merely need convince the Court that the decision was not arbitrary and capricious."); Gilbert Equip. Co., 709 F. Supp. at 1076 (It "is of no moment that the administrative record might also support the opposite conclusion, as the court needs only determine that a rational basis exists for [ATF's] decision.").   Plaintiff's claim that the EP80 was incorrectly classified must fail under this narrow and highly deferential standard of review.

### B.     The Classification of the EP80 as a Firearm Was Reasonable

Summary judgment is appropriate when, after considering the record as a whole, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-8 (1986); Fed. R. Civ. P. 56(c).  The movant initially must demonstrate the absence of a genuine issue of material fact.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the movant has met its burden, the nonmoving party generally may not rely on the allegations or denials in its pleading, but must come forward with specific facts showing a genuine issue for trial.  See, e.g., Anderson, 477

U.S. at 248.   Summary judgment is an appropriate mechanism for determining "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir. 1985).

In determining whether items should be classified as firearms, ATF relies on its technical and scientific expertise, as well as its long experience in reviewing and classifying firearms.  When it reviewed the EP80, ATF considered the relevant factors and applied the appropriate criteria in classifying the EP80 as a firearm receiver.  The agency's determination was reasonable and lawful.

1.   **The EP80's Fire-Control Cavity is Not Solid or Unformed, and the Biscuit and Protrusions Provide Guidance As to How to Complete It**

The fire-control cavity of plaintiff's EP80 is created during the manufacturing process and formed by a piece of polymer of a different color that plaintiff calls a "biscuit."  AR 21-24.  The biscuit occupies the fire-control cavity, and the rest of the EP80 is allegedly wrapped around it.  Complaint ¶ 43(a).  Once the EP80 is complete, and because polymer is inherently easier to machine than metal, the biscuit can be removed with any number of tools that are readily available at most hardware and home improvement stores or through the internet, such as a drill press, hand drill, Dremel tool (a versatile, handheld rotary bit tool that can be used to cut, grind, drill, sand, and mill various materials), or other type of milling equipment.  See AR 280. ATF has consistently determined that, in order for an AR-type receiver blank to remain outside the purview of the Act, its fire-control cavity must remain solid and unformed.  In accordance with this position, the EP80 was properly classified as a firearm because the fire-control area was fully formed during the manufacturing process through the use of the biscuit.  AR 21-24.

Furthermore, by differentiating the fire-control cavity from the rest of the receiver, the biscuit facilitates the process of making the receiver into a functional

1  firearm.  AR 24.  The biscuit is molded so that the entire fire-control cavity will be

2  filled by it.  AR 23-24.  Hence, the biscuit defines the exact size and dimensions of the

3  fire-control cavity space, so that once the biscuit is removed, the hammer, trigger, and

4  other components of the firing mechanism can be inserted.  AR 23-24.  Plaintiff itself

5  calls the biscuit a "color-coded 'guide'" as to where the EP80 must be further

6  machined in order to become a functioning receiver.  Complaint ¶ 41(a); see also id. ¶

7  39.  Thus, the biscuit supplies three-dimensional indexing for the entire fire-control

8  cavity.  AR 23-24.

9       In addition, plaintiff's EP80 contains indexing on the exterior walls of the fire-

10  control cavity for the pin holes that hold the hammer and trigger pins, and for the hole

11  that houses the selector.  AR 24.  This indexing results from the manufacturing

12  process, which creates material that protrudes from the exterior walls of the casting at

13  the approximate location of the holes to be drilled.  AR 24.  Without this indexing,

14  certain skill and expertise would be required to drill holes at the proper locations for

15  the selector and the hammer and trigger pins.  AR 319.  Holes of the proper size can

16  easily be made using drill-bits of the correct diameter.  AR 363, 365.  Hence, the

17  indexing on the exterior walls of the fire-control cavity, by itself, is sufficient to

18  classify the EP80 as a firearm receiver, because it is tantamount to forming the holes

19  themselves and thereby facilitates the conversion of the EP80 into an operational

20  weapon.[6]  See AR 25, 86.  Even if the Court disagrees that the EP80 was otherwise

21

22

---

23  [6] Plaintiff claims that because the remainder of the device is cast around the
biscuit in the EP80, an actual "cavity" never exists during the creation of the EP80,
24  and the device therefore cannot be considered a firearm.  Complaint ¶ 43(a).  But the
sequence of manufacturing is not relevant to ATF's determination.  What matters is
25  the fact that the EP80 contains a three-dimensionally indexed fire-control cavity as
well as indexing for the fire-control component holes.  These features are the reason
26  the EP80 has properly been classified as a receiver and a firearm, regardless of how or
in what order the fire-control cavity was formed and its indexing was created, or when
27  the cavity was occupied by plastic.  AR 20-25.

