UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| LYCURGAN, INC., dba ARES ARMOR, | Case No.: 14-CV-548 JLS (BGS) |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| EARL GRIFFITH, an individual, UNKNOWN NAMED TECHNOLOGIST, an individual, UNKNOWN NAMED AGENTs I-VII, individuals, and DOES I-X, in their individual capacities, | (ECF No. 115) |
| Defendants. | |

Presently before the Court is Defendant Earl Griffith's Motion to Dismiss Second Amended Complaint, ("MTD," ECF No. 115-1). Also before the Court are Plaintiff Lycurgan, Inc.'s Response in Opposition to, ("Opp'n," ECF No. 129),[1] and Defendant's Reply in Support of, ("Reply," ECF No. 133), Defendant's MTD. After considering the parties' arguments and the law, the Court **GRANTS** Defendant's MTD.

/ / /

---

[1] Plaintiff moves the Court to substitute its revised response in opposition, (ECF No. 129), for a previously filed version, (ECF No. 124). (ECF No. 130.) Defendant does not appear to oppose this request. Good cause appearing, the Court **GRANTS** Plaintiff's motion.

1

# BACKGROUND

Plaintiff Lycurgan, Inc. is a California corporation with its principal place of business in San Diego County, California. (Second Am. Compl. ("SAC"), ¶ 3, ECF No. 109). Plaintiff sells "unfinished lower receivers," which are gun parts used by consumers to assemble their own AR-15 rifles. (*Id.*) Defendant Earl Griffith is a resident of Maryland, (Decl. of Earl Griffith ("Griffith Decl.") ¶ 3, ECF No. 115-2), and the Division Chief of the Firearms and Ammunitions Technology Division with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE") located in Martinsburg, West Virginia, (*id.* ¶ 1).

Plaintiff brings a *Bivens* action against Defendant for violation of its First and Fourth Amendment rights. (SAC ¶¶ 101, 120.) Plaintiff alleges that

> [Defendant Griffith] falsely suggested that persons in the same class as Plaintiff, i.e., those in possession of the EP Arms unfinished lower receivers, were in possession of un-serialized firearms, or otherwise receivers or frames, a suggestion which he knew or reasonably should have expected would result in the deception of a judicial officer resulting in the issuance of search warrants, the execution of those warrants and such injury and upset resulting therefrom, and possible unjust criminal prosecution against the Plaintiff or those similarly situated as Plaintiff.

(*Id.* ¶ 9.a.) Plaintiff alleges Defendant made the false suggestions in a letter he wrote on February 7, 2014. (*Id.* ¶ 24.) The letter responded to an inquiry regarding the legal status of the receivers sent by an attorney for EP Arms, LLC, a California company that supplies the receivers to Plaintiff. (*Id.* ¶¶ 22–24.) The contents of the letter were Defendant's conclusions, speaking in his official capacity on behalf of BATFE, that the receivers were to be classified as "firearms" under the Gun Control Act, 18 U.S.C. § 921(a)(3). (SAC Ex. B, ECF No. 109.) If the receivers were classified as "firearms" under the Gun Control Act, Plaintiff (and EP Arms) would be noncompliant with the law and exposed to liability. (SAC ¶ 52.) Plaintiff alleges Defendant wrote the first letter expressly to

///

> provide a basis to leverage a bargain with Plaintiff . . . to satisfy the individually named defendants' [(i.e., other BATFE agents named in the suit)] covetous urge to obtain Plaintiff's customer list. Specifically, Plaintiff could either hand over the customer list and its valuable supply of EP Arms unfinished lower receiver [sic], or face the ostensible threat of a raid, seizure, and a criminal prosecution contrived from the reasoning set forth in the undated letter . . . .

(*Id.* ¶ 28.)

The attorney for EP Arms sent a second letter to Defendant protesting the determination made in the first letter, to which Defendant responded with a second, undated letter affirming his prior conclusion. (*Id.* ¶ 26.) Plaintiff alleges that this second letter was a post-hoc attempt to provide "plausible deniability" for other BATFE agents' threatening behavior toward Plaintiff. (*Id.* ¶¶ 27–28.) The letters did not mention Plaintiff and bore the admonition that the legal determinations made within were "intended only for use by the addressed recipient(s)." (SAC Ex. B, ECF No. 109, at 63.)

After the first letter was sent but two weeks before the second was sent, BATFE agents in California raided Plaintiff's locations in San Diego County, (*id.* ¶¶ 75, 82), pursuant to a search warrant they applied for on March 14, 2014, (*id.* ¶ 11). Plaintiff alleges that Defendant's first letter was used by Unknown Named Agent 1 in the "Affidavit" to falsely obtain the warrant that permitted the raids. (*Id.* ¶¶ 9.a, 69; *see also* SAC Ex. E, ECF No. 109 ("Affidavit").)