28

*Memorandum in Support of Defendant's*                                                      *14cv548*
*Motion to Dismiss and for Summary Judgment*

properly classified as a firearm receiver, it should still uphold ATF's decision on the basis of the indexing provided by the protrusions in the fire-control cavity area.

Plaintiff's EP80 can be made into a functional firing mechanism simply by removing the biscuit, drilling out the indexed holes, and inserting the appropriate (unregulated)[7] fire-control parts.  AR 275-78.  The process takes less than two hours and requires no particular skill.  In fact, it is accurately demonstrated on a YouTube video in under one hour.[8]   **https://www.youtube.com/watch?v=pxcSlOVeXlQ** (accessed on Jan. 7, 2015); AR 275-78.  As shown on the video, portions of the biscuit can ultimately be pried out with a pair of pliers – thereby countering plaintiff's claim and demonstrating that the biscuit and the receiver are two separate pieces.  See Video Clip at 4:06.[9]  Hence, the EP80 has reached an advanced enough stage of manufacture that it must be classified as a "firearm" under longstanding ATF precedent.  AR 20-25; see 18 U.S.C. § 921(a)(3); cf. United States v. Mullins, 446 F.3d at 756; United States v. Reed, 114 F.3d at 1057; United States v. 16,179 Molso, 443 F.3d at 465-66; United States v. Stewart, 2001 WL 194917, *1-2; cf. also United States v. Smith, 477 F.2d at 400.

The EP80 manufacturing process contrasts with the manufacture of receiver blanks.  Such blanks that are formed as a completely solid, single piece of metal or

---

[7]  Only the "frame [and] receiver" are regulated.  See 18 U.S.C. § 921(a)(3).

[8]  Plaintiff claims that the removal of 1/16 of an inch of material surrounding the biscuit requires precise machining.  Complaint ¶ 44.  However, as the video shows, and as ATF has determined, the removal from the fire-control cavity of this and all other material necessary to allow for the insertion of the fire-control parts can be accomplished in less than an hour with no special expertise.  AR 275.

[9]  ATF official Michael Curtis, the FTB Firearms Enforcement Officer, also removed the biscuit from the fire-control cavity of the EP80 using commonly available tools and a process similar to that demonstrated in the YouTube video.  The excavation of the fire-control cavity took less than an hour and required no particular expertise.

*Memorandum in Support of Defendant's*
*Motion to Dismiss and for Summary Judgment*                                          *14cv548*

plastic that requires a substantial amount of precise machining and expertise to create a fire-control cavity.  AR 22.  For example, the machining of such a solid metal block would take approximately seven hours, and considerable skill would be required to drill the cavity and holes to the precise measurements needed.  AR 292, 294.  Such castings are not classified as receivers because of the time and expertise required to convert them into properly functioning weapons.  See, e.g., AR 183-84.  On the other hand, the machining of the EP80 can be completed in a relatively short time, using commonly available tools, and requiring no particular skill or expertise.  The indexing supplied by the biscuit and exterior-wall protrusions and the relative ease with which plastic can be removed facilitates this process.

ATF's requirement that receivers outside the scope of the Gun Control Act must be blank reflects the agency's technical expertise and allows for fair enforcement.  Otherwise, ATF would have to base classifications on a potentially infinite number of miniscule increments in the amount of machining performed on a device or in the indexing that has been placed on it.  The classification of the EP80 reflects ATF's expertise and exercise of its discretion and is not an arbitrary and capricious determination.  Because ATF acted rationally, its decision should be upheld.  See Mullenix, 2008 WL 2620175, at *5; Modern Muzzleloading, 18 F. Supp. 2d at 37; Gilbert Equip., 709 F. Supp. at 1076.