Defendant now moves to dismiss for lack of personal jurisdiction, among other grounds.

## LEGAL STANDARD

The plaintiff bears the burden to establish that the court has personal jurisdiction over the defendant when the defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(2). *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In the absence of an evidentiary hearing, the burden requires only that the plaintiff make a prima facie showing of jurisdictional facts, with the court taking all of the plaintiff's

undisputed factual allegations as true and resolving all disputed facts in the plaintiff's favor. *Id.*; *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

In general, the court may exercise personal jurisdiction over an out-of-state defendant consistent with both the forum state's long-arm statute and constitutional due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). In California, the inquiry is one dimensional because California's long-arm statute is coextensive with the requirements of constitutional due process. *Id.* The requirements are that the defendant have minimum contacts with the forum state such that "the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted); *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

The "defendant *himself*" must make minimum contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original). Minimum contacts cannot be made by the "unilateral activity of those who claim some relationship" with the defendant. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Moreover, the defendant must have minimum contacts with the state itself, not merely with people or entities who reside there. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). And "however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive." *Id.*

The Court may exercise either general or specific jurisdiction over a defendant. *Fireman's Fund*, 103 F.3d at 893. In the Ninth Circuit, specific jurisdiction may be exercised only if three requirements are met: "(1) the defendant either 'purposefully direct[s]' its activities or 'purposefully avails' itself of the benefits afforded by the forum's laws; (2) the claim 'arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [] comport[s] with fair play and substantial justice, i.e., it [is] reasonable.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (alterations in original) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

///

The first prong of the specific jurisdiction analysis may be satisfied "even by a defendant 'whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004) (quoting *Dole Food Co.*, 303 F.3d at 1111) (citations omitted). The Court analyzes purposeful direction under the *Calder* effects test, which requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*; *accord Calder v. Jones*, 465 U.S. 783 (1984).

The second prong of the specific jurisdiction analysis requires that the plaintiff would not have been injured "but for" the defendant's forum-related conduct. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). If the plaintiff satisfies prongs one and two, the burden shifts to the defendant to make a compelling case that the exercise of jurisdiction would be unreasonable. *Id.*

## ANALYSIS

Defendant argues that the Court lacks personal jurisdiction because (1) Defendant did not purposefully avail himself of the benefits and protections of the laws of California merely by signing two letters in West Virginia, (MTD 6[2]), (2) Defendant took no action in California; therefore Plaintiff's claim does not arise out of any action taken by Defendant in California, (*id.*), and (3) exercising jurisdiction over Defendant would be unreasonable and a "flagrant due process violation" because Defendant did not himself establish a substantial connection with the forum state, (*id.* at 7).

As an initial matter, while litigants often use "availment" and "direction" interchangeably, Plaintiff's argument in opposition to Defendant's MTD implicitly invokes the purposeful direction mode of analysis. (Opp'n 15.) The Court agrees this is the proper

---

[2] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

mode of analysis for this case because Defendant is alleged to have taken "actions outside the forum state that are directed at the forum." *Schwarzenegger*, 374 F.3d at 803. Purposeful availment analysis, on the other hand, is typically reserved for suits sounding in contract, where the defendant is alleged to have taken action in the forum such as "executing or performing a contract there." *Id.* at 802. Thus, the Court assesses whether Defendant purposefully directed any activity at the forum state for purposes of specific jurisdiction.

Plaintiff argues that Defendant's actions satisfy the three requirements for finding purposeful direction because Defendant: (I) committed an intentional act by writing the determination letter in response to EP Arms's inquiry, (Opp'n 15); (II) expressly aimed this act at California because either (a) he knew or reasonably should have known the legal interpretations rendered in the letters would "affect a resident of California," (*id.*; SAC ¶ 9.a), or (b) contrived the determinations in the letters knowing beforehand that they would be used to specifically target Plaintiff, (SAC ¶ 28); and (III) knew harm would be suffered by Plaintiff in California, (Opp'n 17). The Court addresses each in turn, ultimately finds Plaintiff's argument for express aiming unavailing, and further notes that harm foreseeably suffered in a forum state is not by itself jurisdictionally relevant in light of recent caselaw.

## I. Intentional Act

The first prong of the *Calder* effects test, the intentional act requirement, simply attempts to differentiate between an actual, physical act and an intent to accomplish a result or consequence of an act. *Schwarzenegger*, 374 F.3d at 806. In *Bancroft & Masters, Inc. v. Augusta National Inc.*, for instance, the act of sending a letter satisfied this requirement. 223 F.3d 1082, 1088 (9th Cir. 2000).