**2.    ATF's Classification of the EP80 is Consistent with Its Prior Decisions on Other Items**

Plaintiff erroneously contends that ATF's classification of the EP80 is not based on "any" of its prior opinions, which allegedly found that "only when a fire-control cavity is created is there an actual . . . 'receiver' capable of being regulated."  Complaint ¶¶ 46(e), 48.  While FTB has never before been asked to evaluate a casting with a polymer-filled fire-control cavity like the EP80, ATF's decision that the EP80 is a receiver is consistent with the principles governing ATF's prior decisions.  ATF

1   has consistently classified AR-type receiver-castings as firearms if any of the fire-
2   control cavity has been milled or indexed, or if the receiver-castings have holes or
3   indexing marks for the fire-control components.  See, e.g., AR 57-69, 74-91, 104-113,
4   121-22, 137-38 (classifying as "firearms" or "receivers" AR-type castings that
5   contained holes, cavities, or indexing).  By the same token, it has declined to classify
6   items as firearms that are "completely solid and un-machined in the fire-control recess
7   area" and are unindexed in that area.  See, e.g., AR 95-103, 117-20, 135-36, 139-40,
8   142-65 (declining to classify as "firearms" or "receivers" AR-type casting that did not
9   contain holes, cavities, or indexing).[10]

10      The record is replete with examples of ATF's consistency with respect to AR-
11  type receivers.  For instance, at least as early as 1983, ATF classified an AR-type
12  design as a firearm receiver where it required 75 minutes of drilling and filing to be
13  made functional.  AR 60.  ATF made a comparable decision in 1992 with respect to a
14  receiver whose interior cavity had not been completely machined, but that could be
15  made functional with some minimal additional drilling and filing.  AR 62.  In 2002
16  ATF again determined that even if the AR-15 submission had a solid interior, it would
17  still be considered a firearm if it had holes for the trigger and hammer pins because it
18  would take only about 75 minutes of drilling and filing to make such an item
19  functional.  AR 66.  Similarly, in 2012, where the AR-15-type submission had been
20  split length-wise into two halves, but with the fire-control cavity area hollowed out in
21  each half, ATF classified the left half as a "firearm receiver" because the submission
22  could be made into a functional weapon simply by bolting the two halves together.
23  AR 85.  Because the fire-control cavity of the left half was machined, that half was
24  classified as a receiver even though it could not by itself be made into a working
25  weapon given that the right half contained all of the vital components.  AR 84-86.
26  The classification of the EP80 as a receiver because of the formation of the fire-

27
28

---

[10]   Moreover, even if this were the case, the EP80's pinholes are an independent basis for its classification as a firearm.

1   control cavity and the relative ease with which the EP80 can be made a suitable part of

2   an operating weapon is consistent with these determinations.

3       In addition, with respect to the indexing of fire-control component holes, ATF

4   has consistently determined that "an AR-type receiver-blank [which] possessed

5   indexing marks for the fire-control components (trigger group)" was finished to the

6   point that it was properly classified as a firearm frame or receiver."  AR 135; see also

7   AR 137-38.  Also, where there are "no index detents machined for the safety lever or

8   the trigger/hammer pins" (and the fire-control cavity is solid), ATF has consistently

9   determined that the submission is not a firearm.  AR 143, 145.  ATF's decision to

10   classify the EP80 as a firearm on the basis of its indexing of the holes to be drilled for

11   the selector and the hammer and trigger pins is consistent with these decisions.

12       The four ATF classification determinations that plaintiff cites to support its

13   position, Complaint ¶ 46(b), are instead consistent with ATF's prior determinations

14   and its classification of the EP80 as a firearm in this case.  Two instances cited by

15   plaintiff (ATF letters to Reece and Kenney Enterprises, Inc.) involved items which,

16   unlike the EP80, were solid metal receiver blanks with no indexing or machining of

17   the fire-control cavity, and accordingly, the items were properly not classified as

18   firearms.  See AR 96 (not a firearm receiver because "there are no index detents

19   machined for the safety lever or the trigger/hammer pins…."); AR 37-38 (not a

20   firearm because no machining operations had been performed on the fire-control

21   cavity and none of the holes had been drilled or indexed for the firing control

22   components).  Similarly, a sample (ATF letter to 80 Percent Arms) whose fire-control

23   cavity had not been hollowed out or indexed, and whose holes for the fire-control

24   components had not been indexed or drilled was also properly not classified as a

25   firearm.  AR 104-05.  On the other hand, the submission (ATF letter to Laser) that had

26   "machining for the selector opening" (the selector being a fire-control component)

27   was properly classified as a firearm receiver.  See AR 26.  Here, the EP80 has both a

28

*Memorandum in Support of Defendant's*
*Motion to Dismiss and for Summary Judgment*                                    *14cv548*

1   fully formed and indexed fire-control cavity as well as indexing, not just for the

2   selector hole as in the example above, but for the hammer/trigger pin holes as well.