Here, the Court finds that Plaintiff satisfies the first requirement. Much like the letter sent in *Bancroft*, Defendant's signing two letters, and thus rendering legal opinions in his official capacity, constitute intentional acts. *See also Schwarzenegger*, 374 F.3d at 806 (citing *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988)) (alleged uttering of false statements satisfied the intentional act requirement)). Moreover, Defendant does not

6

14-CV-548 JLS (BGS)

argue he did not act intentionally; rather, he argues his actions were not expressly aimed at California. (Reply 3.)

## II. Express Aiming

As to express aiming, the Ninth Circuit has made clear that *Calder* requires "something more" than a foreign act that has foreseeable effects in the forum state. *See, e.g., Bancroft*, 223 F.3d at 1087; *Schwarzenegger*, 374 F.3d at 805. In *Bancroft*, the court concluded that the something more is "express aiming" and that "'express aiming' encompasses wrongful conduct individually targeting a known forum resident." 223 F.3d at 1087. The court found jurisdiction over a defendant who sent a letter to a web-domain registration organization in Virginia challenging the use of a disputed web domain name by the plaintiff, a California company, because the defendant individually targeted a "California corporation doing business almost exclusively in California." *Id.* at 1088. Further, in *Brayton Purcell LLP v. Recordon & Recordon*, the court affirmed that the defendant's conduct must be "expressly aimed at the forum" and that express aiming can be satisfied by a finding of individualized targeting. 606 F.3d 1124, 1130 (9th Cir. 2010) (finding jurisdiction where "[defendant] knew of [plaintiff's] existence, targeted [plaintiff's] business, and entered direct competition with [plaintiff]," all while knowing the plaintiff did business in California).

But in *Walden*, the Supreme Court clarified that express aiming cannot be satisfied merely by a defendant who "(1) intentionally targets (2) a known resident of the forum." *See* 134 S. Ct. at 1124 n.8 (expressly disapproving the Ninth Circuit's decision to find jurisdiction, in part, on substantially similar grounds). In 2015, the Ninth Circuit acknowledged the Court's holding in *Walden* and affirmed that the conduct must be expressly aimed at the forum state itself, not merely at a resident of the forum. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). In *Picot*, the defendant allegedly interfered with a California contract "from his residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California." *Id.* at 1215. Despite the fact that the contract was executed in California, the court found no jurisdiction

because "none of [the defendant's] challenged conduct had anything to do with [California] itself." *Id.* The court further noted that whether conduct is expressly aimed at a state "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Id.* at 1214 (quoting *Schwarzenegger*, 374 F.3d at 807). In *Walden*, the Court similarly stated that the "crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." 134 S. Ct. at 1123–24. Elaborating on this connection, the Court noted that, because publication to third parties in California is a necessary element of the California libel tort, the defendants' "intentional tort actually occurred *in* California" even though the defendants were not California residents. *Id.* at 1124 (emphasis in original).

Here, the Court finds that Plaintiff does not make out a prima facie case for express aiming, even assuming either of Plaintiff's allegations is true. First, Plaintiff alleges that Defendant reasonably should have known he would affect "a resident of California" because he should have known other BATFE agents would use the letter to deceive a judicial officer and obtain a search warrant to search EP Arms, (SAC ¶ 9.a), and that Defendant knew any customers of EP Arms would consequently also be searched, including Plaintiff, because "logic dictates" as much, (Opp'n 17–18). Second, Plaintiff alleges that Defendant specifically targeted Plaintiff and contrived the determinations in the first letter to provide legal cover for the other BATFE agents to leverage a bargain with Plaintiff under threat of raid and seizure. (SAC ¶ 28.)

Under *Walden* and *Picot*, neither claim is sufficient because Plaintiff fails to show that Defendant expressly aimed his activity at the state itself, and not merely that he intentionally targeted Plaintiff who happens to reside in the state. *Picot* is instructive. Just like the circumstances accompanying the alleged wrongful conduct in *Picot*, here, Defendant wrote the letters allegedly depriving Plaintiff of its First and Fourth Amendment rights from his out-of-state office, without entering California, and without reaching out to California. (*Id.* ¶¶ 23–26; *see generally* Griffith Decl.) And though Defendant contacted a person in California (unlike in *Picot*) when he responded to the attorney for EP Arms, such

8

14-CV-548 JLS (BGS)

a contact arose out of "precisely the sort of 'unilateral activity' of a third party that 'cannot satisfy the requirement of contact with the forum State.'" *Walden*, 134 S. Ct. at 1125 (quoting *Hanson*, 357 U.S. at 253). Finally, even though Defendant's allegedly false determinations resulted in damage to a California company, "none of [Defendant's] challenged conduct had anything to do with [California] itself." *Picot*, 780 F.3d at 1215 (quoting *Walden*, 134 S. Ct. at 1125).