3   AR 24.  Its classification as a firearm receiver adheres to the principles applied in the

4   decisions plaintiff cites, as well as the other decisions discussed herein.

5       Even in connection with other firearm designs, ATF has consistently applied

6   the same principles, finding that the determination of whether the item should be

7   classified as a firearm would depend on whether the item "can be brought to a stage of

8   completeness that will allow it to accept the firearm components [for] . . . which it is

9   designed . . ., using basic tools in a reasonable amount of time."  AR 188.  For

10  example, ATF decided that the right side plate of a machine gun replica was a

11  "firearm receiver" where the side plate was otherwise nearly completely machined

12  and matched the dimensions of an actual machine gun.  AR 171-75, 187.  ATF also

13  found that the "number and complexity of operations" already made were sufficient to

14  classify a sample pistol frame as a firearm where a remaining critical operation could

15  be "completed in a minimal amount of time by a competent individual having the

16  necessary equipment."  AR 213-14.   And ATF determined that a machinegun

17  conversion device called a "drop-in auto sear," even in unfinished condition, met the

18  definition of a machine gun because it was part of a "combination of parts designed

19  and intended . . . for use in converting a weapon into a machine gun" pursuant to 26

20  U.S.C. § 5845(b); see also 18 U.S.C. § 921(a)(23).  AR 170.

21      Plaintiff argues that ATF's decision not to classify jigs as firearms is

22  inconsistent with its decision to classify the EP80 as a receiver because the use of the

23  jig is tantamount to indexing.  Complaint ¶ 48.  A jig is a flat metal device into which

24  openings are cut to match the surface dimensions of the fire-control cavity or other

25  necessary fire-control apertures on a receiver.  The jig can be laid on the fire-control

26  cavity area to guide the machining of the proper surface dimensions of the cavity.  AR

27  362-74.  However, the jig does not provide any guidance for the proper measurements

28

*Memorandum in Support of Defendant's*
*Motion to Dismiss and for Summary Judgment*

of the three-dimensional cavity, as does the biscuit in the EP80.  AR 362-74.  The creation of an accurately measured three-dimensional fire-control cavity requires significantly more skill and machining than would the removal of the polymer filler in the EP80.  AR 362-66.  Even with a jig to define the surface dimensions of the fire-control cavity, the process of hollowing out the cavity to accurate dimensions would not take significantly less time than hollowing out the entire fire-control cavity.

The classification of the EP80 reflects ATF's scientific and technical expertise, and the agency reasonably determined that it should be treated as a firearm under the Gun Control Act.  ATF's decision was based on a consideration of the relevant factors, and it reflects a rational connection between the facts found and the conclusions made.  Defendant's motion for summary judgment should therefore be granted as to the claim that ATF's classification of the EP80 was arbitrary and inconsistent.

## II.   PLAINTIFF'S CONSTITUTIONAL AND STATUTORY CLAIMS SHOULD BE DISMISSED BECAUSE ATF'S CLASSIFICATION OF THE EP80 AS A FIREARM WAS WITHIN ITS CONSTITUTIONAL AND STATUTORY AUTHORITY

### A.   The APA Standard of Review Limits the Court to Determining Whether ATF's Classification of the EP80 as a Firearm Violates Constitutional and Statutory Authority

Plaintiff alleges that ATF's classification of the EP80 as a "firearm" violates the First, Second, and Fifth Amendments, Complaint Counts 1, 4, 8, as well as the Firearms Owners' Protection Act, 18 U.S.C. § 926, Complaint Count 9.  With respect to these claims, a court may overturn agency action only if the action was "contrary to constitutional right," id. § 706(2)(B), or "in excess of statutory . . . authority," id. § 706(2)(C).  To decide whether plaintiff's classification of the EP80 as a firearm violates the First, Second, and Fifth Amendments or the Firearm Owner's Protection Act, or instead should be upheld, the Court must therefore determine whether the

agency based its decision on the appropriate constitutional or statutory standard.  5 U.S.C. § 706; see Firearms Import/Export Roundtable Trade Group v. Jones, 854 F. Supp. 2d 1, 10 (D.D.C. 2012); see also Crowell v. Benson, 285 U.S. 22, 60 (1932) ("In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions . . . of . . . law, necessary to the performance of that supreme function.").  As will be explained below, ATF's determination conforms to all applicable constitutional and statutory standards, and plaintiff's claims should be dismissed.