In support of its argument to the contrary, Plaintiff relies exclusively on *Calder*, seemingly ignoring the Supreme Court's later clarification, arguing that Defendant's "wrongful actions were expressly aimed at California" because Defendant knew the letters would "have a devastating impact upon the California company." (Opp'n 17.) Even putting aside *Walden*'s instruction that intentional targeting of a forum state resident is not enough, *Calder* itself provides little support for Plaintiff's case. In *Calder*, the plaintiff sued the defendants, reporters for the National Enquirer working in Florida, for libel based on an article they authored in Florida and circulated in California. 465 U.S. at 785–86. The defendants relied on phone calls to California sources for information in the article, reported on the plaintiff's activities in California, and circulated 600,000 copies of the article in California. *Id.* The various contacts in *Calder* were much stronger than the contacts here—writing two response letters to a third party in California which were then allegedly used by third party BATFE agents to justify raiding Plaintiff's business. (Reply 3; SAC ¶¶ 9, 24, 26.)

To be sure, in both possible interpretations of its SAC Plaintiff alleges that Defendant reasonably should have known that the letter would be used to deceive a judicial officer in California. (SAC ¶¶ 9, 121.) At some point along the causal chain, then, the alleged deprivation of Plaintiff's rights caused by the letter occurred in California. And as *Walden* stated, the "crux" of the finding of jurisdiction in *Calder* was that the effects of the wrongful conduct connected the defendants to the forum state, in part because the libel tort occurred *in* California. 134 S. Ct. at 1123–24.

/ / /

But this does not change the Court's conclusion that Defendant's contacts are insufficient to show express aiming, for at least two reasons. First, arguing Defendant "reasonably should have known" his actions would affect a business in California is tantamount to arguing foreseeable effects—precisely the sort of contact the Ninth Circuit admonished as insufficient post-*Calder*. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 805. Second, analysis of express aiming depends significantly on the specific wrongful conduct alleged. *Picot*, 780 F.3d at 1214. In arguing that Defendant aimed his specific conduct at California, (Opp'n 15), Plaintiff conflates the letters themselves with the other BATFE agents' use of the letters to allegedly falsely obtain the warrant. The alleged false determinations contained in the letters were not aimed at California itself. Plaintiff makes no allegation that Defendant tailored the letters to take advantage of California law on probable cause, for example. (*See generally* Opp'n.) An examination of the letters similarly provides no indication they were written with a California court in mind. (*See* SAC Exs. B, D, ECF No. 109.) In short, the totality of Defendant's conduct, writing the two letters rendering interpretations of federal law, does not show any "specific focus" on California. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011).

To be sure, Plaintiff claims that Defendant's allegedly false determinations were contrived and "presumably" accompanied by "his communication of the false determination to other members of the agency," thereby enabling those members to engage in judicial deception. (Opp'n 19.) But not only is this claim conclusory, such a claim merely alleges that Defendant intended to affect Plaintiff, who happened to be a California resident. In relevant contrast, the BATFE agents who applied for the search warrant in a California court or conducted the raids at locations in California targeted California "itself." *Picot*, 780 F.3d at 1215. Additionally, none of the elements of a § 1983 claim for deprivation of federal constitutional rights implicate California itself, unlike the libel tort in *Calder*, which is "generally held to occur wherever the offending material is circulated." *Walden*, 134 S. Ct. at 1124 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984)). Thus, Plaintiff has failed to establish that Defendant expressly aimed any action

at California by writing two response letters to EP Arms from his office in West Virginia.