**B.    Plaintiff's First Amendment Claim Should Be Dismissed Because the Coloration of the Biscuit and Indexing of the Fire-Control Cavity Are Not Protected Speech**

Plaintiff contends that the color difference of the biscuit that fills the fire-control cavity on an EP80 and the indexing marks on the walls of the cavity are "speech" protected by the First Amendment.  Complaint ¶ 104-107.  Plaintiff alleges that defendant suppresses speech by placing firearms restrictions on the EP80.  Id. ¶¶ 104, 108-110.  Plaintiff's assertions are misguided.

"Speech" is defined as the "expression or communication of thoughts or feelings by spoken words."  Webster's New World Coll. Dictionary, 1377 (4th ed. 2010).  "The First Amendment generally prevents government from proscribing speech . . . , or even expressive conduct . . . , because of disapproval of the ideas expressed."  R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992) (internal citations omitted); Hamilton v. City of San Bernardino, 107 F. Supp. 2d 1239, 1241 (C.D. Cal. 2000) (same).  "The hallmark of the protection of free speech is to allow 'free trade in ideas' – even ideas that the overwhelming majority of people might find distasteful or discomforting."  Vives v. City of New York, 305 F. Supp. 2d 289, (S.D.N.Y. 2003) (citing Abrams v. United States, 250 U.S. 616, 630 (1919) (Holmes, J. dissenting)).  For conduct to express an idea that is constitutionally protected, "a[n] intent to convey a particularized message" must be present and there must be a "great" likelihood "that

1  the message w[ill] be understood by those who view [] it."  <u>Spence v. State of Wash.</u>,

2  418 U.S. 405, 409-11 (1974); <u>Anderson v. City of Hermosa Beach</u>, 621 F. 3d 1051,

3  1058 (9th Cir. 2010).

4       The coloration and markings placed on the EP80 during its manufacture are

5  measurement aids, not speech.  No thoughts or feelings are communicated through the

6  placement of index markings on the fire-control cavity and the coloration of its

7  polymer filler during the manufacture of the EP80.   The purpose of these

8  characteristics is, by plaintiffs' own admission, simply to guide individual purchasers

9  as to where they should hollow out the fire-control cavity and drill the holes required

10  "to build a functioning firearm receiver."  Complaint ¶¶ 39, 41.

11       Moreover, even if these measurement features could be considered some form

12  of speech, they are not constitutionally protected speech.  They do not express any

13  ideas, and insofar as EP Arms intended to convey a particularized message, that

14  message is not understandable to those who view it.  Defendant's classification of the

15  EP80 as a firearm was not an attempt to proscribe speech or expressive conduct

16  because defendant disapproves of any ideas expressed (although there are no

17  discernible ideas).  Rather, the classification was a means to enforce the Gun Control

18  Act by regulating an item that can be readily made suitable for use as part of a

19  functional weapon because of the guidance supplied by the colored biscuit and

20  indexing on the fire-control cavity.  Consequently, plaintiff's First Amendment claim

21  in Count 1 of the Complaint should be dismissed for failure to state a claim upon

22  which relief can be granted.

23

24

25

26

27

28

*Memorandum in Support of Defendant's*
*Motion to Dismiss and for Summary Judgment*

**C.      Plaintiff's Second Amendment Claim Should Be Dismissed Because The Second Amendment Does Not Protect A Right To Sell And Transfer Firearms**