### III. Foreseeable Harm Suffered in the Forum State

In addition to the lack of express aiming, Plaintiff did not suffer harm in the forum state in a jurisdictionally relevant sense. As *Walden* makes clear, something more is required than "imposition of an injury . . . to be suffered by the plaintiff while she is residing in the forum state." *See id.* at 1124 n.8. *Walden* suggests the injury should be "tethered" to the forum state in a "meaningful way" in order to create a jurisdictionally relevant contact. *Id.* at 1125. For example, in *Walden* the defendant, a deputized agent of the Drug Enforcement Administration ("DEA"), allegedly unlawfully seized the plaintiffs' cash at an Atlanta airport. *Id.* at 1119. The plaintiffs, Nevada residents, attempted to hale the agent into court in Nevada. *Id.* at 1120. The plaintiffs' alleged injury was not having access to the seized funds. *Id.* However, because the injury would follow the plaintiffs around no matter the state they chose to reside in, the injury was not meaningfully tethered to Nevada. *Id.* at 1125. Similarly, adopting *Walden*'s reasoning, the Ninth Circuit found no jurisdiction in *Picot* in part because "Picot's injury, an inability to access out-of-state funds, is not tethered to California in any meaningful way. Rather, his injury is entirely personal to him and would follow him wherever he might choose to live or travel." 780 F.3d at 1215. The court so held despite the fact that the inability to access the funds was caused by the defendant's alleged interference with a contract executed in California. *Id.* at 1210.

Guided by *Walden* and *Picot*, the Court finds that Plaintiff's harm stemming from the alleged false determinations does not create a jurisdictionally relevant connection between Defendant and California because the harm is not meaningfully tethered to California. The only injury the letter itself inflicts is exposing Plaintiff to potential investigation by BATFE. The injury will "follow [Plaintiff] wherever [it] might choose to [domicile or locate itself]," *id.* at 1215, because BATFE is a federal agency and its interpretations of federal law apply uniformly throughout the country; BATFE agents could just as easily use the letter as a basis for arguing probable cause exists to execute a search in a court in, say, Louisiana if Plaintiff were located there. Defendant's conduct is only

connected to California through the "unilateral activity of another party [(i.e., the other BATFE agents in California who allegedly used the determinations in the letter to apply for a search warrant)]." *Walden*, 134 S. Ct. at 1122 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Based on the facts pled, the activity was unilateral because Plaintiff does not allege Defendant in some way encouraged the BATFE agents to apply for the warrant. In short, when Defendant wrote two letters in his office in West Virginia, he may have foreseen that the determinations he made would negatively affect parties in California, but he did not "evince a connection" with the state itself. *Id.* at 1125.

In sum, Plaintiff alleges that Defendant made false statements in the letters knowing (as opposed to merely foreseeing) that they would be used by the other agents in their affidavits to deceive a Magistrate Judge in San Diego. (SAC ¶ 121.) The Court finds that, even if true, such allegations would not be sufficient to establish jurisdiction because there is neither (1) express aiming at California itself nor (2) harm tethered to California. However, the Court further notes that Plaintiff presents no evidence Defendant had such knowledge. Defendant's letters did not address Plaintiff, but EP Arms, a company not party to this suit. (*See* SAC Exs. B, D, ECF No. 109; Reply 3.) Plaintiff argues that "logic dictates—even if the BATFE does not—that if the EP-80s [(the unfinished lower receivers)] were considered 'firearms' as applied to EP Armory, then any of its customers selling the EP-80s would be subject to the same wrongful determination." (Opp'n 18–19.) However, the jurisdictional inquiry depends on the facts pled, not on a party's conception of what is logical. Indeed, Defendant points out that the letters bore the disclaimer that "the information found in this correspondence with regard to the evaluation described above is intended only for use by the addressed recipient(s)." (Reply 3.) The disclaimer of course could have been subterfuge—Defendant could have in reality had Plaintiff in mind when he wrote the letter. But Plaintiff presents no evidence of such subterfuge other than suggesting that "presumably" Defendant communicated his determination to other BATFE agents so that they could use it to raid Plaintiff's locations. (Opp'n 18.) A prima facie

12

showing of jurisdiction cannot rest on a mere presumption. *Pebble*, 453 F.3d at 1154 (noting that a prima facie showing requires the plaintiff to plead jurisdictional <u>facts</u>). Finally, given the absence of evidence showing ex ante communication between Defendant and the other BATFE agents who allegedly planned to target Plaintiff, it is questionable that harm to Plaintiff caused by the letters sent to EP Arms was even foreseeable. Indeed, without evidence showing at least that Defendant knew Plaintiff was on EP Arms's customer list, Defendant's contact with Plaintiff seems rather "random, fortuitous, and attenuated." *Burger King*, 471 U.S. at 475.

Accordingly, the Court **GRANTS** Defendant's MTD (ECF No. 115-1) on the grounds that the Court lacks personal jurisdiction over Defendant.[3]

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's MTD (ECF No. 115). Accordingly, the Court **DISMISSES** Plaintiff's claims against Defendant Griffith for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: July 31, 2017

Hon. Janis L. Sammartino
United States District Judge

---

[3] For this reason the Court does not reach Defendant's alternative arguments urging dismissal of Plaintiff's claims against him.