Plaintiff claims that it has "a "right, protected by the Second Amendment, to purchase, distribute, and sell" the EP80, and that defendant has curtailed that right.[11] Complaint ¶¶ 140-41.  However, the Second Amendment does not address the ability to sell or purchase firearms but provides instead that the "right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  And "while both the Supreme Court [in <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570 (2008),] and the Ninth Circuit left unanswered precisely how broad the scope of the Second Amendment is, <u>Nordyke [v. King</u>], 681 F.3d [1041,] 1044 [9th Cir. 2012], they have not extended the protections of the Second Amendment to the sale or purchase of guns."  <u>Teixeira v. Cnty. of Alameda</u>, No. 3:12-cv-03288-WHO, 2013 WL 4804756, at *6 (N.D. Cal. Sept. 9, 2013).  As another court in this Circuit noted, "<u>Heller</u> said nothing about extending Second Amendment protection to firearm manufacturers and dealers.  If anything, <u>Heller</u> recognized that firearms manufacturers and dealers are properly subject to regulation . . . ."  <u>Mont. Shooting Sports Ass'n v. Holder</u>, No. 09-cv-147-DWM-JCL, 2010 WL 3926029, at *21 (D. Mont. Aug. 31, 2010), <u>aff'd on other grounds</u>, 727 F.3d 975 (9th Cir. 2013); <u>see also</u> <u>Pena v. Lindley</u>, No. 2:09-CV-01185-KJM-CKD, 2015 WL 854684, at *11 n.10 (E.D. Cal. Feb. 26, 2015) (internal quotation marks omitted) ("[A]though the Second Amendment protects an individual's

---

[11]    Plaintiff conflates two issues when, referring to the EP80, it contends that defendant has attempted to curtail the ownership, purchase or sale of any firearm-related item which is not a firearm, a frame, or a receiver."  Complaint ¶ 141.  This contention presumes that the EP80 has not properly been classified as a firearm, an issue which is yet to be decided.  If the Court upholds the classification, then there is no merit to the claim that defendant attempted to regulate an item which is "not a firearm."

*Memorandum in Support of Defendant's
Motion to Dismiss and for Summary Judgment*

*14cv548*

1   right to bear arms, it does not necessarily give rise to a corresponding right to sell a

2   firearm.").

3       Moreover, any contention that the Second Amendment extends its protection to

4   buying and selling firearms cannot be squared with <u>Heller</u>'s conclusion that "laws

5   imposing conditions and qualifications on the commercial sale of arms" are

6   "presumptively lawful regulatory measures."  <u>Heller</u>, 554 U.S. at 626-27 & n.26; <u>see</u>

7   <u>also</u> <u>McDonald v. City of Chicago, Ill.</u>, 561 U.S. 742, 786 (2010) (assuring that its

8   holding "did not cast doubt on such longstanding regulatory measures as . . . 'laws

9   imposing conditions and qualifications on the commercial sale of arms.'") (quoting

10  <u>Heller</u>, 554 U.S. at 626-27).  Indeed, no court of appeals has recognized the purported

11  constitutional rights asserted by plaintiff.  <u>See, e.g.</u>, <u>Nat'l Rifle Ass'n v. Bureau of</u>

12  <u>Alcohol, Tobacco, Firearms, & Explosives</u>, 700 F.3d 185, 196 (5th Cir. 2012), <u>cert.</u>

13  <u>denied</u>, 134 S. Ct. 1364 (2014) (citation omitted)  (explaining that longstanding,

14  presumptively lawful regulations on the commercial sale of arms "likely fall outside

15  the ambit of the Second Amendment"); <u>United States v. Chafin</u>, 423 F. App'x 342,

16  344 (4th Cir. 2011) (finding no authority "that remotely suggests that, at the time of its

17  ratification, the Second Amendment was understood to protect an individual's right to

18  <i>sell</i> a firearm") (emphasis in original); <u>Olympic Arms v. Magaw</u>, 91 F. Supp. 2d 1061,

19  1071 (E.D. Mich. 2000) (noting that "under current interpretations of the law there is

20  probably no Second Amendment right to be a firearms manufacturer or dealer."), <u>aff'd</u>

21  <u>on other grounds</u>, <u>Olympic Arms v. Buckles</u>, 301 F. 3d 384 (6th Cir. 2002); <u>cf.</u> <u>Gilbert</u>

22  <u>Equip. Co. v. Higgins</u>, 709 F. Supp. at 1080-81 (finding that Second Amendment did

23  not guarantee a right to "import arms").  Thus, plaintiff has no right protected by the

24  Second Amendment to deal in the EP80, and its claim in Count 4 of the Complaint

25  should be dismissed.

26

27

28

**D.    Plaintiff Lacks Standing to Raise a Procedural Due Process Claim Under The Fifth Amendment**

Plaintiff alleges defendant's classification of the EP80 as a firearm deprived plaintiff of liberty and property without due process of law.  Complaint Count 8. Plaintiff claims it has a "protected Second Amendment liberty interest," and that it has a property interest in conducting business, both of which are impaired by defendant's process for determining whether an item constitutes a firearm.  Id. ¶¶ 178, 187. Plaintiff argues that ATF's process is deficient because ATF allegedly has "unbridled discretion" in making its determinations and does not reveal the parties who make them or the standards that it applies.  Id. ¶¶ 190-91.  In addition, the process allegedly does not allow for judicial or administrative review.  Id. ¶¶ 193-94. [12]

Plaintiff lacks standing to allege that defendant violated its procedural due process rights.  "[T]o invoke the jurisdiction of the federal courts," plaintiff "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983).  To have constitutional standing under Article III, a party must

---

[12]    Plaintiff's attempt to "conflate the enumerated Second Amendment right with . . . Due Process protections under the Fifth Amendment" should in any event be rejected.  United States v. Carey, 602 F.3d 738, 741 n.2 (6th Cir. 2010); cf. Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (citation omitted); see also Nordyke v. King, 644 F.3d at 794 (rejecting equal protection claim because, "although the right to keep and bear arms for self-defense is a fundamental right, that right is more appropriately analyzed under the Second Amendment") (citing Albright, 510 U.S. at 273), vacated by 681 F.3d 1041 (9th Cir. 2012) (en banc) (affirming dismissal of Second Amendment claim).

The claim that ATF has violated plaintiff's due process rights by exercising "unbridled discretion" similarly conflates the APA arbitrary and capricious standard, 5 U.S.C. § 706(a)(2), with the due process clause.  Defendant demonstrated above that ATF's actions were not in violation of the APA in any respect.

1   demonstrate an injury that is "concrete, particularized, and actual or imminent; fairly

2   traceable to the challenged action; and redressable by a favorable ruling." <u>Clapper v.</u>

3   <u>Amnesty Int'l USA</u>, __ U.S. __, 133 S. Ct. 1138, 1147 (2013) (internal quotation

4   marks omitted); <u>Coons v. Lew</u>, 762 F.3d 891, 897 (9th Cir. 2014).  "The prudential

5   limitations [on standing] include a requirement that the plaintiff 'assert his own rights,

6   rather than rely on the rights or interests of a third party.'" <u>Wedges/Ledges of Cal.,</u>

7   <u>Inc. v. City of Phoenix, Ariz.</u>, 24 F.3d 56, 61 (9th Cir. 1994).

8          Plaintiff is not the entity that sought a classification decision from defendant,

9   nor did plaintiff otherwise participate in the process which led to the decision.  Rather,

10  EP Arms, the manufacturer of the EP80, sought the decision from defendant as to

11  whether the EP80 was a firearm.  Complaint ¶¶ 23-27.  All correspondence regarding

12  the classification decision occurred between ATF and EP Arms, through its attorney

13  Jason Davis.  Complaint Exhibits A-D (also found at AR 1-25).  This correspondence

14  includes the original letter from EP Arms to ATF requesting clarification as to

15  whether the EP80 is a "firearm," Complaint Exhibit A (AR 1-6); ATF's response to EP

16  Arms explaining the basis for its decision to classify the EP80 as a firearm, Complaint

17  Exhibit B (AR 7-9); EP Arms' request for reconsideration of ATF's decision,

18  Complaint Exhibit C (AR 10-19); and ATF's letter declining to reverse its original

19  decision upon reconsideration, Complaint Exhibit D (AR 20-25).

20         Plaintiff lacks standing to raise any Fifth Amendment procedural due process

21  rights on behalf of EP Arms.[13]  <u>See, e.g.</u>, <u>Wedges/Ledges of Cal., Inc.</u>, 24 F.3d at 62

22

23         [13]    In any event, EP Arms received all the process it was due.  Due process
    requires that the "'person in jeopardy of serious loss be given notice of the case against
24  him and opportunity to meet it.'"  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 348 (1976)
    (quoting <u>Joint Anti-Fascist Comm. v. McGrath</u>, 341 U.S. 123, 171-72 (1951)
25  (Frankfurter, J. concurring)); <u>Akins v. United States of Am.</u>, No. 08-15640, 2009 WL
    255682, at *4 (11th Cir. Feb. 4, 2009).  As the <u>Mathews</u> Court explained, "[a]ll that is
26  necessary is that the procedures be tailored, in light of the decision to be made, to 'the
27  capacities and circumstances of those who are to be heard,' to insure that they are
    given a meaningful opportunity to present their case."  <u>Mathews</u>, 424 U.S. at 349
28

1   (finding lack of standing where manufacturer sought to base its due process claims on

2   the city's revocation of other entities' licenses); cf. O'Bannon v. Town Ct. Nursing

3   Ctr., 447 U.S. 773, 787–88 (1980) (holding that nursing-home residents could not

4   state due process claims based on government's revoking their homes' certification,

5   even though residents likely faced serious loss); Portman v. Cnty. of Santa Clara, 995

6   F.2d 898, 902 (9th Cir.1993) (rejecting argument that defense attorney had direct

7   standing to raise his clients' Sixth Amendment rights on their behalf, because "a

8   litigant may invoke only his or her 'own legal rights or interests, and cannot rest his

9   [or her] claim to relief on the legal rights or interests of third parties'" (quoting Warth

10   v. Seldin, 422 U.S. 490, 499 (1975)).  Plaintiff's Fifth Amendment procedural due

11   process claim in Count 8 of the Complaint should therefore be dismissed.

12   **E.   Plaintiff Has Failed To State A Plausible Claim Under The Firearm**

13   **Owners' Protection Act**

14   Plaintiff alleges that in seizing plaintiff's customer list, defendant attempted to

15   determine the identity of firearms owners and thereby established a system of

16   registration of them in violation of the Firearms Owners' Protection Act, 18 U.S.C. §

17   926.  Complaint ¶ 199.  Plaintiff asks the Court to require defendant to cease "creating

18   or maintaining such [a] database."  Id. ¶ 200.  "To survive a motion to dismiss, a

19   complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

20   relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

21

22   (citation omitted); Akins, 2009 WL 255682, at *4 (same); see also Buckingham v.

23   Sec. of the U.S. Dep't of Agric., 603 F.3d 1073, 1082 (9th Cir. 2010) (same).  EP

24   Arms submitted a thorough explanation as to why it believed the EP80 was not a

25   firearm as well as a lengthy request for the agency to reconsider its decision based on

26   its interpretation of applicable law.  Defendant responded with a thorough explanation

27   of the rationale for the agency's decision and of the reasons for not changing its

28   decision upon reconsideration.  No further process was required.  See Akins, 2009 WL

255682, at *4 (finding no further process required where party received notice of reclassification and submitted lengthy request for reconsideration based on its interpretation of the statute).

1   (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Teixeira, 2013 WL

2   4804756, at *4.  "A claim has facial plausibility when the plaintiff pleads factual

3   content that allows the court to draw the reasonable inference that the defendant is

4   liable for the misconduct alleged."  Iqbal, 556 U.S. at 679.  Plaintiff's allegations do

5   not satisfy Iqbal's plausibility standard.

6        The allegations of the Complaint indicate that in the course of executing a

7   search warrant issued by a United States Magistrate Judge, Complaint ¶¶ 74-76, 78,

8   defendant seized property at plaintiff's four locations that included plaintiff's customer

9   list, id. ¶ 168.  The Complaint does not allege any facts that would establish that

10  defendant established a system of registration of firearms owners, that it created a

11  "database" of any kind with the customer lists, or that it otherwise violated the

12  Firearms Owners' Protection Act.   Rather, plaintiff makes conclusory allegations

13  without any facts to support the inferences plaintiff wishes the Court to draw.

14  Plaintiffs have not come close to meeting their threshold pleading burden here, and

15  their claims in Count 9 of the Complaint that defendant violated the Firearms Owners'

16  Protection Act should be dismissed for failure to state a claim on which relief can be

17  granted.   See Iqbal, 556 U.S. at 683 (finding complaint deficient where factual

18  allegations were insufficient to plausibly support a claim).

19                                    **CONCLUSION**

20        For the foregoing reasons, defendant's motion to dismiss and for summary

21  judgment should be granted.

22  DATED:      March 27, 2015                    Respectfully submitted,

23                                               LAURA E. DUFFY
                                                 United States Attorney
24
                                                 DANIEL E. BUTCHER
25                                               Assistant United States Attorney

26                                               /s/ Lisa A. Olson
                                                 JOHN R. TYLER
27                                               LISA A. OLSON

28                                               Attorneys for Defendant